UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARGARITA ROSSY,
as Administrator of the Estate of Jose
Hernandez-Rossy,

                              Plaintiff,

v.                                                          17-CV-937-WMS

CITY OF BUFFALO,
JUSTIN TESESCO, Buffalo Police Department P.O,
JOSEPH ACQUINO, Buffalo Police Department P.O.,
POLICE COMMISSIONER DANIEL DERENDA,
Individually and in their representative capacities, and
AMERICAN MEDICAL RESPONSE d/b/a "AMR"
And its agents, servants and employees,

                              Defendants.
_____

## DECISION AND ORDER

        Plaintiff, as the administrator of her son's estate, commenced this action on September 19, 2017. Dkt. No. 1. She alleges that the Defendant Police Officers beat and fatally shot her unarmed son, Jose Hernandez-Rossy ("Hernandez-Rossy"), during an unlawful, racially-motivated traffic stop; that the Defendant City and Commissioner failed to train, supervise, or discipline the Officers; and that the Defendant ambulance company's employees negligently rendered or failed to render first aid, causing Hernandez-Rossy's death. Dkt. No. 1. This case was referred to the undersigned by the Hon. William M. Skretny, in accordance with 28 U.S.C. § 636(b)(1)(A), for all pretrial matters. Dkt. No. 11. Currently before this Court is Plaintiff's Motion to Compel (Dkt. 32), seeking various records including the personnel files, prior disciplinary records, internal affairs investigation reports, and prior complaints of excessive force against the Defendant Police Officers; Defendant Officer Joseph Acquino's ("Acquino") medical treatment records from the night

1

of Hernandez-Rossy's shooting; and the Buffalo Police Department's Records relating to the Housing and Strike Force Units to which the defendant Officers were assigned. Dkt. No. 32. For the following reasons, Plaintiff's Motion is GRANTED in part and DENIED in part.

## FACTS

This case centers around the fatal shooting of Hernandez-Rossy by Buffalo Police Officers on May 7, 2017. According to the Complaint, Buffalo Police Officers Joseph Acquino and Justin Tedesco ("Tedesco") were on duty at 5 p.m. that evening when they observed Hernandez-Rossy, whom they knew, driving his SUV. Despite having no lawful basis to detain Hernandez-Rossy, the officers pulled his car over, "rushed the vehicle[,] and forcefully entered the driver's door . . . ." Dkt. No. 1, p. 5. In "imminent fear for his life," Hernandez-Rossy "tried to avoid the physical assault by driving away," but Acquino forced his way into the driver's compartment, and took control of the steering wheel, causing the car to crash. Dkt. No. 1, p. 5.

There is some dispute as to what happened next but Acquino testified at his deposition that Hernandez-Rossy shot him in the ear while the two struggled inside the vehicle. Dkt. No. 32, pp. 8-9. When Hernandez-Rossy, unarmed and unclothed from the waist up, attempted to flee the scene,[1] Tedesco shot him several times at his partner Acquino's urging. Dkt. No, 32, pp. 8-9. Officer Richard Hy ("Hy"), who is not named as a defendant, arrived at the scene after Hernandez-Rossy was shot but was still alive. Dkt. No. 32, p. 5-6. Hy questioned and examined Hernandez-Rossy, and thereafter applied a

---

[1] Plaintiff's counsel affirmed that eyewitnesses reported that Acquino and Tedesco pistol whipped Hernandez-Rossy, prompting him to run away. Dkt. No. 42, pp. 4-5

tourniquet to his wounded arm.  Dkt. No. 32, p. 5-6.  Hy testified that the Buffalo Fire Department took over, and Hernandez-Rossy lost consciousness.  Dkt. No. 32, p. 6.  At some point, an American Medical Response ambulance arrived on the scene to transport Hernandez-Rossy to the hospital, but he did not survive his injuries.  Dkt. No. 1.

According to Plaintiff, the subsequent investigation revealed that no firearm was discharged in Hernandez-Rossy's SUV and "Hernandez-Rossy did not have a firearm at any time during the events that resulted in his death."  Dkt. No. 32, p. 9.

## DISCUSSION AND ANALYSIS

Officer Acquino's Medical Records

Plaintiff seeks disclosure of Acquino's medical records relating to the physical injuries he sustained during the May 7, 2017 altercation with Hernandez-Rossy.  Defendants contend that the records are "irrelevant and privileged under Health Insurance Portability and Accountability Act of 1996."  Dkt. No. 37.  As previously noted, Plaintiff maintains that Hernandez-Rossy was never armed and that the Defendant Officers were wholly unjustified in using deadly force against him.  In the days following the shooting, during a videotaped interview in which he was represented by counsel, Acquino told state investigators that Hernandez-Rossy shot him while the two men struggled in the SUV, and that medical records from ECMC would confirm that he was wounded by gunfire.  Dkt. No. 32, p. 9.  Defendants now decline to release Acquino's medical records, arguing that they have not placed Acquino's physical injuries at issue, and that the only relevant inquiry is whether a reasonable officer on the scene would have been justified in using lethal force.  Dkt. No. 37, pp. 16-17.

Defendants argue that this Court should deny Plaintiff's Motion to Compel in its entirety because the accompanying Notice does not comply with Local Rule of Civil Procedure 7, and because Plaintiff did not attach records or deposition testimony to the motion. Dkt. No. 37, pp. 3-4, 16. I decline to deny Plaintiff's motion based on objections to its form. For purposes of moving forward with *in camera* discovery, I will accept the affirmation of Plaintiff's counsel, as an officer of this Court, that Acquino testified in this manner during his interview with investigators.

This Court finds that whether Acquino sustained a gunshot wound while he wrestled with Hernandez-Rossy in the car bears directly on whether it was reasonable for Tedesco to shoot Hernandez-Rossy after he emerged from the vehicle. *Hodge v. City of Long Beach*, 425 Fed. App'x 33, 34 (2d Cir. 2011) (in determining the reasonableness of force used by a detaining officer, a court considers "the totality of the circumstances faced by the officer on the scene," *Lennon v. Miller,* 66 F.3d 416, 425 (2d Cir. 1995), including: (1) the "severity" of the crime; (2) "whether the suspect poses an immediate threat to the safety of the officers or others;" and (3) "whether the suspect is actively resisting arrest or attempting to evade arrest by flight" (internal quotation marks omitted)); *Ortiz v. Vill. of Monticello*, 2012 WL 5395255, at *11 (S.D.N.Y. Nov. 2, 2012). Acquino's medical records take on even more significance given his sworn testimony to investigators several days after the incident that Hernandez-Rossy shot him and that his medical records would bear out his statement. Plaintiff asserts that Defendants have tampered with and destroyed evidence to cover up the true circumstances of Hernandez-Rossy's shooting. If Acquino was not actually shot during his struggle with Hernandez-Rossy, this would undermine Acquino as a witness, call into doubt the findings of the underlying investigation, and lend credible support to Plaintiff's theory of a cover-up.

For this reason, Defendants are directed to produce Acquino's medical records to my chambers for *in camera* review within 45 days of this order. This Court cannot determine whether the relevance of these records outweighs the interest in keeping them confidential without reviewing for itself Acquino's testimony before investigators. Accordingly, Plaintiff's counsel must provide within 45 days of this order a certified transcript of Acquino's testimony regarding his injuries. Plaintiff's counsel is directed to refer to the Local Rules of Civil Procedure to ensure that any subsequently filed motions comply with this Court's Rules.

Police Personnel Records

New York Civil Rights Law § 50–a provides that the personnel files of police officers are not to be disclosed except by the express written consent of the individual officer or pursuant to court order. N.Y. Civ. Rights Law § 50-a; *Mercado v. Div. of New York State Police*, 989 F. Supp. 521, 522 (S.D.N.Y. 1998). Civil Rights Law § 50-a was enacted to protect testifying officers from being harassed during cross-examination about "unsubstantiated and irrelevant complaints" against them and to prevent "*unrestricted* examination of their personnel records." *Martin v. Lamb*, 122 F.R.D. 143, 146 (W.D.N.Y. 1988) (quoting *Matter of Capital Newspapers v. Burns*, 67 N.Y.2d 562, 568 (1986)). However, in federal civil rights cases such as this one, whether a record is privileged is dictated by federal law, not state law. *See von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 141 (2d Cir. 1987); *United States v. Collier*, 2013 WL 125691, at *1 (E.D.N.Y. Jan. 9, 2013). "[I]n the context of a civil rights action asserted against police officers, [there is] no federal rule prohibit[ing] discovery of police personnel documents." *Smith v. Cnty. of Nassau*, 2013 WL 3893380, at *2 (E.D.N.Y. July 24, 2013) (internal quotations omitted).

5

The fact that there is no federal corollary to New York Civil Rights Law § 50-a does not mean that a federal civil rights plaintiff may have "free and unfettered discovery of police personnel documents." *Dorsett v. Cnty. of Nassau*, 762 F. Supp. 2d 500, 531 (E.D.N.Y. 2011) *aff'd*, 800 F. Supp. 2d 453 (E.D.N.Y. 2011) *aff'd sub nom*. *Newsday LLC v. Cnty. of Nassau*, 730 F.3d 156 (2d Cir. 2013) (internal citations and quotations omitted). Rather, to determine whether a defendant police officer's records should be disclosed in a federal civil rights case, a court "must balance the interests favoring and opposing confidentiality." *King v. Conde*, 121 F.R.D. 180, 187 (E.D.N.Y 1988).

Initially, the police officer or government entity seeking to block disclosure must make, through competent declarations, a "substantial threshold showing that harm is likely to occur as a result of disclosure of the requested documents." *Dorsett*, 762 F.Supp.2d at 532; *see King*, 121 F.R.D. at 189 (internal quotation marks omitted). "Only upon satisfying this initial threshold showing will a Court turn to the next prong and weigh the factors in favor of and against disclosure." *Id.*

"[E]ven where no substantial harm is shown . . . , an objection as to the relevance of the documents may [still] prevent their disclosure." *Cody v. N.Y.S. Div. of State Police*, 2008 WL 3252081, at *3 (E.D.N.Y. July 31, 2008) (citing *Barrett v. City of New York*, 237 F.R.D. 39, 42 (E.D.N.Y. 2006); *see also Unger v. Cohen*, 125 F.R.D. 67, 70 (S.D.N.Y. 1989) (holding that where defendants made no substantial threshold showing of specific harm, the court had no choice but to order disclosure "unless defendants' objections on grounds of relevance are sustained"). In this regard, "irrelevant records will not be subject to discovery even where defendants fail to meet the requirements for

6

shielding the documents from disclosure . . . ." *Bishop v. Cnty. of Suffolk*, 248 F. Supp. 3d 381, 389 (E.D.N.Y. 2017).

Plaintiff requests the disciplinary records of Acquino and Tedesco, and Officer Hy, who is not named as a defendant in this action. Plaintiff contends that "the defendant City of Buffalo conducted an Internal Affairs investigation into the officers involved in this incident, and that one or more of the officers involved[,] including defendant Tedesco and P.O. Richard Hy[,] have a prior disciplinary . . . history of which the defendant City of Buffalo was aware." Dkt. No. 32, p. 4. Defendants oppose disclosure of these records, arguing that "any documentation relating to [the] alleged misconduct or malfeasance on the part of Officers Tedesco, Acquino[,] and Hy has little probative value in comparison to other evidence concerning the reasonableness of Officers Tedesco, Acquino, and Hy's conduct under the circumstances existing at the time of the shooting." Dkt. No. 37, p. 10.

Defendants' argument might be availing if Plaintiff was asserting only an excessive force claim against the individual Officers and was not also alleging that the City was liable for failing to train and discipline those Officers. "[T]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements:  (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York,* 490 F.3d 189, 195 (2d Cir. 2007) (quoting *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir. 1983)) (internal quotation marks omitted)). A plaintiff may establish the existence of an official policy or custom by showing that the constitutional violation was caused by:  "(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials

7

responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *Brandon v. City of New York,* 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010) (citations omitted); *see also Spears v. City of New York*, 2012 WL 4793541, at *11 (E.D.N.Y. Oct. 9, 2012).

This Court finds that Plaintiff has shown that the requested records are potentially material and relevant to: (1) whether Acquino, Tedesco, and/or Hy, as members of a specialized Buffalo Police Department unit, were engaged in a pattern of racial profiling, using excessive force against civilians, and/or covering up such conduct; and (2) whether the Defendant City and Police Commissioner were aware of the Officers' behavior and failed to intervene. Defendants argue that "the instant action concerns the isolated actions of officers during a singular incident on May 7, 2017—unlikely to be actionable under a *Monell* theory." Dkt. No. 37, p. 10 (citing *Abujayyab v. City of New York*, 2018 WL 3978122, at *13 (S.D.N.Y. 2018)). However, Plaintiff has alleged that the Officers' abuse of Mr. Hernandez-Rossy is not an isolated incident, but rather a single example of pervasive, racially-motivated police brutality that went unchecked by the City and Police Commissioner. Dkt. No. 1. Plaintiff's counsel cites as proof of this that at least two active-duty Officers had disciplinary records of which the City and Commissioner were aware. The requested records will certainly reveal the truth or falsity of this allegation.

Based on the foregoing, I direct that Defendants produce the following records for *in camera* review: any and all personnel records and internal affairs reports related to substantiated charges or founded civilian complaints of excessive force or constitutional violations against Officers Acquino, Tedesco, and Hy that occurred prior to May 7, 2017. Defendants need not turn over any records relating to a disciplinary charge or complaint of which the Officer was exonerated. *See Law v. Cullen*, 613 F. Supp. 259, 262 (S.D.N.Y. 1985) (holding that five prior charges against the defendant police officer did not support the inference that the officer had a propensity for excessive use of force of which the defendant city knew or should have known, given that four of the five charges were unsubstantiated and the last was based on an improper search and not excessive use of force); *Hart v. Goord*, 2010 WL 1644242, at *2 (W.D.N.Y. Apr. 22, 2010) (denying as overly broad and unduly burdensome plaintiff's discovery request for grievances against a defendant corrections officer for which no disciplinary action was taken). After reviewing these records, this Court will determine whether their relevance outweighs the interest in keeping them confidential and protected from disclosure. *Levy v. Harrington*, 2011 WL 5191796, at *3 (W.D.N.Y. Oct. 31, 2011).[2]

Housing and Buffalo Strike Force Unit Records

Lastly, Plaintiff seeks the "Buffalo Police Records relating to the Housing Unit and BPD Strike Force Unit that these officers were assigned to and/or worked with regular[ly] in carrying out their duties including the date of the incident," "both of which units were disbanded subsequent to this fatal shooting on May 7, 2017." Dkt. No. 32, p. 3, 10. Specifically, Plaintiff requests "paperwork showing the official policy, practices[,] and

---

[2] Whether these records are admissible is an issue reserved to the trial judge and does not constitute a bar to their initial disclosure as Defendants suggest. Dkt. No. 37, p. 12.

9

purposes of [these] specialized units . . . ." Dkt. No. 32, p. 10.  Defendants maintain that Acquino and Tedesco were assigned to the Buffalo Police Department's Housing Unit, and not the Strike Force Unit.  Dkt. No. 37, p. 18.  This necessarily limits Plaintiff's discovery rights to Housing Unit records.  Defendants state that they have turned over voluminous sections of the Buffalo Police Department's Manual of Procedures as well as the entire Agreement for Police Services between the Buffalo Housing Authority and the City of Buffalo, which details the mandate of the Housing Unit.  Dkt. No. 37, p. 19.  Based on these representations, this Court finds that Defendants have complied with this particular discovery demand.  If Plaintiff is not satisfied with what has been produced, she will have to particularize her request so that Defendants can respond by disclosing the requested materials or asserting privilege or some other basis for not producing them.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Compel (Dkt. No. 32) is GRANTED in part and DENIED in part, as follows.

Regarding Officer Acquino's medical records related to injuries he sustained on May 7, 2017, Plaintiff's Motion to Compel is GRANTED in part.  Defendants shall disclose these records to my Chambers for *in camera* review within forty-five (45) days of this Decision and Order.  Plaintiff shall provide a certified transcript of Acquino's testimony before investigators to my Chambers within this same time frame.

Regarding the personnel records and internal affairs reports related to substantiated charges or founded civilian complaints of excessive force or constitutional violations against Officers Acquino, Tedesco, and Hy that occurred prior to May 7, 2017,

Plaintiff's Motion to Compel is GRANTED.  Defendants shall furnish these records to my Chambers within forty-five (45) days of this Decision and Order.

Following inspection of these documents, this Court will determine whether they are relevant to this action and should be produced to Plaintiff.

Regarding the request for records related to the Buffalo Police Department Strike Force Unit, Plaintiff's Motion to Compel is DENIED.

Regarding the request for records related to the Buffalo Police Department Housing Unit, Plaintiff's Motion is DENIED without prejudice to renew with particularization.

**SO ORDERED.**

DATED:   Buffalo, New York
         June 1, 2020

                                        *s/ H. Kenneth Schroeder, Jr.*
                                        **H. KENNETH SCHROEDER, JR.**
                                        **United States Magistrate Judge**