UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARGARITA ROSSY, as Administrator of the
ESTATE OF JOSE HERNANDEZ-ROSSY,                    **STATEMENT OF UNDISPUTED MATERIAL FACTS**

                          Plaintiff,

      vs.                                                  Case No.: 17-CV-00937S

CITY OF BUFFALO, and its agents, servants and employees, and
BUFFALO POLICE DEPARTMENT P.O. JUSTIN TEDESCO,
BUFFALO POLICE DEPARTMENT P.O. JOSEPH ACQUINO,
and POLICE COMMISSIONER DANIEL DERENDA,
Individually and in their representative capacities, and
AMERICAN MEDICAL RESPONSE d/b/a "AMR"
And its agents, servants and employees,

                        Defendants.
_____

      The Plaintiff, MARGARITA ROSSY, as Administrator of the ESTATE OF JOSE HERNANDEZ-ROSSY respectfully submits this Statement of Material Facts that are undisputed in support of her Notice of Motion against Defendant CITY OF BUFFALO, and its agents, servants and employees, and BUFFALO POLICE DEPARTMENT P.O. JUSTIN TEDESCO, BUFFALO POLICE DEPARTMENT P.O. JOSEPH ACQUINO, and POLICE COMMISSIONER DANIEL DERENDA, Individually and in their representative capacities, pursuant to Local Rule of Civil Procedure 56(a)(1).

      1.    That on May 7, 2017 Defendant Justin Tedesco and Defendant Joseph Acquino were on patrol as Buffalo Police Officers in marked Housing unit 164 in the Riverside area of Buffalo, New York and were working the 3:30 PM to 1:30 AM shift.

      2.    At approximately at 5:00 PM that afternoon the same two defendants initiated a car stop of a 2011 white Acura SUV operated by the decedent Jose Hernandez-Rossy

northbound on East Avenue in the Riverside section of Buffalo, NY. In so doing, the defendants Acquino and Tedesco knowingly violated several provisions of the Buffalo Police Manual of Procedures. They did not notify the police dispatcher of their intent to conduct a car stop, neither did they put over the police radio their location, the vehicle description, the plate number, the number of occupants, or the reason for initiating the car stop, all in violation of the BPD Manual of Procedures. [Doc 106-30, Exh 30, Buffalo Police M.O.P. Chapter 8, Section 9.2]

3. The Defendants Acquino and Tedesco further violated the Buffalo Police Manual Procedures in that they conducted a vehicle pursuit of the white Acura for several blocks and then pulled in front of and cut off the Acura SUV to stop it while heading eastbound on Garfield St., all while intentionally failing to notify a police supervisor of the vehicle pursuit that the defendants had initiated. [Doc 106-30, Exh 30, Buffalo Police M.O.P. Chapter 8, §9.2, §9.5(C)]

4. The Defendants Acquino and Tedesco further violated the provisions of the Buffalo Police Manual of Procedures by initiating a vehicle pursuit that was prohibited by Buffalo police regulations in that it did not involve anything more serious than a suspected traffic violation or a misdemeanor, in that the defendants later claimed to have smelled marihuana coming from the Acura SUV as they followed it. [Doc 106-30, Exh 30, BPD M.O.P. Chapter 8, §9.1 and §9.3(B)].

5. The defendants conducted the car stop by cutting off the white Acura with both defendants approaching the driver's door in a manner that violated BPD procedures, and defendant Tedesco was not trained to conduct a car stop in this way. [Doc 106-30, Exh 30, BPD M.O.P. Chapter 8, §10.2(D); Doc 106-30, EBT Tedesco p. 125-127].

6. After the car stop, Defendant Acquino and Defendant Tedesco both went to the driver's door of the Acura SUV. Defendant Acquino engaged Mr. Rossy who was in the driver's seat, and defendant Tedesco was positioned immediately to the right side and a little behind defendant Acquino at the driver's door. [Doc 106-13, EBT Tedesco p. 114-115]. During the car stop, defendant Acquino reached into the car and pulled open the driver's door of the Acura SUV and entered the vehicle making physical contact with the driver. [Doc 106-13, EBT Tedesco p. 121-124]. The Acura SUV accelerated forward at the same with defendant Acquino inside the car on the lap of Jose Hernandez. [Doc 106-13, EBT Tedesco p. 136-137]. Defendant Tedesco was left standing in the street next to where the SUV had been stopped by the defendants. [Doc 106-13, EBT Tedesco p. 139].

7. The Acura SUV accelerated forward striking the right front corner of the patrol car, and continued across the intersection of Garfield and Hartman with defendant Acquino on Mr. Rossy's lap in the driver's seat of the car. The Acura SUV left the roadway and crashed into the house located on the southeast corner of the intersection. [Doc 106-13, EBT Tedesco p. 144-145].

8. During the course of the preceding events, injury was caused the right ear and face of defendant Acquino including a partial tear of the ear, and bruising and swelling to the right side of defendant Acquino's face and head. [Doc 106-80, Exh 80, photo Acquino's injury]. The first treating physician Dr. Amy Le observed that "the ear was partially torn and was bleeding" and she did not observe any stipling, or any powder burns. Dr. Le also examined "Acquino's right jaw, which was swollen. [Doc 106-73, Exh 73]. The subsequent treating physician Dr. William Belles, M.D. who re-attached the partially torn ear, ruled out the airbag on impact as causing the injuries to defendant Acquino. Dr. Belles stated "Acquino's injury was

more extensive than what an airbag could cause. He stated there was a directional tear to the ear." [Doc 106-70, Exh 70]. The ENT surgeon also could not render an opinion that the injuries were in fact caused by a gunshot wound. *Id.*

9. During the events of May 7, 2017, the decedent, Jose Hernandez-Rossy was unarmed, and did not possess or discharge a firearm inside the car, according to the findings of the N.Y.S. Attorney General which were based on forensic testing of the physical evidence, medical and eyewitness reports, and other evidence in the case, including an exhaustive crime scene search. [Doc 106-78, Exh 78, NYS AG Report]. The NYS Attorney General also determined that defendant Acquino's injury was not caused by a gunshot wound. "In fact, Mr. Hernandez Rossy had not been armed and, although PO Acquino was seriously injured during the struggle, he had not been shot." [Doc 106-78, p. 3, Exh 78, NYS AG Report].

10. The crime scene investigation located defendant Acquino's blood, identified by DNA testing, on the upper exterior and upper interior of the "B" pillar of the driver's door frame of the Acura SUV. Defendant Acquino's blood was also found on the lower interior of the "B" pillar, and the floor mat at the base of the "B" pillar at the rear of the driver's door frame. "It is concluded that Joseph Acquino is the source of the genetic material in these specimens." [Doc 106-78, p. 16-17, 33 - NYS AG Report]. Diagram for illustrative purposes only.



11. After the Acura SUV crashed against the side of the house, defendant Tedesco ran across the intersection, entered the front passenger door, and both he and defendant Acquino physically engaged Mr. Rossy inside the car, and took Mr. Rossy out of the Acura SUV through the driver's door and onto the ground where defendant Tedesco had Mr. Rossy from behind. [Doc 106-13, p. 164-168, EBT Tedesco]. Defendant Acquino had disengaged, leaving defendant Tedesco on the ground with Mr. Rossy in a leg scissors hold in front of him. [Doc 106-13, EBT Tedesco p. 165].

12. The physical struggle continued outside the SUV on the ground for one and a half minutes while defendant Tedesco attempted to physically subdue the decedent Mr. Rossy on the ground from behind. [Doc 106-13, EBT Tedesco p. 167].

13. Both defendant Tedesco and Mr. Rossy then regained their feet and defendant Acquino re-engaged and both he and defendant Tedesco were locked up facing Rossy in the curb area of street next to the crash site. [Doc 106-49, Exh 49 still photo]. Defendant Acquino then disengaged again and took up a position 10 feet away in the street and watched as defendant Tedesco finished pulling the decedent's jacket and shirt over his head and off his body. [Doc 106-50, Exh 50 still photo; Doc 106-51, Exh 51]. Defendant Tedesco had drawn his Glock .40 service weapon after he regained his feet, and had it out during the struggle that continued into the street. [Doc 106-55, Exh 55 still video].

14. Defendant Acquino never drew his gun throughout the events of that day, not during the struggle in the SUV after it crashed, not during the struggle just outside the car where defendant Tedesco had Mr. Rossy on the ground in front of him, and not during the standing struggle that continued into the street. [Doc 106-11, EBT Acquino p. 143]. During the struggle in the street, defendant Tedesco drew his gun, and toward the end of the struggle he

wound up and struck Mr. Rossy hard in the side of his head almost knocking him to the ground. [Doc 106-13, EBT Tedesco p. 183-184]. According to the eyewitness who came out of his house that was hit by the Acura, defendant Acquino began shouting at defendant Tedesco to "shoot him, shoot him" several times only after Mr. Rossy began to run eastbound on Garfield Street. [Doc 106-16, EBT Ortiz p. 55-58].

15. Defendant Tedesco took up a one knee firing position and fired three (3) shots from his service weapon at Mr, Rossy's back from a distance of 30-40 yards, striking him in the back of the left upper arm, severing his brachial artery and ultimately resulting in his death by exsanguination. [Doc 106-72, Erie County M.E. Autopsy p.1; Doc 106-12, Tedesco police interview p.15].

16. Neither defendant Tedesco nor defendant Acquino ever saw the decedent with any weapon that day, nor saw any muzzle flash inside the Acura, and neither did any of the numerous eyewitnesses who observed the events and the extended struggle from various angles. [Doc 106-11, EBT Acquino p. 135-139; Doc 106-13, EBT Tedesco p. 183-184].

17. None of the eight (8) eyewitnesses present at the scene saw Mr. Rossy with a weapon that day. [Doc 106-78, Exh 78, NYS AG Report p. 3]. This includes the four witnesses that called 911, and another eyewitness who was videotaping the struggle from the street corner until he was yelled at by defendant Acquino to stop filming and "Call 911!" while Acquino looked directly into the camera. [Doc 106-55, Exh 55 still image]. That witness heeded the officer's commands and turned off the cell phone camera just as defendant Tedesco began pistol whipping Mr. Rossy, and before Mr. Rossy regained his footing and ran and was shot in the back. [Doc 106-57, Exh 57 cell phone video; Doc 106-52, Exh 52 photo; Doc 106-55, Exh 55 photo; Doc 106-53, Exh 53 photo; Doc 106-54, Exh 54 photo].

18. Neither defendant Acquino nor defendant Tedesco broke radio silence until after defendant Tedesco had fired the fatal gunshots and at least three (3) of the eyewitnesses had already called 911 to request assistance. The first 911 caller was a lady who lived in the house crashed into by the Acura SUV and she reported Tedesco's gunfire at 5:12:25 pm. [Doc 106-3, Exh 3 Middlebrooks 911 call]. The second 911 call came in at 5:12:32 pm and was from the sister of the witness who videotaped defendants struggling with Mr. Rossy in Garfield Street after being pulled from the SUV onto the ground, and she also referenced the shots fired in her call. [Doc 106-4, Exh 4, Olivera 911]. Three (3) seconds after this 911 call, a third 911 caller reported at 5:12:35 pm that: "There's police officers shooting a man, a police officer just hit a house and got out and shot this guy in the back." [Doc 106-5, Exh 5, Huds 911 call].

19. After firing the three (3) gunshots at Mr. Rossy's back who was running away on Garfield Street approaching the end of the block, defendant Tedesco began a foot pursuit eastbound on Garfield St., and then going south on Peoria St. where he lost sight of Mr. Rossy. [Doc 106-13, EBT Tedesco p. 197-198]. During the foot pursuit, defendant Tedesco made his initial radio transmission to the Buffalo Police Dispatcher that day stating: "Radio, Garfield and Hartman. We had a car take off on us and went into a house. My gun's in it." [Doc 106-9, Exhibit 9, audio file 02]. The police dispatcher repeated defendant Tedesco's clearly audible report that Tedesco's gun was in the car that took off, so that all of the other officers responding to the scene could hear Tedesco's report again. [Doc 106-9, Exhibit 9, audio file 04].

20. At his deposition, defendant Tedesco listened to his initial radio transmission three (3) times for clarity and then falsely testified about what he told the dispatcher regarding the events precipitated by the car stop. Defendant Tedesco falsely testified that he

transmitted the following initial report the dispatcher: "Radio, Garfield and Hartman. A car took off with my partner to the house. *My guy's in it.*" [Doc 109-13, EBT Tedesco p. 150-154] [emphasis added].

21. Defendant Tedesco further falsely testified at his EBT that he made this initial radio transmission *before* the videotaped struggle in the street *and before* he fired the three (3) gunshots at the decedent's back. Defendant Tedesco testified falsely under oath that he had made his initial radio transmission as he was running from the car stop location to where the Acura SUV had crashed against the house. [Doc. 106-13, EBT Tedesco p. 150-151].

22. The Erie County CPS records and the contents of the first three (3) 911 calls from eyewitnesses that preceded defendant Tedesco's initial radio transmission prove that the car crash and the extended struggle, and the three (3) gunshots fired by defendant Tedesco *had already taken place*. [Doc 106-2, Exh 2 Erie County CPS records; Doc 106-3, Exh 3 Middlebrooks 911 call; Doc 106-4, Exh 4 Olivera 911 call; Doc 106-5, Exh 5 Hudson 911 call.].

23. Defendant Tedesco's initial radio report to the police department was a fabrication, falsely reporting a firearm in the possession of the decedent Mr. Rossy prior to defendant Tedesco shooting him from behind.

24. Defendant Tedesco and defendant Acquino violated BPD regulations by not reporting "shots fired" to the radio dispatcher after defendant Tedesco fired his service weapon at the decedent three (3) times on Garfield Street. [Doc 106-32, Exh 32, BPD M.O.P. Chapter 3, §6.11-A; Doc 106-11, Acquino EBT p. 172].

25. Defendant Tedesco ran up Garfield St. one block to Peoria St. and turned south but did not see Mr. Rossy and doubled back to the corner of Garfield where Acquino was located, then Tedesco continued further east on Garfield St. up to Tonawanda Street and turned

south towards a police presence that he saw nearby at 568 Tonawanda Street where Mr. Rossy was located in a driveway. [Doc 106-13, EBT Tedesco p. 197-199]. The final 911 caller had reported Mr. Rossy was "bleeding out" in her neighbor's driveway at 5:16:55 pm. [Doc 106-8, Exh 8, Collier 911 call]. Ms. Collier also gave a statement to police that Mr. Rossy was conscious and speaking to her at the time she was outside calling 911. [Doc 106-81, Exh 81 Carly Collier stmt].

26. The homeowners at 564 Tonawanda St. had a video surveillance system that captured the events in front of the location where Mr. Rossy was located in the driveway. [Doc 106-82, Exh 82 Homicide Det. Redmond Rpt].

27. The first officers, PO Monteforte and PO Rivera, arrived at 5:23:05 pm [Doc 106-82, Exh 82].

28. Defendant AMR arrived in front of 568 Tonawanda St. at 5:29:19 pm and was sent away by the Buffalo police officer seen running out to it in the video; the ambulance continued north on Tonawanda St. and turned left on Garfield St. towards Peoria St., where defendant Acquino was located one block west at the corner of Peoria and Garfield. [Doc 18-84, Exh 84 photo].

29. A second ambulance from defendant AMR arrived at 568 Tonawanda St. at 5:32:44 pm [Doc 106-85, Exh 85] and rendered care to Mr. Rossy, and removed him on a stretcher from the driveway to the ambulance at 5:40:14 pm, and ultimately left with him 6 minutes and 21 seconds later at 5:46:35 pm. [Doc 106-86, Exh 86 photo].

Dated:    Buffalo, New York
          April 6, 2022

                                              *Nelson S. Torre*
                                       _____
                                          NELSON S. TORRE, ESQ.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

MARGARITA ROSSY, as Administrator of the
ESTATE OF JOSE HERNANDEZ-ROSSY,

        Plaintiff,

vs.                                                        Case No.: 17-CV-00937S

CITY OF BUFFALO, and its agents, servants and employees, and
BUFFALO POLICE DEPARTMENT P.O. JUSTIN TEDESCO,
BUFFALO POLICE DEPARTMENT P.O. JOSEPH ACQUINO,
and POLICE COMMISSIONER DANIEL DERENDA,
Individually and in their representative capacities, and
AMERICAN MEDICAL RESPONSE d/b/a "AMR"
And its agents, servants and employees,

        Defendant.

---

## CERTIFICATE OF SERVICE

      I hereby certify that I am an employee of the Law Office of Nelson S. Torre, Esq., on April 6, 2022 I electronically filed the foregoing Statement of Undisputed Facts with the Clerk of the District Court using its CM/ECF system, which would then electronically notify the following CM/ECF participants on this case:

    1.    TIMOTHY S. BRENNAN
          Phelan, Phelan & Danek, LLP
          300 Great Oaks Boulevard
          Suite 315
          Albany, NY 12203

    2.    ROBERT EMMET QUINN
          City of Buffalo Department of Law
          65 Niagara Square
          Buffalo, NY 14202

                                                                         KATHY B. CRESPO