UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARGARITA ROSSY, *as Administrator of the*
*Estate of Jose Hernandez-Rossy*,

                              Plaintiff,

        v.                                                    **DECISION AND ORDER**

                                                              17-CV-937S

CITY OF BUFFALO, JUSTIN TEDESCO,
JOSEPH       ACQUINO,       POLICE
COMMISSIONER DANIEL DERENDA, and
AMERICAN MEDICAL RESPONSE,

                              Defendants.


## I.        INTRODUCTION

        This is a civil rights and wrongful death action commenced by Plaintiff Margarita

Rossy ("Plaintiff"), the administrator of Jose Hernandez-Rossy's ("Hernandez-Rossy")

estate, for claims arising out of Hernandez-Rossy's injuries and death sustained in a

police-involved shooting.  Plaintiff sues Buffalo Police Officers Justin Tedesco and Joseph

Acquino, the police officers who stopped and shot Hernandez-Rossy; the Police

Commissioner; the City of Buffalo; and American Medical Response ("AMR"), the

ambulance company that treated and transported Hernandez-Rossy following the

shooting.  Plaintiff alleges that excessive force and negligence caused Hernandez-

Rossy's suffering and death.

        Currently pending are four summary-judgment motions.  (Docket Nos. 98, 99, 103,

107.)  Two of the motions address Plaintiff's Fifth Cause of Action, which alleges that

AMR negligently rendered first aid and treatment to Hernandez-Rossy, leading to his

death.  (Docket Nos. 98, 99.)  AMR seeks dismissal of that claim (and itself from this action), while Plaintiff seeks summary judgment against AMR.  Id.  This Court addresses these two motions in a separate Decision and Order filed contemporaneously herewith (Docket No. 143).

Considered here are the remaining two motions.  The City of Buffalo ("City"), Officers Tedesco and Acquino, and then-Police Commissioner Daniel Derenda (collectively, "City Defendants") move for summary judgment or for judgment on the pleadings dismissing the claims against them.  (Docket No. 107.[1])  Plaintiff moves for summary judgment in her own favor against the City Defendants.  (Docket No. 103.[2])

For the reasons explained below, the City Defendants' motion will be granted in part and denied in part.  More particularly, this Court will grant the City Defendants summary judgment on that portion of the First Cause of Action alleging an Eighth Amendment violation, as well as the Second, Third, Fourth, Fifth, Sixth, and Seventh Causes of Action.  Summary judgment will be denied to the City Defendants on that portion of the First Cause of Action alleging violations of Hernandez-Rossy's Fourth and Fourteenth Amendment rights.  Plaintiff's motion for summary judgment will be denied.

---

[1]In support of their motion, the City Defendants submitted a Statement of Undisputed Facts (Docket No. 107-2); an Attorney Declaration, with exhibits (Docket No. 107-3); a Memorandum of Law (Docket No. 107-1); and a Reply Memorandum (Docket No. 131).  In opposition, Plaintiff submitted Objections to the City Defendants' Statement of Material Facts (Docket No. 119); a Memorandum of Law (Docket No. 121); and an Attorney Declaration (Docket No. 120).

[2]In support of her motion, Plaintiff submitted a Statement of Undisputed Facts (Docket No. 104); a Memorandum of Law (Docket No. 105); an Attorney Declaration, with exhibits (Docket No. 106); a CD containing exhibits, transcripts and recordings of 911 calls, police radio transmission recordings and transcripts, cellphone video recording, surveillance video recording, and internal affairs documents for Officers Acquino and Tedesco (Docket No. 129); and a Reply Memorandum (Docket No. 132).  In opposition, the City Defendants submitted a Memorandum of Law and Response to Plaintiff's Statement of Facts (Docket No. 118).

## II.    BACKGROUND

### A.  The Complaint and Alleged Causes of Action

Plaintiff sues to recover for acts of alleged police brutality against Hernandez-Rossy, starting with a May 7, 2017 traffic stop by Officers Tedesco and Acquino, and ending with Officer Tedesco's fatal shooting of Hernandez-Rossy  (Complaint ("Compl."), Docket No. 1, ¶¶ 1, 2, 3, 8).

The complaint alleges seven causes of action.  The First Cause of Action alleges that Officers Tedesco and Acquino violated Hernandez-Rossy's rights in causing his death, depriving him of his Fourth, Eighth, and Fourteenth Amendment rights (id. ¶¶ 26-27).

The Second Cause of Action alleges a violation of 42 U.S.C. § 1981 by Defendant City of Buffalo for its officers' racial profiling of Hernandez-Rossy, in violation of the Fourth, Eighth, and Fourteenth Amendments (id. ¶¶ 29-31).

Plaintiff's Third Cause of Action alleges Monell municipal liability against the City for the officers' alleged misconduct (id. ¶¶ 33-35).  See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).

In the Fourth Cause of Action, Plaintiff alleges that the City and Commissioner Derenda are liable under 42 U.S.C. §§ 1981 and 1983 for the actions of Officers Tedesco and Acquino by failing to properly hire, train, supervise, or discipline them (id. ¶¶ 37-38). This is the only claim alleged against Commissioner Derenda.

The Fifth Cause of Action alleges a state common law wrongful death claim against the City, Officers Tedesco and Acquino, and AMR for negligently rendering first aid and treatment to Hernandez-Rossy, which caused him to bleed to death (id. ¶¶ 40-41).

The Sixth Cause of Action alleges a state-law negligence claim against the City and Officers Tedesco and Acquino for causing grievous bodily injuries to Hernandez-Rossy (id. ¶¶ 43-44).

Finally, the Seventh Cause of Action alleges that the City (and its employees) engaged in official misconduct by tampering with evidence and committing spoliation (id. ¶¶ 46-49).

Plaintiff seeks compensatory and punitive damages (id. WHEREFORE Cl., at p. 11[3]).

## B. Facts

Each side submitted a Statement of Facts and objections to their opponent's Statement of Facts (Docket Nos. 104, 107, 118, 119).  The documents contain widely disparate versions of the facts and characterizations of the allegations.  Pursuant to Local Civil Rule 56 (a)(1) and (2), this Court accepts the few facts agreed upon by the parties, while noting material disagreements.

### 1.  Plaintiff's Version

#### a.  Traffic Stop and Shooting of Jose Hernandez-Rossy

On May 7, 2017, Officers Tedesco and Acquino were driving on East Street in the Riverside neighborhood of Buffalo when they observed Hernandez-Rossy also driving there (City Defendants' Statement of Material Facts ("City Defs. Statement"), Docket No. 107-2, ¶¶ 2, 4; Plaintiff's Statement of Undisputed Material Facts ("Pl. Statement"), Docket No. 104, ¶ 2).  Plaintiff alleges that the officers pursued Hernandez-Rossy for several

---

[3] All page citations are to the document page numbers generated by the court's Case Management/Electronic Case Files system ("CM/ECF").

blocks, in violation of police department regulations for conducting vehicle pursuits (Pl. Statement, ¶¶ 3, 4, 5).  Plaintiff contends that Hernandez-Rossy slowed and stopped several times as the officers' patrol car passed him and cut him off (Plaintiff's Objections to City Defendants' Statement of Material Facts ("Pl. Response"), Docket No. 119, ¶ 8).  The City Defendants dispute whether the officers' actions violated departmental policy (City Defendants' Local Rule 56 (a)(2) Response to Plaintiff's Statement of Facts ("City Defs. Response"), Docket No. 118-1, ¶ 5).

After Hernandez-Rossy stopped his vehicle, Officers Acquino and Tedesco approached the driver-side door, and Officer Acquino engaged with Hernandez-Rossy (Pl. Statement, ¶ 6).  Officer Acquino reached into the car, opened the driver's door, entered the vehicle, and made physical contact with Hernandez-Rossy (id.).  The car then accelerated forward with Officer Acquino situated on Hernandez-Rossy's lap (id.).  The car first struck the officers' patrol car and then crossed through the intersection of Garfield Street and Hartman Place before crashing into a house (id. ¶¶ 6, 7).

During this incident, Officer Acquino's right ear was torn (id. ¶ 8).  Plaintiff claims that Hernandez-Rossy was unarmed, did not have a gun in his car, and did not cause Officer Acquino's injury.  She supports this assertion with the findings of the subsequent New York State Attorney General's investigation of the incident, which concluded that Officer Acquino's injuries were not caused by a gunshot wound (id. ¶¶ 9, 10).

After the crash, Officer Tedesco entered the passenger-side door and, with Officer Acquino, "physically engaged with" Hernandez-Rossy, taking him out of the car and down to the ground.  Officer Acquino then disengaged from Hernandez-Rossy, while Officer Tedesco continued to restrain him on the ground in a leg scissors hold (id. ¶ 11).

Officer Tedesco and Hernandez-Rossy at some point then regained their feet, at which time Officer Tedesco drew his service weapon (id. ¶¶ 13, 14).  As the two men continued to struggle with one another, Officer Tedesco hit Hernandez-Rossy with his weapon (id. ¶ 14).  Officer Tedesco next took a one-knee firing position and fired three shots at Hernandez-Rossy, hitting him in the back of the upper left arm and severing his brachial artery (id. ¶ 15).  Hernandez-Rossy later died from exsanguination (id.).

According to Plaintiff, Officers Tedesco and Acquino did not use the police radio until after Officer Tedesco shot Hernandez-Rossy (id. ¶ 18).  Officer Tedesco later testified (falsely according to Plaintiff) that he first radioed before the struggle began and before he fired (id. ¶ 21).  Plaintiff, however, recites the timing of 911 calls made by eyewitnesses at 5:12 p.m., before the officers radioed (id. ¶¶ 18, 22).  Plaintiff concludes that Officer Tedesco falsely reported that a firearm was in Hernandez-Rossy's vehicle before he discharged his weapon (id. ¶¶ 19, 20, 23).  Plaintiff also claims that the officers violated department policy by not immediately reporting shots fired by an officer (id. ¶ 24).

### b. Medical Treatment and Transport of Hernandez-Rossy

After he was shot, Hernandez-Rossy ran to 568 Tonawanda Street (Pl. Statement, ¶¶ 26, 28).  A 911 caller reported that Hernandez-Rossy was "bleeding out" in her neighbor's driveway on Tonawanda Street (id. ¶¶ 25, 26).  A Buffalo Fire Department truck arrived and rendered first aid.

Plaintiff relies on the testimony of Buffalo Police Officer Richard Hy, who was at the scene and observed Hernandez-Rossy's condition.  Officer Hy noted that when firefighters arrived, Hernandez-Rossy was still awake, moving, and conversant, but breathing heavily.  Hernandez-Rossy then lost consciousness and "went limp" one minute

after being turned over to the Fire Department (Supporting Declaration of Nelson S. Torre, Esq. ("Pl. Atty. Decl."), Docket No. 102, Ex. 33, p. 26).

Defendant AMR's ambulance and crew arrived at 568 Tonawanda Street at 5:32 p.m. and rendered care to Hernandez-Rossy (Pl. Statement, ¶ 29).  AMR's ambulance prepared Hernandez-Rossy for transport at 5:40 p.m. and departed the scene at 5:46 p.m. (id.).

## 2.  City Defendants' Version

The City Defendants contest that Officers Tedesco and Acquino engaged in a "vehicle pursuit" or high-speed chase, or that their stop of Hernandez-Rossy's vehicle somehow violated department policy (City Defs. Response, ¶¶ 3, 4, 5).  The City Defendants maintain that the officers observed Hernandez-Rossy smoking marijuana and attempted to stop his vehicle, which Plaintiff disputes (City Defs. Statement, ¶¶ 7, 10; but cf. Pl. Response, ¶¶ 5-6, 7).

Upon approaching the stopped vehicle, Officer Acquino asked Hernandez-Rossy questions but he did not answer.  Hernandez-Rossy instead moved his hand to the top right pocket of his jacket (City Defs. Statement, ¶¶ 11-12).  Officer Acquino believed that Hernandez-Rossy possessed a handgun (id. ¶¶ 13-16), which Plaintiff vehemently denies (Pl. Response, ¶¶ 12-16).  Hernandez-Rossy then pulled Officer Acquino into his vehicle, tried to close the driver-side door, and accelerated with Officer Acquino partially inside and struggling with Hernandez-Rossy (City Defs. Statement, ¶¶ 17, 18, 20).  Seeing a cyclist in the vehicle's path, Officer Acquino grabbed the steering wheel and directed Hernandez-Rossy's vehicle into the patrol car (id. ¶¶ 19, 21-23).  Plaintiff argues that eyewitnesses refute the City Defendants' version of events (Pl. Response, ¶¶ 19, 21-23).

Officer Acquino claims that he then heard the "loudest fireworks" go off in his right ear and felt a burning sensation (City Defs. Statement, ¶ 24).  He exited the vehicle bleeding, with his right ear partially detached (id. ¶ 25).  Officer Acquino concluded that Hernandez-Rossy had shot him (id. ¶¶ 26, 27).  Plaintiff denies these allegations (Pl. Response, ¶¶ 24-27).

At this point, Officers Tedesco and Acquino extracted Hernandez-Rossy from the vehicle (City Defs. Statement, ¶ 28).  Officer Tedesco tried to restrain Hernandez-Rossy and told him that he would shoot him if he continued resisting (id. ¶¶ 30, 31).  Meanwhile, Officer Acquino moved away from the struggle and yelled that he had been shot and needed help (id. ¶¶ 27, 32).  Officer Tedesco then pulled his service weapon, pointed it at Hernandez-Rossy, and ordered him to get on the ground or he would be shot (id. ¶ 33).  Plaintiff denies these allegations (Pl. Response, ¶¶ 28-33).

The City Defendants further claim that Hernandez-Rossy continued to resist and ran away (City Defs. Statement, ¶ 34), which Plaintiff denies (Pl. Response, ¶ 34).  Officer Tedesco again warned Hernandez-Rossy that he would shoot him if he continued to resist or flee (City Defs. Statement, ¶¶ 35, 36), which Plaintiff also denies (Pl. Response, ¶¶ 35-36).  Hernandez-Rossy did not stop, resulting in Officer Tedesco firing three shots, which the City Defendants contend was consistent with departmental regulations (City Defs. Statement, ¶ 37).  Plaintiff responds that this shooting violated the department's Manual of Procedures for the use of deadly force (Pl. Response, ¶ 37).

Wounded, Hernandez-Rossy ran for two blocks, while Officer Tedesco chased him (City Defs. Statement, ¶ 39).  Buffalo Police officers responded to Officer Tedesco's calls and found Hernandez-Rossy on Tonawanda Street (City Defs. Statement, ¶ 41).  Back at

Garfield Street, other Buffalo Police officers arrived and found Officer Acquino (id. ¶ 42; Pl. Response, ¶¶ 41, 42).

Meanwhile, Officer Tedesco joined the other officers at Tonawanda Street with Hernandez-Rossy (City Defs. Statement, ¶ 43; but cf. Pl. Response, ¶ 43).  The officers tended to Hernandez-Rossy's wound and handcuffed him (City Defs. Statement, ¶¶ 44, 45-46).  As these officers applied a tourniquet, Buffalo Fire Department personnel and then AMR's ambulance arrived (id. ¶ 46).  Plaintiff disputes this chronology (Pl. Response, ¶¶ 45, 46).

The New York State Attorney General's office investigated this incident (City Defs. Statement, ¶¶ 49-50; Declaration of Robert E. Quinn ("City Defs. Atty. Decl."), Docket No. 107-3, ¶ 7, Ex. A).  After investigation, it concluded that it was reasonable for Officer Tedesco to believe that Hernandez-Rossy had just committed felonies involving the use of physical force (including attempted murder) and was fleeing.  It further found that Hernandez-Rossy resisted arrest and failed to heed Officer Tedesco's command to stop and his warning that he might be shot (City Defs. Statement, ¶¶ 51, 52; City Defs. Atty. Decl., Ex. A, p. 16).  See N.Y. Pen. L. § 35.30(1)(a)(1) (police officer justified using deadly physical force to prevent escape of person the officer believed committed a felony or attempted to commit a felony involving the use or attempted use or threatened imminent use of physical force against a person).  The Attorney General found that the reasonableness of the officers' actions was not affected by the fact that they were ultimately mistaken that Hernandez-Rossy was armed[4] (City Defs. Statement, ¶ 55; City Defs. Atty. Decl., Ex. A, p. 16).

---

[4] Plaintiff maintains that the conclusions from the Attorney General's report are inadmissible (Pl. Response, ¶¶ 52, 55).

On April 12, 2018, then-Buffalo Police Commissioner Bryon Lockwood exonerated Officers Tedesco and Acquino, finding that their use of force was justified (City Defs. Statement, ¶ 56).

### III.    DISCUSSION

#### A.  Legal Standards

##### 1.  Dispositive Motions

###### a.    Summary Judgment

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56 (a).  A fact is "material" if it "might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," id.

The movant seeking summary judgment has the burden (through pleadings, depositions, answers to interrogatories, admissions, affidavits, and other materials, Fed. R. Civ. P. 56 (c)(1)), to demonstrate the absence of a genuine issue of material fact, Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003).

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion," Addickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970).  "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper," Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  The function of the court is not "to weigh the evidence and determine the truth of

the matter but to determine whether there is a genuine issue of fact for trial," Anderson, supra, 477 U.S. at 249.   "Assessment of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment," Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996).

But a "mere scintilla of evidence" in favor of the nonmoving party will not defeat summary judgment, Anderson, supra, 477 U.S. at 252.  A nonmoving party must do more than cast a "metaphysical doubt" as to the material facts; it must "offer some hard evidence showing that its version of the events is not wholly fanciful," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  That is, there must be evidence from which the jury could reasonably find for the nonmoving party, Anderson, supra, 477 U.S. at 252.

This district's Local Civil Rules require that the moving party submit "a separate, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried," W.D.N.Y. Loc. Civ. R. 56 (a)(1), and the opponent to submit a response to each numbered paragraph in the movant's statement, id. R. 56 (a)(2).   Each numbered paragraph in the movant's statement will be deemed admitted unless specifically controverted by a correspondingly numbered paragraph in the opponent's statement, id.

### b.    Judgment on the Pleadings

The City Defendants alternatively move for judgment on the pleadings under Federal Rule of Civil Procedure 12 (c).  Under that rule, "after the pleadings are closed— but early enough not to delay trial—a party may move for judgment on the pleadings," Fed. R. Civ. P. 12 (c).  Pleadings include the complaint, answer, and documents attached

as exhibits thereto, L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011) (citing Roberts v. Babkiewicz, 582 F.3d 418, 419 (2d Cir. 2009) (per curiam)); see Fed. R. Civ. P. 10(c).

If matters outside of these pleadings are presented and not excluded, the motion must be converted to one seeking summary judgment, Fed. R. Civ. P. 12 (c); Nance v. Equinox Music, No. 09CV7808, 2010 WL 4340469, at *2 (N.D. Ill. Oct. 22, 2010).   The Rule 12(c) motion may be granted only if all material issues can be resolved on the pleadings; if there remains an issue of fact, however, the motion must be denied, 5C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1368, at 248, 251 (Civil 3d ed. 2004).

Given the extensive materials submitted in relation to the City Defendants' motion, this Court will treat it as one seeking summary judgment rather than judgment on the pleadings (see City Defs. Atty. Decl. with exhibits; cf. Supporting Declaration of Nelson S. Torre, Esq. with exhibits ("Pl. Atty. Supporting Decl."), Docket No. 106).   This Court therefore need not assume that the pleadings are true as required for a Rule 12(c) motion, cf. 5C Federal Practice and Procedure, supra, § 1368, at 238, 242.

### 2. Qualified Immunity

Government officials performing discretionary functions generally are shielded from individual liability by qualified immunity, see Frank v. Reilin, 1 F.3d 1317, 1327 (2d Cir. 1993), "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 196 (1982).   "If it was objectively reasonable for the defendant to believe that his act did not violate the plaintiff's

constitutional rights, the defendant may nevertheless be entitled to qualified immunity." Anderson v. Creighton, 483 U.S. 635, 641, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987); Lowth v. Town of Cheektowaga, 82 F.3d 563, 568-69 (2d Cir. 1996).

Under Pearson v. Callahan, this Court first determines whether a constitutional violation occurred, and then if so, whether Officers Tedesco and Acquino are entitled to qualified immunity, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).

## B. First and Second Causes of Action

### 1. Applicable Standards: § 1983 and Constitutional Right Violations

To prove the elements of a § 1983 cause of action, Plaintiff must show that "(1) a person (2) acting under color of state law (3) subjected the plaintiff or caused the plaintiff to be subjected (4) to the deprivation of a right secured by the Constitution or laws of the United States," City of Okla. City v. Tuttle, 471 U.S. 808, 829, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985) (Brennan, J., concurring).  Here, the first two elements are met without dispute.

### a. Constitutional Rights Asserted

The constitutional rights invoked here arise under the Fourth and Fourteenth Amendments.  The Fourteenth Amendment prohibits the deprivation of life, liberty, or property without due process of law, U.S. Const. amend. XIV.  The Fourth Amendment provides, in relevant part, that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ," U.S. Const. amend. IV.  These rights under the Fourth Amendment are applicable to municipalities through the Due Process Clause of the Fourteenth

Amendment, see Elkins v. United States, 364 U.S. 206, 213, 80 S. Ct. 1437, 4 L. Ed. 2d 1669 (1960); Wolf v. Colorado, 338 U.S. 25, 27-28, 69 S. Ct. 1359, 93 L. Ed. 1782 (1949).

The Supreme Court in Brendlin observed:

> "A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, '"by means of physical force or show of authority,"' terminates or restrains his freedom of movement, Florida v. Bostick, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (quoting Terry v. Ohio, 392 U.S. 1, 19, n.16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)), 'through means intentionally applied,' Brower v. County of Inyo, 489 U.S. 593, 597, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989) (emphasis in original)."

Brendlin v. California, 551 U.S. 249, 254, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007).

On the use of deadly force, "it is not objectively reasonable for an officer to use deadly force to apprehend a suspect unless the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others," O'Bert ex rel. Estate of O'Bert v. Vargo, 331 F.3d 29, 36 (2d Cir. 2003) (citing Tennessee v. Garner, 471 U.S. 1, 3, 11, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985)); Illinois v. Gates, 462 U.S. 213, 230-32, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983).

### b.  § 1981 Liability

Plaintiff alleges in her Second Cause of Action that Defendants violated 42 U.S.C. § 1981, which provides that

> "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

42 U.S.C. § 1981.  This act prohibits intentional racial discrimination, Brown v. City of Oneonta, 221 F.3d 329, 339 (2d Cir. 2000).  "Race" in this statute is defined to include

ethnicity, Saint Francis Coll. v. Al-Kazraji, 481 U.S. 604, 609-13, 107 S. Ct. 2022, 95 L. Ed. 2d 582 (1987).  To establish a claim under § 1981, a plaintiff must come forth with evidence supporting the following elements: "(1) plaintiffs are members of a racial minority; (2) defendants' intent to discriminate on the basis of race; and (3) discrimination concerning one of the statute's enumerated activities," Johnson v. State of N.Y., 669 F. Supp. 2d 444, 449 (S.D.N.Y. 2009) (quoting Brown, supra, 221 F.3d at 339).

To succeed on a claim for discriminatory practices of the police department, Plaintiff must prove "circumstances giving rise to a plausible inference of racially discriminatory intent," Yusuf v. Vassar Coll., 35 F.3d 709, 713 (2d Cir. 1994); Haynes v. Acquino, No. 10CV355, 2010 WL 11546024, at *4 (W.D.N.Y. July 7, 2010).  She must establish that Hernandez-Rossy was stopped because of his race, Yusuf, supra, 35 F.3d at 713; Haynes, supra, 2010 WL 11546024, at *4.

The Second Circuit, however, joins nine other federal circuit courts in concluding that § 1981 does not provide a separate private right of action against state actors, Duplan v. City of N.Y., 888 F.3d 612, 620-21 (2d Cir. 2018).  That action is encompassed by § 1983, Blythe v. City of N.Y., 963 F. Supp. 2d 158, 171 (E.D.N.Y. 2013) (citing cases). Plaintiff must prove that the § 1981 violation was performed pursuant to a municipal policy or custom as stated in a § 1983 claim, Duplan, supra, 888 F.3d at 621; Patterson v. Cnty. of Oneida, 309 F.3d 206, 226 (2d Cir. 2004); see Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 733-36, 109 S. Ct. 2702, 105 L. Ed. 2d 598 (1989).

### c.  Plaintiff Lacks an Eighth Amendment Claim

Plaintiff alleges violations of the Eighth Amendment in her First and Second Causes of Action.  But that amendment does not apply here since it is undisputed that

Hernandez-Rossy was not convicted or sentenced when his rights were allegedly infringed, City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244, 103 S. Ct. 2979, 77 L. Ed. 2d 605 (1983); see Graham v. Connor, 490 U.S. 386, 398-99, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) (Eighth Amendment standard applies "only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions") (quoting Ingraham v. Wright, 430 U.S. 651, 671 n.40, 97 S. Ct. 104, 51 L. Ed. 2d 711 (1977)).  The rights of suspects who are yet to be convicted are protected by the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment, Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996).

Therefore, the City Defendants' motion for summary judgment is granted as to Plaintiff's claims under the Eighth Amendment in her First and Second Causes of Action. Plaintiff's opposing motion for summary judgment upholding her Eighth Amendment claims is denied.

## 2.  Civil Rights Violations

Plaintiff asserts that the City Defendants applied excessive force against Hernandez-Rossy.  She also argues that Officers Tedesco and Acquino are not entitled to qualified immunity.  In response, the City Defendants deny that any constitutional violations occurred.  Alternatively, they argue that disputed issues of material fact preclude granting summary judgment in Plaintiff's favor.  And they further counter that the officers' actions were lawful, justified, and reasonable, with Officer Tedesco's use of deadly force being objectively reasonable under the circumstances and justified under New York Penal Law.  The City Defendants further argue that Plaintiff does not have a

viable Equal Protection claim under 42 U.S.C. § 1981.  Finally, the City Defendants alternatively claim qualified immunity for Officers Tedesco and Acquino.

Plaintiff replies that Officers Acquino's and Tedesco's statements about the incident are false, and she argues that Defendants' excessive use of force was unreasonable as a matter of law under Second Circuit precedent, see O'Bert, supra, 331 F.3d at 36; see also Garner, supra, 471 U.S. at 1.

The City Defendants retort that by not addressing all arguments made, Plaintiff concedes or waives her arguments and objections.  The City Defendants thus view the following claims as withdrawn: use of excessive force by Officers Tedesco and Acquino; equal protection claims under § 1981; Monell claims against the City for violation of Hernandez-Rossy's Fourth and Fourteenth Amendment rights and failure to train, supervise, and discipline these officers; wrongful death claim against the City for failing to render medical care (alleged in the Fifth Cause of Action); and the negligence claims against them.

### a.    Issues of Fact Preclude Summary Judgment on the First Cause of Action

Review of the alleged facts shows two materially different versions of events.  The City Defendants claim that the officers had probable cause to stop Hernandez-Rossy, but he repeatedly refused to stop when commanded.  They also claim that Hernandez-Rossy reached for and fired a handgun at Officer Acquino and then started to drive off with the officer hanging from the open driver-side door.  The City Defendants further contend that Hernandez-Rossy continued to resist arrest and refuse commands and tried to flee.  The City Defendants maintain that these actions justified the use of deadly force.

Plaintiff counters that the officers violated Buffalo Police Department regulations in commencing and conducting the traffic stop and in pursuing Hernandez-Rossy, and that Hernandez-Rossy did not possess drugs or a weapon to provide probable cause for the stop.

Both sides agree that Officer Acquino's ear was injured when he was leaning into Hernandez-Rossy's car but disagree about the cause of the injury. If Hernandez-Rossy shot Officer Acquino—or Officer Tedesco reasonably believed that Hernandez-Rossy did so—a reasonable jury could conclude that Officer Tedesco had a reasonable basis to pursue and use force upon Hernandez-Rossy as he attempted to flee. Such a finding could result in the denial of Plaintiff's civil rights claims and the extension of qualified immunity to the officers. The factual disagreement as to the cause for Officer Acquino's injury, however, precludes entry of judgment as a matter of law for either side.

As shown by these competing versions of the facts, there remain numerous disputed issues of material fact. Some of these issues, such as whether the officers had probable cause to stop Hernandez-Rossy and the cause of the injuries to Officer Acquino (and ultimately the justification for Officer Tedesco's use of lethal force), are material and preclude summary judgment.

These issues cannot be resolved on summary judgment for either party. The City Defendants' motion for summary judgment on Plaintiff's remaining claims alleged in her First Cause of Action is therefore denied. Plaintiff's competing motion for summary judgment is also denied.

**b.     Issues of Fact Preclude Granting Qualified Immunity**

The City Defendants also invoke qualified immunity for Officers Acquino and Tedesco.  But whether it was objectively reasonable for the officers to believe that their actions did not violate Hernandez-Rossy's constitutional rights is also fact dependent, as the City Defendants concede (City Defs. Response, ¶ 19).  And as indicated above, this Court disagrees with the City Defendants' contention that the facts are undisputed and well documented (cf. Memorandum of Law in Support of the City Defendants' Motion ("City Defs. Memo"), Docket No. 107-1, p. 19).  Consequently, the disputed issues of material fact preclude extending qualified immunity to Officers Acquino or Tedesco at this stage.  Therefore, the City Defendants' motion for summary judgment seeking qualified immunity is denied.

### c. The City Defendants are Entitled to Summary Judgment on Plaintiff's Second Cause of Action

For her § 1981 claim in the Second Cause of Action, Plaintiff alleges that the City Defendants racially profiled Hernandez-Rossy, approaching him because he was of Hispanic origin.  Plaintiff, however, did not initially focus on this Cause of Action in her motion or in response to the City Defendants' motion.

Examining the elements of a § 1981 claim, see Johnson, supra, 669 F. Supp. 2d at 449, Plaintiff alleges that Jose Hernandez-Rossy was Hispanic, and therefore a member of a racial minority.  She further alleges that Officers Tedesco and Acquino discriminated against Hernandez-Rossy by depriving him of the full and equal benefit of the laws, and subjected him to unlike punishment, pains, and penalties different from white persons.

At issue is the second element of Plaintiff's § 1981 claim, the intention of these officers to discriminate against Hernandez-Rossy based on his ethnicity.  Plaintiff's

pleading and her initial moving (and opposing) papers do not allege Defendants' intention or identify any evidence of circumstances giving rise to an inference of racially discriminatory intent (cf. Memorandum of Law in Reply ("City Defs. Reply Memo."), Docket No. 131, at p. 2).  Plaintiff does not set forth any evidence that the officers knew Hernandez-Rossy's ethnicity when they first observed him driving.  Plaintiff also presents no evidence concerning the demographics of where Hernandez-Rossy was driving to presume his national origin.  Absent an additional submission, it was not clear whether Plaintiff abandoned this claim (cf. id.).

Plaintiff tried to cure this deficiency by seeking leave to add evidence from the Black Love Resists action that purports to show that Officer Tedesco (among four other officers) disproportionately issued traffic tickets to African Americans and Latin persons (see Docket Nos. 138, 136).  But this Court denied Plaintiff leave to include this evidence (Docket No. 141).

Absent the belated and excluded evidence of alleged racially-biased ticket-issuing by Officer Tedesco, Plaintiff has failed to set forth sufficient evidence to support her Second Cause of Action.  For example, Plaintiff has not presented any evidence of the officers' intention to discriminate against Hernandez-Rossy based on his ethnicity.  Consequently, the City Defendants' motion for summary judgment is granted, and Plaintiff's motion is denied.

### C.  Third and Fourth Causes of Action

Next, this Court considers together the vicarious liability claims asserted in the Third and Fourth Causes of Action against the City and former Commissioner Derenda.  The Third Cause of Action alleges that the City is liable for Officers Acquino's and

Tedesco's actions because they arose from the City's (unspecified) unconstitutional customs, usages, policies, and practices (Compl. ¶ 33).  The Fourth Cause of Action alleges that Commissioner Derenda failed to remedy the wrongs committed by Officers Tedesco and Acquino (id. ¶ 37).

### 1.  Applicable Standards:  Supervisory Liability

"A municipality may not be held liable under § 1983 solely because it employs a tortfeasor," Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 403, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997).  The text of 42 U.S.C. § 1983 imposes liability only upon a person who deprives a federal right, id.  The legislative history of § 1983 reveals that Congress intended to limit municipal liability due to concern about imposing liability on a municipality for the conduct of others, id. (quoting Pembaur v. Cincinnati, 475 U.S. 469, 479, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986), in turn citing, Monell, supra, 436 U.S. at 665-83)).

"To hold a city liable under § 1983 for unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements:  (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right," Batista v. Rodriquez, 702 F.2d 393, 397 (2d Cir. 1983); see Tuttle, supra, 471 U.S. at 824; Monell, supra, 436 U.S. at 694 (plaintiff must identify the municipal policy or custom that caused the injury).  A plaintiff needs to show that the policy or custom proximately caused the deprivation, Owen v. City of Indep., 445 U.S. 622, 633, 100 S. Ct. 1398, 63 L. Ed. 2d 673 (1980).  That policy or custom must be "the moving force" behind the violation of federal rights, City of Canton, Ohio v. Harris, 489 U.S. 378, 389, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989).  To be that "moving force," a municipality's failure to train employees must

"evidence a 'deliberate indifference' to the rights of its inhabitants" to have it found that "such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983," id. at 389; see id. at 392 (liability against a municipality only where the city's failure to train reflects deliberate indifference to the rights of its inhabitants).   A plaintiff also needs to demonstrate a causal nexus between the supervisor's conduct and the injuries alleged, Lewis v. Meloni, 949 F. Supp. 158, 163 (W.D.N.Y. 1996) (quoting Wash. Square Post 1212 v. City of N.Y., 720 F. Supp. 337, 346 (S.D.N.Y. 1989), rev'd in part, 907 F.2d 1288 (2d Cir. 1990)).

For supervisory liability under § 1983, the official either "must have been personally involved in a constitutional deprivation," Bryant v. Ciminelli, 267 F. Supp. 3d 467, 475 (W.D.N.Y. 2017), or otherwise personally responsible for the deprivation, Lewis, supra, 949 F. Supp. at 163 (alleged entrapment of plaintiff showed lack of probable cause against plaintiff).   Absent such personal involvement by a supervisor, however, "liability in § 1983 actions may be imposed only where there is some culpable action or inaction by the supervisor in the training, supervision or control of his subordinates," id.   The Second Circuit further holds that "supervisory liability may be imposed when an official has actual or constructive notice of unconstitutional practices and demonstrates gross negligence or deliberate indifference by failing to act," Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986).

Supervisory liability depends "on a showing of some personal responsibility, and cannot rest on respondeat superior," id. at 323.   Conclusory allegations of inadequate training or supervision also are insufficient to state this claim, Bryant, supra, 267 F. Supp. 3d at 475.   A supervisor who learns of a violation but fails to remedy the wrong is grossly

negligent in managing subordinates who caused the unlawful condition, Williams, supra, 781 F.2d at 323-24.

### 2. Defendants are Entitled to Summary Judgment on Plaintiff's Third Cause of Action

Plaintiff here claims that the City is liable under Monell as the officers' employer. She argues that Officers Acquino and Tedesco violated department policies in conducting a vehicle pursuit and traffic stop. She further maintains that these officers engaged in a pattern of misconduct that the City was deliberately indifferent to. Plaintiff combines Officer Acquino's disciplinary history and the suppression of a criminal defendant's statement in United States v. Arthur Jordan, No. 16-CR-93, as proof of Officer Acquino engaging in the "same pattern of unconstitutional behavior" and attempt to cover up violations of civil rights and excessive use of force that occurred with Hernandez-Rossy. She maintains that the City had notice of this pattern of misconduct from other court cases and Internal Affairs Division complaints against these officers.

The City Defendants deny that the officers were engaged in a "pursuit" as regulated by departmental policy; instead, they merely followed Hernandez-Rossy. Defendant City specifically denies any supervisory liability over these officers. The City Defendants further argue that Plaintiff did not raise these arguments in opposition to the City Defendants' motion, hence waiving that cause of action. This waiver argument, however, disregards Plaintiff's affirmative arguments in support of her motion asserting supervisory liability.

First, there are issues of fact concerning whether Hernandez-Rossy suffered any deprivation of his rights. But even assuming that Plaintiff could establish the violation of an official policy or custom, there is no evidence from which a reasonable jury could

conclude that these policies or customs were the moving force that caused Hernandez-Rossy to be denied his constitutional rights.  Plaintiff has come forth with no evidence to support her conclusory assertions that the officers violated departmental policy and that those violations somehow deprived Hernandez-Rossy of his rights.

The City Defendants' motion for summary judgment on the Third Cause of Action is granted, while Plaintiff's motion for summary judgment in her favor is denied.

### 3.  Defendants are Entitled to Summary Judgment on Plaintiff's Fourth Cause of Action

To succeed on her Fourth Cause of Action, Plaintiff must prove either Commissioner Derenda's personal involvement in depriving Hernandez-Rossy's rights or his responsibility for those deprivations.  As to the former, Plaintiff has not set forth sufficient evidence that Commissioner Derenda had any personal involvement in the alleged constitutional violations by Officers Tedesco or Acquino.  Plaintiff's contention rests solely upon the Commissioner's knowledge of past disciplinary complaints against Officers Acquino and Tedesco for allegedly similar infractions purportedly caused by the failure to train or sufficiently supervise these officers on May 7, 2017.  She cites instances from the officers' disciplinary records involving how they conducted traffic stops and used force as proof of the City's (and presumably Commissioner Derenda's) prior knowledge (Docket No. 129, Pl. Exs. 76 (Acquino IAD files), 77 (Tedesco IAD files)).

But these disciplinary complaints do not establish notice.  First, some of them post-date Hernandez-Rossy's incident and therefore could not inform Defendants of the need to enhance officer training.  As such, disciplinary complaints made after May 2017 and after Hernandez-Rossy's contact with these officers cannot constitute notice to Commissioner Derenda or the City that their training or supervision required

improvement.  Prior notice is required to be actionable.  Second, several other disciplinary incidents are unsubstantiated and do not provide notice to Commissioner Derenda for required training.  Finally, the remaining incidents are too unlike the situation involving Hernandez-Rossy to provide reasonable notice.

As for Officer Tedesco, excluding the post-event, unsubstantiated, and disparate complaints, just two disciplinary complaints remain that were sustained and for which he was sanctioned.  But again, these complaints differ from the interaction with Hernandez-Rossy.  One complaint arises from a 2015 incident where Officer Tedesco pulled the complainant from her car and took her cellphone (Docket No. 129, Pl. Ex. 77, EC2015-038).  That complaint resulted in a reprimand.  The other complaint involved a 2016 incident where Officer Tedesco took an inspection sticker from the complainant's vehicle (id., EC2016-037).  That complaint was sustained with a reprimand and suspension.  Neither incident involved a vehicular pursuit and traffic stop or the use of lethal force.  These two instances are thus materially distinguishable and cannot reasonably be found to afford prior notice to Commissioner Derenda to establish a supervisory-liability claim for Officer Tedesco's subsequent actions in 2017.

Plaintiff also relies on Officer Acquino's testimony in Jordan as evidence that Officer Acquino committed similar misconduct and engaged in a similar attempt to cover it up.  But even a cursory comparison of the arrest incident in Jordan with the facts here show that they are materially distinct.  Jordan did not involve a traffic stop, probable cause, or the use of lethal force.  And the probable cause determination in Jordan was made by officers other than Acquino.  Consequently, the suppression decisions in Jordan

fail to afford notice to the Commissioner or the City regarding necessary supervision of Officer Acquino.

Furthermore, _Jordan_ also involved the testimony and action of Officer _Michael_ Acquino, Defendant Joseph Acquino's brother, _United States v. Jordan_, No. 16-CR-93, Report & Recommendation, Docket No. 32, at pp. 5-6.  Officer _Michael_ Acquino testified at the suppression hearing before Magistrate Judge Schroeder, _id._ at 2, 5, 7, 8. Magistrate Judge Schroeder did not indicate whether Joseph Acquino testified, and Magistrate Judge Schroeder made no finding about the actions or credibility of Defendant Officer Joseph Acquino.  The decisions in _Jordan_ therefore do not reveal a pattern of misconduct by Officer Joseph Acquino.

What is left then is only Plaintiff's bare conclusory allegation that the lack of training of Officers Acquino and Tedesco led to Hernandez-Rossy's injuries, _see_ _Lewis_, _supra_, 949 F. Supp. at 164.  Plaintiff does not allege deficiencies in the Buffalo Police Department training to show it was inadequate, _cf._ _City of Canton_, _supra_, 489 U.S. at 390, or that insufficient training led to the traffic stop and Hernandez-Rossy's demise.  Plaintiff has not come forth with evidence that the failure to train either officer constitutes deliberate indifference to the rights of City residents, including Hernandez-Rossy, _id._ at 388-89, 392.  Plaintiff is silent as to the training program Officers Acquino and Tedesco undertook or should have taken to avoid violation of Hernandez-Rossy's rights.

Resolving the City Defendants' liability, "the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform.  That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty

training program," id. at 390-91.  Allowing a failure-to-train claim to go forward on a lesser standard "would result in *de facto respondeat superior* liability on municipalities" and open municipalities to "unprecedented liability under § 1983," id. at 391-92.  By Plaintiff reciting the officers' disciplinary histories, she seeks to apply this lesser standard of what "the city 'could have done' to prevent the unfortunate incident,"  id. at 392 (quoting Tuttle, supra, 471 U.S. at 823).

Plaintiff merely identifies a pattern of purported prior misconduct by these officers that allegedly required their additional training and supervision before May 2017 as support for the City's deliberate indifference.  But Plaintiff does not show the substance of Buffalo Police Department training or deficiencies therein.  The mere allegation of failure to train, however, is insufficient to establish a municipal policy or custom, Neighborhood v. Covert, 68 F.3d 1508, 1512 (2d Cir. 1995), cert. denied, 516 U.S. 1174, 116 S. Ct. 1267, 134 L. Ed. 2d 214 (1996).

As was found in Lewis, supra, 949 F. Supp. at 163, Plaintiff has not produced evidence "from which a reasonable jury could find or infer an unconstitutional municipal policy or custom based upon lack of training or supervision," id.  Plaintiff further has not established Commissioner Derenda's responsibility for Officers Acquino and Tedesco through limited disciplinary records to show their proclivity to violate constitutional rights similar to those at issue here.  The City Defendants' motion for summary judgment on the Fourth Cause of Action is thus granted.  Plaintiff's summary judgment motion on this cause of action is denied.

### D.  Fifth, Sixth, and Seventh Causes of Action

#### 1. Exercise of Supplemental Jurisdiction over Common Law Claims

Given the above disposition, the only federal claims remaining are Plaintiff's Fourth and Fourteenth Amendment claims in her First Cause of Action.  Turning to the Fifth and Sixth Causes of Action, they expressly allege violations of New York law.  And this Court construes Plaintiff's Seventh Cause of Action as alleging a state-law spoliation claim since no federal due process allegation is made.  Jurisdiction over the state-law claims exists only if this Court exercises supplemental jurisdiction.  The parties, however, have not expressly addressed whether it should do so.

Subject-matter jurisdiction over state-law claims may be raised by the parties or by the court *sua sponte*, Lyndonville Sav. Bank & Tr. v. Lussier, 211 F.3d 697, 700-01 (2d Cir. 2000).  This Court must examine its jurisdiction at any point in the proceeding, Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 351, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988) (the district court has "to consider throughout the litigation whether to exercise its jurisdiction over the case").

Under 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over Plaintiff's state-law claims, see Klein v. London Star Ltd., 26 F. Supp. 2d 689, 692 (S.D.N.Y. 1998), or may decline to hear them, 13D Charles A. Wright, Arthur R. Miller, Edward H. Cooper, and Richard D. Freer, Federal Practice and Procedure § 3567.3, at 397 (Jurisd. rev. 3rd ed. 2008).  This Court "may decline to exercise supplemental jurisdiction over a claim" if all original jurisdiction claims were dismissed, 28 U.S.C. § 1367(c)(3); see 13D Federal Practice and Procedure, supra, § 3567.3, at 400, 428-29.

Plaintiff's state-law claims arise from the same nucleus of facts as the remaining federal claims—the treatment and death of Jose Hernandez-Rossy at the hands of Officers Tedesco and Acquino.  For example, the Sixth Cause of Action alleges

negligence for the same conduct alleged as constitutional violations in earlier causes of action.  Since some original-jurisdiction claims remain for adjudication, this Court will exercise jurisdiction over the state-law claims.

## 2.  Legal Standards

### a.  Wrongful Death

Under New York law, the elements of a wrongful death action are a death of a human being; caused by the wrongful act, negligence, or default of the defendant; giving rise to a cause of action that could have been maintained, at the moment of death, by decedent if death had not ensued; survival by distributees who have suffered pecuniary loss by reason of the death; and appointment of a personal representative of decedent (here, Plaintiff), N.Y. Est. Powers & Trusts Law § 5-4.1; e.g., Prink v. Rockefeller Ctr., Inc., 48 N.Y.2d 309, 315, 422 N.Y.S.2d 911, 915 (1979).

### b.  Excessive Force

Excessive use of force is intentional conduct, not negligence, as a matter of New York tort law, Bogart v. City of N.Y., No. 13CV1017, 2016 WL 4939075, at *13 (S.D.N.Y. Sept. 6, 2016) (citing federal cases and Mazzaferro v. Albany Motel Enters., 127 A.D.2d 374, 376, 515 N.Y.S.2d 631, 632-33 (3d Dep't 1987) (the actor is liable for assault and not negligence)).

### c.  Notice of Claim Requirement

New York law requires service of a Notice of Claim for tort suits against its municipalities and municipal employees, Gen. Mun. Law. §§ 50-i(1), 50-e(1); see McNaughton v. Cnty. of Chautauqua, No. 15CV233, 2017 WL 451817, at *3 (W.D.N.Y. Oct. 10, 2017).  The Notice is a condition precedent to maintain an action against the municipal parties, State v. Waverly Cent. Sch. Dist., 28 A.D.2d 628, 628, 280 N.Y.S.2d

505, 506 (3d Dep't 1967).  This applies to state-law claims heard in federal court, Felder v. Casey, 487 U.S. 131, 151, 108 S. Ct. 2302, 101 L. Ed. 2d 123 (1988); Hardy v. N.Y.C. Health & Hosps. Corp., 164 F.3d 789, 793 (2d Cir. 1999); Jewell v. City of N.Y., No. 94 Civ. 5454 (DLC), 1995 WL 86432, at *1 (S.D.N.Y. Mar. 1, 1995) (applies "with full force" where state tort claims are appended as ancillary claims in federal civil rights action).

The Notice-of-Claim requirements "are construed strictly by New York state courts, and failure to abide by their terms mandates dismissal of the action," Lewis v. Livingston Cnty. Ctr. for Nursing and Rehab., 30 F. Supp. 3d 196, 208 (W.D.N.Y. 2014) (quotation and citation omitted), including the specific claims alleged, see McNaughton, supra, 2017 WL 4518173, at *3.

Federal claims against New York municipalities and employees brought in federal court, however, do not require a Notice of Claim, Felder, supra, 487 U.S. at 151, 140, 141, because the Notice-of-Claim requirement is inconsistent with congressional intent for federal civil rights legislation.  Plaintiff can also assert tort claims against non-governmental entity AMR without serving it with a Notice of Claim, see Clare-Hollo v. Finger Lakes Amb. EMS, Inc., 99 A.D.3d 1199, 1200, 952 N.Y.S.2d 350, 352 (4th Dep't 2012).

The Notice of Claim furnishes municipal parties with enough information to allow them to investigate the claims and (if possible) settle them before the plaintiff sues, see Waverly Cent. Sch. Dist., supra, 28 A.D.2d at 628-29, 280 N.Y.S.2d at 507.  "Any theory of liability omitted from the notice of claim may not be included in a subsequent lawsuit." See DeMorcy v. City of N.Y., 137 A.D.2d 650, 650–51, 524 N.Y.S.2d 742, 743 (2d Dep't 1988)," Jewell v. City of N.Y., supra, 1995 WL 86432, at *1.

In <u>McNaughton</u>, the Chautauqua County defendants argued that plaintiff David McNaughton's failure-to-diagnose medical-malpractice and negligence claims should be dismissed because McNaughton's Notice of Claim alleged only failure to properly maintain, handle, and/or administer injectable medications, but did not state other theories of medical malpractice or negligence (such as failure to diagnose), 2017 WL 4518173, at *3.   Then-Chief Judge Geraci agreed, holding that the Notice-of-Claim requirement "applies to theories of liability made within the scope of those state law claims," <u>id.</u>, citing <u>Jewell</u>, <u>supra</u>, 1995 WL 86432, at *1.   Because McNaughton's original and amended Notices of Claim failed to mention other theories of malpractice or negligence and the time to amend had run, Judge Geraci found that "McNaughton's state law claims against those defendants [were] limited to liability arising out of the injection of medication," the claim alleged in McNaughton's Notices of Claim, <u>McNaughton</u>, <u>supra</u>, 2017 WL 4518173, at *3.

The burden of demonstrating compliance with the Notice-of-Claim requirement is on the plaintiff, <u>Henry v. Brown</u>, 406 F. Supp. 2d 211, 215 (E.D.N.Y. 2016).

### 3.  Fifth Cause of Action

The City Defendants argue that Plaintiff did not allege every claim pursued in this case in her Notice of Claim.   For instance, Plaintiff did not initially allege that the City Defendants negligently rendered first aid or committed spoliation.   The City Defendants therefore urge that these claims should be dismissed for violating General Municipal Law § 50-e.   Plaintiff responds that her Notice of Claim sufficiently alleged her claims.

In her Notice of Claim, Plaintiff briefly described the nature of her claims as follows:

"Wrongful Death, Negligence, Negligent training, hiring and supervision, Civil Rights Violations, Police Brutality, Excessive force, Assault and

31

> Battery, Conscious Pain and Suffering, Loss of Services, Support and Consortium, and past and future pecuniary consequential damages, and exemplar and punitive damages for outrageous and wanton conduct thereby causing injury and death, all in such sum as the trier [of] fact should determine, and in excess of Ten Million Dollars,"

(City Defs. Atty. Decl., Ex. CC; City Defs. Statement, ¶¶ 57-59).

Notably, this description does not include claims involving spoliation of evidence or the provision of first aid. Plaintiff thus failed to comply with the Notice-of-Claim requirement by now alleging injury and wrongful death based on the manner of delivery of first aid to Hernandez-Rossy (as alleged in the Fifth Cause of Action) and spoliation of evidence (the Seventh Cause of Action).

The Notice of Claim does not provide adequate notice for the municipal defendants to investigate Plaintiff's claims concerning the City's deficiencies in administering first aid to justify the Fifth Cause of Action, see Waverly Cent. Sch. Dist., supra, 28 A.D.2d at 628-29, 280 N.Y.S.2d at 507. Furthermore, Plaintiff has not made a timely amendment to her Notice to correct these omissions, see N.Y. Gen. Mun. Law §§ 50-e(1)(a) (timely Notice must be served within 90 days), 50-e(5), 50-i(1) (extension of time to serve a Notice of Claim within the time for commencement of an action, that is one year and ninety days after the incident). Any amendment now would be untimely. Given Plaintiff's noncompliance with General Municipal Law §§ 50-e and 50-I, the Fifth Cause of Action must be dismissed as to the City Defendants.

### 4. Sixth Cause of Action

As for the Sixth Cause of Action alleging common law negligence, Plaintiff expressly stated negligence in her Notice of Claim (City Defs. Statement, ¶ 59; City Defs. Att. Decl., Ex. CC). The City and the officers are thus on notice of Plaintiff's Sixth Cause of Acton, preserving this claim for consideration.

A negligence claim "cannot coexist with claims for intentional torts such as those asserted here, assault, battery, and intentional infliction of emotional distress," Kirk v. Metro. Transp. Auth., No. 99 CIV 3787, 2001 WL 25865, at *1, 11 (S.D.N.Y. Mar. 14, 2001) (citations omitted).  "New York has adopted the prevailing modern view that, once intentional offensive contact has been established, the actor is liable for assault and not negligence, even when the physical injuries may have been inflicted inadvertently," Salimbene v. Merchs. Mut. Ins. Co., 217 A.D.2d 991, 994, 629 N.Y.S.2d 913, 915-16 (4th Dep't 1995) (citations omitted); Smith v. Cnty. of Erie, 295 A.D.2d 1010, 1010, 743 N.Y.S.2d 649, 650 (4th Dep't 2002) (alleged excessive force by deputies).  Plaintiff cannot allege negligence, excessive force, and assault from the same conduct, Naccarato v. Scarselli, 124 F. Supp. 2d 36, 45 (N.D.N.Y. 2000); LaLonde v. Bates, 166 F. Supp. 2d 713, 720 (N.D.N.Y. 2001).  "When a plaintiff asserts excessive force and assault claims which are premised upon a defendant's allegedly intentional conduct, a negligence claim with respect to the same conduct will not lie," Warr v. Liberatore, 270 F. Sup. 3d 637, 655 (W.D.N.Y. 2017) (quoting Dineen ex rel. Dineen v. Stramka, 228 F. Supp. 2d 447, 454 (S.D.N.Y. 2002)).

The City Defendants raise two objections to this claim.  First, they argue that Plaintiff has not demonstrated a negligence claim because she claims intentional actions such as use of excessive force that cannot constitute negligence as a matter of law, Smith, supra, 295 A.D.2d at 1010, 743 N.Y.S.2d at 650.  Second, the City Defendants contend that Plaintiff abandoned this claim by not arguing it in these motions.  Plaintiff does not distinguish Defendants' negligence from their allegedly intentional conduct.  She also does not address the City Defendants' abandonment contention.

Plaintiff has not addressed the difference between intentional conduct and negligent conduct.   She argues that the officers violated Hernandez-Rossy's constitutional rights by using excessive force, but this alleges intentional conduct akin to assault, e.g., LaLonde, supra, 166 F. Supp. 2d at 719.  This intentional conduct cannot also be negligent.

Plaintiff's failure to defend her claim either in her motion or in opposition to the City Defendants' motion also shows her abandonment of this cause of action, Gustavia Home, LLC v. Hoyer, 362 F. Supp. 3d 71, 76 (E.D.N.Y. 2019); Hutch Enterp., Inc. v. Cincinnati Ins. Co., No. 16CV1010, 2019 WL 5783574, at *15 (W.D.N.Y. Aug. 12, 2019), report and recommendation adopted, Docket No. 105 (W.D.N.Y. Sept. 18, 2019).

As such, the City Defendants' motion for summary judgment on the common law Sixth Cause of Action is granted, and Plaintiff's opposing motion is denied.

### 5.  Seventh Cause of Action

The focus of Plaintiff's summary judgment motion is her spoliation claim, which, as indicated above, was not included in her Notice of Claim.   Nonetheless, Plaintiff's spoliation claim could possibly be viewed as a constitutional due process claim, which does not require a Notice of Claim, or a common law tort, perhaps as part of the "outrageous and wanton conduct" asserted in the Notice of Claim. So construed, this Court now considers whether either claim survives summary judgment.

New York courts do not recognize "an independent tort for spoliation of evidence," Tucker v. Kaleida Health, No. 09CV719, 2011 WL 1260117, at *4 (W.D.N.Y. Mar. 31, 2011); Ortega v. City of N.Y., 9 N.Y.3d 69, 83, 845 N.Y.S.2d 773, 781 (2007); see also Oliver v. City of N.Y., No. 19CV2321, 2022 WL 633873, at *3 (S.D.N.Y. Mar. 4, 2022)

(plaintiff conflated a cause of action for alleged spoliation with discovery sanctions for spoliation).

There are two reasons that Plaintiff's spoliation claim fails.  First, Plaintiff never alleged it as a federal due process violation to avoid its omission in her Notice of Claim.  Second, if it could be recognized in the Notice of Claim, New York common law does not recognize spoliation as a tort.

Although she did not frame her spoliation allegations as a federal due process claim in the complaint, Plaintiff now contends that her claim is under the Fourteenth Amendment Due Process Clause, see Smalls v. Collins, 10 F.4th 117, 124 (2d Cir. 2021); Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997).  But while Plaintiff specifically invoked § 1983 and Hernandez-Rossy's federal rights in the first four causes of action, she did not do so in the Seventh Cause of Action.  It must therefore be presumed that Plaintiff consciously pleaded the Seventh Cause of Action as a common law breach rather than a constitutional due process violation.

But even if viewed as a substantive due process violation, the Seventh Cause of Action does not survive summary judgment.  Plaintiff alleges that "during and subsequent to" the traffic stop and shooting, the alteration of evidence "resulted in the fatal shooting death" of Hernandez-Rossy (Compl., ¶¶ 46, 48).  Yet Plaintiff does not present any evidence that the alleged altered material was forwarded to the prosecution or used in a proceeding.  Fabrication of evidence may state a due process violation, see LeClair v. Raymond, No. 1:19-cv-0028 (BKS/DJS), 2020 WL 5027278 (N.D.N.Y. Aug. 25, 2020); Smalls, supra, 10 F.4th at 124, but Plaintiff's cited cases are distinguishable from Hernandez-Rossy's circumstances because Hernandez-Rossy (and Plaintiff) lacked a

proceeding affected by the alleged fabrication of evidence, cf. LeClair, 2020 WL 5027278, at *2, 4, 9; Smalls, supra, 10 F.4th at 124 (plaintiffs claimed defendants deprived them of a fair trial by fabricating evidence).

The distinguishing common procedural thread is the existence of proceedings where the falsified evidence was used.   Here, there was no proceeding against Hernandez-Rossy (or Plaintiff) where the allegedly tampered evidence was introduced. Plaintiff has thus not shown that the alleged falsified evidence was used against Hernandez-Rossy.   Instead, Plaintiff merely alleges that the officers fabricated evidence to cover up their respective roles and justify their actions during the traffic stop and shooting, thereby obstructing the subsequent investigation of the incident and the administration of justice (Compl., ¶¶ 46, 48).   Plaintiff, however, has not set forth any evidence of a proceeding where Hernandez-Rossy's rights were implicated or how he was harmed by alleged falsification during the post-mortem investigation.   The investigations—the internal affairs investigation by the Buffalo Police Department and the Attorney General's investigation—did not implicate any of Hernandez-Rossy's procedural or substantive rights.   Therefore, even if Plaintiff somehow alleged a due process violation, any such claim fails.

Similarly, even if one accepts that Plaintiff alleged spoliation in her Notice of Claim, New York does not recognize an independent tort for spoliation of evidence, see Tucker, supra, 2011 WL 1260117, at *4; Ortega, supra, 9 N.Y.3d at 83, 845 N.Y.S.2d at 781. Plaintiff's Seventh Cause of Action thus fails on this basis as well.

Accordingly, the City Defendants' motion for summary judgment on this cause of action is granted, while Plaintiff's opposing motion for summary judgment is denied.

### E.  Punitive Damages

Finally, with claims remaining against Defendant Officers Tedesco and Acquino, this Court considers whether Plaintiff can recover punitive damages from them if she prevails (cf. Compl., at WHEREFORE Cl.).   The City Defendants argue that they are immune from punitive damages.  Plaintiff does not address this contention; instead, she merely mentions that she listed her claim for punitive damages in her Notice of Claim.

Municipalities and their employees are not subject to punitive damages, City of Newport v. Fact Concerts, 453 U.S. 247, 271, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981); Ivani Contracting Corp. v. City of N.Y., 103 F.3d 257, 262 (2d Cir. 1997) (municipal officials sued in their official capacity are immune from punitive damages) (citing Brandon v. Holt, 469 U.S. 464, 471-73, 105 S. Ct. 873, 83 L. Ed. 2d 878 (1985)).

Despite asserting punitive liability in her Notice of Claim, Plaintiff cannot recover punitive damages from the City Defendants.  Municipal employees sued in their official capacity (such as Officers Tedesco and Acquino) are also not liable for punitive damages. Furthermore, Plaintiff has not presented any evidence from which it could reasonably be concluded that the officers' took the complained-of actions in their personal capacities, such that punitive damages might be justified.  Plaintiff sued the officers in only their official capacities as acting under the color of law (Compl. ¶ 13), despite captioning the suit as against the officers "Individually and in their representative capacities" (id., at p. 1).  Thus, the City Defendants' motion for summary judgment on Plaintiff's claims for punitive damages is granted.

## IV.    CONCLUSION

The parties here present two materially different versions of the traffic stop and subsequent shooting of Jose Hernandez-Rossy.   Those factual differences—e.g., whether there was probable cause to stop Hernandez-Rossy; whether Hernandez-Rossy shot Officer Joseph Acquino; whether Officer Justin Tedesco had grounds to use lethal force—are material and preclude summary judgment on Plaintiff's Fourth and Fourteenth Amendment claims asserted in her First Cause of Action or granting qualified immunity to Officers Tedesco and Acquino.   Defendants are entitled to summary judgment or dismissal of all other claims.   Their motion for summary judgment will therefore be granted in part and denied in part, while Plaintiff's motion will be denied in its entirety.

## V.    ORDERS

IT HEREBY IS ORDERED, that the City Defendants' Motion for Summary Judgment (Docket No. 107) is GRANTED IN PART and DENIED IN PART, consistent with this decision.

FURTHER, that Plaintiff's Motion for Summary Judgment (Docket No. 103) is DENIED.

FURTHER, that this case is REFERRED for alternative dispute resolution under Section 2.1.B of the Plan for Alternative Dispute Resolution in the United States District Court for the Western District of New York ("the ADR Plan").

FURTHER, that the parties shall comply with all relevant requirements of the ADR Plan, which is available at http://www.nywd.uscourts.gov.

FURTHER, that the parties are directed to re-engage in mediation with Mediator Michael Menard or another federal-court mediator upon whom they might agree.

FURTHER, that the parties shall conclude their mediation efforts by October 31, 2023.

FURTHER, that the parties must explore consent to proceeding before a magistrate judge in accordance with 28 U.S.C. § 636 (c).  The consent form is available at https://www.nywd.uscourts.gov/forms-3.  The consent process is set forth in Loc. R. Civ. P. 73.  The parties are, of course, free to withhold consent without adverse substantive consequences.  See Fed. R. Civ. P. 73 (b)(2).

FURTHER, that the parties must file a joint written notice concerning the status of mediation and consent by November 14, 2023.

SO ORDERED.


Dated:          September 5, 2023
               Buffalo, New York


                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge