UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MARGARITA ROSSY, *as Administrator of the*
*Estate of Jose Hernandez-Rossy,*

                          Plaintiff,                    DECISION AND ORDER

vs.                                                     17-CV-0937 (MAV)

CITY OF BUFFALO, *et al.,*

                          Defendants.

_____

This matter is presently before the Court on Plaintiff's motion for reconsideration of the dismissal of her claim for punitive damages. ECF Nos. 160, 179. For the reasons discussed below, Plaintiff's motion for reconsideration is granted, and Plaintiff's claim for punitive damages is reinstated on her claims regarding alleged violations of the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983.

## BACKGROUND

In September 2017, Plaintiff commenced this case alleging seven causes of action against Defendants, including a claim under 42 U.S.C. § 1983 for violation of decedent Jose Hernandez-Rossy's Fourth, Eighth, and Fourteenth Amendment rights. ECF No. 1. Discovery extended well into 2022, and in early 2023, the parties filed four motions for summary judgment. ECF Nos. 98, 99, 103, 107.

In September 2023, Hon. William M. Skretny issued a Decision and Order ("*Rossy I*") addressing Plaintiff's summary judgment motion against the "City

Defendants,"[1] and the City Defendants' summary judgment motion against Plaintiff. *Rossy v. City of Buffalo*, No. 17-CV-937S, 2023 WL 5725283 (W.D.N.Y. Sept. 5, 2023), *vacated in part, appeal dismissed in part*, No. 23-7296-CV, 2025 WL 816301 (2d Cir. Mar. 14, 2025). Judge Skretny noted that the parties' statements of material fact presented "two materially different versions of the traffic stop and subsequent shooting of Jose Herndandez-Rossy," and found that those differences "preclude[d] summary judgment on Plaintiff's Fourth and Fourteenth Amendment claims asserted in her First Cause of Action or granting qualified immunity to Officers Tedesco and Acquino." *Rossy I*, 2023 WL 5725283 at *17. However, Judge Skretny found for the City Defendants on Plaintiff's Eighth Amendment claim and all of the other causes of action in the complaint, and dismissed those claims. *Id.* at *9–17. Further, Judge Skretny ruled that Plaintiff could not recover punitive damages on her Fourth and Fourteenth Amendment claims from the City Defendants because Plaintiff had "not presented any evidence from which it could reasonably be concluded that the officers' took the complained-of actions in their personal capacities," and municipal employees sued in their official capacity are not liable for punitive damages. *Id.* at *17.

The City Defendants appealed *Rossy I* arguing that it was improper not to award Officers Acquino and Tedesco qualified immunity from the Fourth and Fourteenth Amendment claim. *Rossy v. City of Buffalo*, No. 23-7296-CV, 2025 WL 816301, at *4 (2d Cir. Mar. 14, 2025) ("*Rossy II*"). Plaintiff cross-appealed, "arguing,

---

[1] The "City Defendants" include the City of Buffalo, Police Commissioner Daniel Derenda, and Buffalo Police Department Police Officers Joseph Acquino and Justin Tedesco.

among other things, that the district court improperly concluded that the complaint failed to assert any individual capacity Section 1983 claims and erroneously applied the qualified immunity argument to the official capacity claims rather than individual capacity claims." *Id.*

In a decision issued in March 2025, the Second Circuit vacated that part of Judge Skretny's decision which held that Plaintiff had not sued Officers Acquino and Tedesco in their individual capacities and remanded the matter for further proceedings. *Rossy II*, 2025 WL 816301 at *7. As relevant here, in a footnote in *Rossy II*, the Second Circuit stated:

> [B]ecause we conclude that Plaintiff also asserted individual capacity claims, the justification provided by the district court [in *Rossy I*] for granting summary judgment in favor of the City Defendants on the punitive damages issue is no longer applicable, as the immunity from a claim for punitive damages afforded to municipal employees in their official capacities "does not extend to a municipal official sued in his individual capacity." *New Windsor Volunteer Ambulance Corps., Inc. v. Meyers*, 442 F.3d 101, 122 (2d Cir. 2006). We nevertheless decline to exercise pendent jurisdiction over this issue because the question is not inextricably intertwined with, or necessary for, our review of the district court's ruling on qualified immunity. Our decision not to exercise pendent jurisdiction, however, does not preclude Plaintiff from seeking reconsideration of the punitive damages issue in the district court based on our ruling with respect to the individual capacity claims . . . .

*Id.* at *5 n.2.

Following the Second Circuit's ruling in *Rossy II*, Plaintiff filed a motion to "hold the punitive damages issue in abeyance pending trial," which essentially asked the district court to reconsider the ruling in *Rossy I* dismissing the punitive damages claim. ECF No. 160 ¶ 5. After that motion was briefed, the parties engaged in mediation through November 2025, at which time Plaintiff requested a status

conference to set a trial date. ECF No. 171. The matter was re-assigned to the undersigned in December 2025, and the Court held a status conference in January 2026. ECF No. 175. A trial is set to begin on September 14, 2026. ECF No. 176.

In April 2026, Plaintiff renewed her motion for reconsideration of the dismissal of Plaintiff's claims for punitive damages. ECF No. 179. That motion is presently before the Court.

## DISCUSSION

Plaintiff argues that the Second Circuit's decision in *Rossy II* established that the decision in *Rossy I* regarding punitive damages was clear error. ECF No. 179-1 at 10. Therefore, Plaintiff maintains that the Court should reconsider the issue of punitive damages, and "hold that the propriety of punitive damages is a jury question." *Id.* at 12. In response, the City Defendants contend that "no evidence in the record showed that Defendant's decision to use force in a split second after multiple warnings was motivated by evil motive or intent." ECF No. 182 at 16 (referencing the standard set forth in *Smith v. Wade*, 461 U.S. 30, 56 (1999)). Thus, the City Defendants ask the Court to deny Plaintiff's motion to reconsider. *Id.* at 20.

## I. Motion for Reconsideration

As an initial matter, the Court finds that reconsideration of the punitive damages issue is warranted in this case.

### A. Legal Standard

The Federal Rules of Civil Procedure do not recognize a motion for "reconsideration." *See Lopez v. Goodman*, No. 10-CV-6413 CJS, 2013 WL 5309747, at

4

*1 (W.D.N.Y. Sept. 20, 2013) (citing *Hamilton v. Williams*, 147 F.3d 367, 371 n. 10 (5th Cir. 1998)). However, "'[m]otions for reconsideration may be filed under Federal Rules of Civil Procedure 59(e), 54(b), or 60(b) . . . .'" *Warr v. Liberatore*, No. 13-CV-6508P, 2018 WL 3237733, at *1 (W.D.N.Y. July 3, 2018) (quoting *McAnaney v. Astoria Fin. Corp.*, 2008 WL 222524, *3 (E.D.N.Y. 2008)). Here, because the Court's decision on Defendant's motion to dismiss did not result in an appealable final judgment,[2] Rule 54(b) governs this motion for reconsideration.

Rule 54(b), "Judgment on Multiple Claims or Involving Multiple Parties," provides that:

> When an action presents more than one claim for relief--whether as a claim, counterclaim, crossclaim, or third-party claim--or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer

---

[2] The Second Circuit explained its jurisdiction over the parties' appeal:

> "Ordinarily, the denial of summary judgment is not immediately appealable because such decision is not a final judgment." . . . However, under the collateral order doctrine, "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." . . . Accordingly, "we may review a denial of summary judgment based on qualified immunity on an interlocutory basis if it may be resolved on stipulated facts, or on the facts that the plaintiff alleges are true, or on the facts favorable to the plaintiff that the trial judge concluded the jury might find." . . . . However, "[i]f a factual determination is a necessary predicate to the resolution of whether immunity is a bar, review is postponed and we dismiss the appeal." . . . .

> When reviewing a qualified immunity determination, we may also "exercise pendent jurisdiction over issues that are not ordinarily subject to interlocutory review whenever (1) they are 'inextricably intertwined' with the determination of qualified immunity or (2) their resolution is 'necessary to ensure meaningful review' of the district court's ruling on qualified immunity." . . . . Pendent jurisdiction may be appropriate where, for instance, there is "substantial factual overlap bearing on the issues raised," . . . or where doing so "best serves the interests of judicial economy" . . .

*Rossy II*, 2025 WL 816301 at *4 (internal citations omitted).

> than all the claims or the rights and liabilities of fewer than all the
> parties does not end the action as to any of the claims or parties and may
> be revised at any time before the entry of a judgment adjudicating all
> the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). Though this rule indicates that the district court has inherent power to reconsider its own entries prior to the entry of a judgment adjudicating all the claims, "[t]he Second Circuit has 'limited district courts' reconsideration of earlier decisions . . . by treating those decisions as law of the case, which gives a district court discretion to revisit earlier rulings in the same case, subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'" *Warr*, 2018 WL 3237733, at *2 (quoting *Official Comm. of the Unsecured Creditors of Color Title, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003)).

For these reasons, the Second Circuit has also stated that motions for reconsideration should generally be denied "'unless there is an intervening change of controlling law, the availability of new evidence, or the need to correct clear error or prevent manifest injustice.'" *Warr*, 2018 WL 3237733, at *2 (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.), *cert. denied*, 506 U.S. 820 (1992)). "'These criteria are strictly construed against the moving party so as to avoid repetitive arguments on issues that have been considered fully by the court.'" *Boyde v. Osborne*, 2013 WL 6662862, *1 (W.D.N.Y. 2013) (quoting *Griffin Indus., Inc. v. Petrojam, Ltd.*, 72 F. Supp. 2d 365, 368 (S.D.N.Y. 1999)).

### B. The Punitive Damages Ruling in *Rossy I*

Here, the specific ruling at issue from *Rossy I* is the ruling that Plaintiff cannot

recover punitive damages from the City Defendants because Plaintiff sued the officers only in their official capacities, and municipal employees sued in their official capacities are not liable for punitive damages. *Rossy I*, 2023 WL 5725283 at *17. In *Rossy II*, the Second Circuit found that "the district court erred in concluding that Plaintiff failed to sue Tedesco and Acquino in their individual capacities." *Rossy II*, 2025 WL 816301 at *5. Although the Second Circuit declined to address the punitive damages issue because it was not "inextricably intertwined with, or necessary, for [the Circuit Court's] review of the district court's ruling on qualified immunity," it noted that Plaintiff was not precluded from seeking reconsideration of *Rossy I*'s ruling on the punitive damages issued "based on our ruling with respect to the individual capacity claims." *Rossy II*, 2025 WL 816301 at *5 n.2.

The so-called "mandate rule," a branch of the law-of-the-case doctrine, "holds 'that where issues have been explicitly or implicitly decided on appeal, the district court is obliged, on remand, to follow the decision of the appellate court.'" *Burrell v. United States*, 467 F.3d 160, 165 (2d Cir. 2006) (quoting *United States v. Minicone,* 994 F.2d 86, 89 (2d Cir.1993)). "To determine whether an issue remains open for reconsideration on remand, the trial court should look to both the specific dictates of the remand order as well as the broader spirit of the mandate." *United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001) (internal citation and quotation marks omitted).

Here, although the specific dictates of the remand order do not compel a reconsideration of *Rossy I*'s ruling on punitive damages, the "spirit of the mandate" nevertheless suggests that reconsideration of the punitive damages issue is

7

appropriate because the Second Circuit's *Rossy II* decision undermined the basis for that ruling. That is, by finding that it was error in *Rossy I* to find that Plaintiff did not sue Officers Tedesco and Acquino in their individual capacities, *Rossy II* rendered the justification offered in *Rossy I* for the ruling on punitive damages "no longer applicable." *Rossy II*, 2025 WL 816301 at *5 n.2. Accordingly, this Court will reconsider the issue of punitive damages to correct a clear error.

## II. Punitive Damages

Upon reconsideration of the punitive damages claims dismissed in *Rossy I*, the Court reinstates Plaintiff's request for punitive damages.

### A. Legal Principles

It is well-settled that "'punitive damages are available in a 'proper' § 1983 action . . . .'" *Smith*, 461 U.S. at 35 (quoting *Carlson v. Green*, 446 U.S. 14, 22 (1980)). This includes actions "against state or local officials in their individual capacity when their actions violate Section 1983." *Phelan ex rel. Phelan v. Torres*, No. 04 CV3538 ERK, 2005 WL 4655382, at *15 (E.D.N.Y. Sept. 20, 2005) (citing *Smith*, 461 U.S. at 35). Whether or not punitive damages should be awarded is typically a question for the jury to decide. *Picciano v. McLoughlin*, 723 F. Supp. 2d 491, 506 (N.D.N.Y. 2010).

"[A] a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith*, 461 U.S. at 56. Where the plaintiff "'has provided sufficient evidence to overcome summary judgment with respect to excessive force, the Court

8

cannot state as a matter of law that the [plaintiff] is not entitled to punitive damages.'" *Paul v. City of New York*, No. 16-CV-1952 (VSB), 2023 WL 3724152, at *13 (S.D.N.Y. May 30, 2023) (quoting *Lazaratos v. Ruiz*, 00–CV–2221, 2003 WL 22283832, at *9 (S.D.N.Y. Sept. 30, 2003), and collecting cases).

## B. The Evidence in the Present Case

As noted in *Rossy I*, and as is evident from the briefing on the instant motion (ECF Nos. 179-1, 182, 183) and the parties' statements of "undisputed" facts (ECF Nos. 104, 107-2, 118-1, 120), "[r]eview of the alleged facts shows two materially different versions of events." *Rossy I*, 2023 WL 5725283 at *8. For instance,

> The City Defendants claim that the officers had probable cause to stop Hernandez-Rossy, but he repeatedly refused to stop when commanded. They also claim that Hernandez-Rossy reached for and fired a handgun at Officer Acquino and then started to drive off with the officer hanging from the open driver-side door. The City Defendants further contend that Hernandez-Rossy continued to resist arrest and refuse commands and tried to flee. The City Defendants maintain that these actions justified the use of deadly force.
>
> Plaintiff counters that the officers violated Buffalo Police Department regulations in commencing and conducting the traffic stop and in pursuing Hernandez-Rossy, and that Hernandez-Rossy did not possess drugs or a weapon to provide probable cause for the stop.
>
> Both sides agree that Officer Acquino's ear was injured when he was leaning into Hernandez-Rossy's car but disagree about the cause of the injury. If Hernandez-Rossy shot Officer Acquino—or Officer Tedesco reasonably believed that Hernandez-Rossy did so—a reasonable jury could conclude that Officer Tedesco had a reasonable basis to pursue and use force upon Hernandez-Rossy as he attempted to flee. Such a finding could result in the denial of Plaintiff's civil rights claims and the extension of qualified immunity to the officers. The factual disagreement as to the cause for Officer Acquino's injury, however, precludes entry of judgment as a matter of law for either side.

*Rossy I*, 2023 WL 5725283 at *8–9.

The City Defendants argue that "no evidence in the record showed that Defendant's decision to use force in a split second after multiple warnings was motivated by evil motive or intent . . . . [and] nothing from the record could be used to infer that Defendants had any reason to harbor a personal animus toward the Decedent." ECF No. 182 at 16. The Court disagrees. In this case, material facts remain in dispute regarding whether the City Defendants had probable cause to stop Hernandez-Rossy, the actual cause of the injuries to Officer Acquino, and the reasonableness of Officer Tedesco's perception of the cause of Officer Acquino's injuries (and therefore the reasonableness of Officer Tedesco's use of force). *Rossy II*, 2025 WL 816301 at *6; *Rossy I*, 2023 WL 5725283 at *9.

Therefore, the Court finds that – in light of the Second Circuit's decision in *Rossy II* – the City Defendants are not entitled to summary judgment on the issue of Plaintiff's entitlement to punitive damages, and that claim is reinstated. *See, e.g.,* *Farnsworth v. City of Geneva*, 750 F. Supp. 3d 152, 170 (W.D.N.Y. 2024) (denying the defendants' motion to strike plaintiff's request for punitive damages because the court found the plaintiff had provided sufficient evidence to overcome summary judgment with respect to excessive force); *Lee v. Cnty. of Onondaga*, No. 513CV01285BKSTWD, 2016 WL 9441472, at *10 (N.D.N.Y. Aug. 19, 2016) (declining to dismiss a claim for punitive damages where material facts were in dispute regarding whether the plaintiff resisted while being escorted into the booking area, and whether the officers took him to the ground using reasonable force). As Plaintiff notes, "[i]f defendants believe, after the trial proof has closed, that no reasonable jury could award punitive

damages, they can make the appropriate motion at that time." ECF No. 179-1 at 15.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to reconsider [ECF No. 160, 179] is GRANTED, and Plaintiff's punitive damages claim is reinstated.

SO ORDERED.

Dated:      June ___15___, 2026
            Rochester, New York

HON. MEREDITH A. VACCA
United States District Judge

11