UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MARGARITA ROSSY, *as Administrator of the Estate of Jose Hernandez-Rossy*,

          Plaintiff,

    v.

CITY OF BUFFALO, *et al.*,

          Defendants.

17-CV-937-MAV-HKS

---

### DECLARATION OF SPENCER L. DURLAND IN SUPPORT OF PLAINTIFF'S MOTION FOR EXPEDITED CONSIDERATION AND FOR AN *IN LIMINE* RULING ADMITTING A REPORT OF TESTING FOR GUNSHOT RESIDUE

SPENCER L. DURLAND, under penalty of perjury and pursuant to 28 U.S.C. § 1746, declares the following to be true and correct:

1.    I am a partner in Hoover & Durland LLP. Along with Nelson S. Torre, Esq., we represent Plaintiff Margarita Rossy, Administrator of the Estate of Jose Hernandez-Rossy (the "Estate").

2.    I make this declaration upon my personal knowledge and my knowledge of the record in this matter.

3.    Jose Hernandez-Rossy was shot and killed on May 7, 2017, during an encounter with police officers Justin Tedesco and Joseph Acquino (the "Officers").

4.    Governor Andrew Cuomo issued an executive order directing the New York State Office of the Attorney General ("OAG") to determine whether the Officers had committed a crime. (Dkt. 107-4 (OAG report) at 1.)

5.    One of the issues the OAG considered was whether Hernandez-Rossy had shot Acquino while the two were inside Hernandez-Rossy's vehicle. (*Id.* at 13.)

6.     To that end, the OAG retained Wayne D. Niemeyer, a Senior Research Scientist with McCrone Associates, Inc., to test Hernandez-Rossy's jacket and one of the vehicle's airbags for the presence of gunshot residue ("GSR"). A true and correct copy of the OAG's request for expert services is attached as **Exhibit A**.

7.     On August 22, 2017, Niemeyer issued a report stating that there was no GSR on either the jacket or the airbag. A true and correct copy of this report (the "GSR Report") is attached as **Exhibit B**.

8.     On February 10, 2026, the Court issued a pretrial order which, among other things, directed the parties to "work in good faith toward an agreement on [stipulations as to testimony and evidence]." (Dkt. 176 at 6.)

9.     On May 11, 2026, Mr. Torre wrote a letter to defense counsel Robert Quinn, Esq. proposing a meet-and-confer to discuss evidentiary stipulations.

10.     During the ensuing videoconference, Mr. Quinn requested a letter itemizing the Estate's proposals.

11.     On June 1, 2026, I sent Mr. Quinn a seven-page letter listing specific exhibits the Estate intends to introduce at trial and specific evidentiary issues that are not open to reasonable debate. A true and correct copy of this letter is attached as **Exhibit C**.

12.     During a follow-up videoconference on June 15, 2026, Mr. Quinn promised to respond in writing by June 18, 2026. But he failed to do so.

13.     On July 3, 2026, I sent Mr. Quinn another letter requesting a response to the Estate's proposals. A true and correct copy of this letter is attached as **Exhibit D**.

14.     Mr. Quinn again failed to respond, so on July 22, 2026, I sent him a final prompt via email. Defense counsel Florina Altshiler, Esq. replied to my email later that evening, stating that the Officers would not relinquish any evidentiary objection to

- 2 -

any exhibit the Estate might seek to introduce at trial. A true and correct copy of my email, with attachments, and Ms. Altshiler's reply is attached as **Exhibit E**.[1]

15.    For the reasons set forth in the accompanying memorandum of law, the Court should (i) set an expedited briefing schedule and grant expedited consideration; (ii) rule *in limine* that the GSR Report is admissible without the need for live foundational testimony; and (iii) grant any alternative or additional relief the Court deems just and proper.

Dated:    Buffalo, New York
          July 24, 2026

**HOOVER & DURLAND LLP**

By:  s/Spencer L. Durland
       Spencer L. Durland
561 Franklin Street
Buffalo, New York 14202
(716) 800-2605
*sdurland@hooverdurland.com*

---

[1]    The numbering at the bottom-center of the page has been added for ease of reference.

# EXHIBIT A



**State of New York - Office of the Attorney General**

**REQUEST FOR EXPERT SERVICES - Important Instructions appear on Page 3**

| Section 1: Expert Information |
|---|

Expert's Full Name: Wayne D. Niemeyer

Company Name: McCrone Associates

Billed To: ☐ ☐

Expertise/Occupation/Job Title: Senior Research Scientist       Fed. ID# / SS #: _____

Billing Address: 850 Pasquinelli Drive

City: Westmont       State: IL       Postal Code: 60559

Phone #: 630-887-7100    Fax #: 630-887-7417    E-Mail Address: Wniemeyer@mccrone.com

Is Public Officer Law §73, Subdivision 8-A, certification required?: ☐ Yes ☑ No   If "Yes", was it processed?: ☐ Yes ☐ No

| Section 2: Case Information |
|---|

Name of Case: Jose Hernandez Rossy - SIPU 17-007

Client Agency(ies): _____

OAG #: _____    Court: n/a _____    Index #: _____

Approximate Value of Case: $_____    Has opposing party already identified an expert in this field?: ☐ Yes ☐ No

Type of Case: SIPU - Police Involved Shooring _____    Is the Case likely to go to Trial? ☐

1) Describe any time constraints in hiring the Expert (include dates):
 N/A - but due to the nature of the case, would like to accomplish the objectives within the next 2-3 weeks.

2) Explain the basis for selecting this Expert (copy of most current Curricula Vitae must be attached), the services to be performed, the need for the service(s) and the expected outcome (provide a narrative about this case):

This expert is one of few national experts accredited in analysis of Primer Gun Shot Residue. Our case involves a genuine issue as to whether or not a firearm was discharged inside a vehicle. The expert will analyze evidence from the vehicle to determine whether or not primer gun shot residue is present. This is virtually the only way we can determine whether or not a weapon was discharged in the vehicle. The expected outcome will be a determination of primer GSR present or not present.

3) List all other Experts considered, their hourly rates, and the reason(s) they were not selected:
 RJ Lee Group (Monroeville PA) was the only company located that was capable of doing the exact same work. Its rate is a combination of "per task" and "per hour" (as is McCrone's rate) and was virtually the same as McCrone Associates. This vendor was not selected because the OAG has worked with McCrone on a prior SIPU case and found the product to be superior.

4) Are there any other Experts also being retained for this case?    ☐ Yes    ☑ No
         If "No", proceed to Section 3. If "Yes", please answer the following questions:
a) Identify the names and field of Expertise of all other Experts used in this case:

b) For each Expert, identify the total amount already approved:

c) What is the total expense amount being sought (or already allocated) for these other Experts?:
     $1,350 - $1,750

**State of New York - Office of the Attorney General**

**REQUEST FOR EXPERT SERVICES - Important Instructions appear on Page 3**

**Section 3: Estimated Hours and Fees**

| Cost Item | Dollar Amount | Per Hour | How Many Hours | Per Half Day | How Many ½ Days | Per Day (8 Hrs.) | How Many Days | Cost Item Total |
|---|---|---|---|---|---|---|---|---|
| Preparatory Work | $ 350 | ☑ | 1 | ☐ | | ☐ | | $ 350 |
| Court Work | $ | ☐ | | ☐ | | ☐ | | $ |
| Travel Expenses | $ | ☐ | | ☐ | | ☐ | | $ |
| Misc. Expenses | $ 1,000 | | | | | | | $ 1,000-1,400 |
| Independent Medical Evaluation (IME) | $ | | | | | | | $ |
| Grand Total: | | | | | | | | $ 1350 - 1750 |

*If multiple people are performing work for this request, attach their Names, Titles & their hourly rates on separate sheet of paper.

Estimated Date of Commencement: Asap                 Estimated Date of Completion: 5 - 10 day turnaround

NOTE: All Rates (Fees) must be verified with Expert.  Did Requester verify all Rates with Expert?:   ☑ Yes      ☐ No

**Section 4: Requester Information**

Requester's Full Name: Jennifer Sommers                 Date Requested: 5-24-17

Requester's Title:  Deputy Chief - Special Investigations and Prosecutions Unit

Alternative Contact Person:

Bureau: Special Investigations and Prosecution          Bureau Code:                Region: ROC

Please sign here:

Jennifer M. Sommers          _Jennifer Sommers_          5-22-17
Print Name                 Signature                 Date

**Section 5: Required Signature Approvals**

Bureau Chief/Assistant Attorney General in Charge

Print Name                 Signature                 Date

Executive Deputy Attorney General

Print Name                 Signature                 Date

1st Deputy Attorney General (Required if aggregate of all Experts working on case exceeds $10,000)

Print Name                 Signature                 Date

**State of New York - Office of the Attorney General**                                    )

**REQUEST FOR EXPERT SERVICES - Important Instructions appear on Page 3**

| Section 6: Necessary Approvals (Budget & Fiscal Management Bureau Only) |
| --- |

Expert Request Fees have been:  ☐ Approved   ☐ Not Approved   Assigned Expert/Contract Number: _____

Approved By: _____          _____
                    Signature (Budget & Fiscal Management)                                               Date

## IMPORTANT INSTRUCTIONS

1.  The Requester assigned to this case must completed Sections 1 through 4 and sign at the bottom of Section 4. If additional space is needed, please attach separate sheets of paper. Whenever possible, the request should be submitted to the OAG Purchasing Team well in advance of the date the Expert's services will be required.

2.  The Requester must obtain all the required authorized approval signatures, from the Bureau Chief/Assistant Attorney General in Charge up to the 1st Deputy Attorney General.

3.  If the estimated total cost exceeds $50,000, either a formal competitive bid is conducted, or we are required to seek an exemption from the Office of the State Comptroller (OSC); and a formal contract is required in both scenarios.

    Upon approval of an exemption, the OAG Purchasing Team is required to publish advanced notice of the action in the New York State Contract Reporter. The Expert's Name is not required to be published in the advance notice. NOTE: If this is a case requiring no publication at any time, please provide the reasons for no publication within your request.

    The OAG Purchasing Team is responsible for competitive bid and/or exemption request, as well as completing the contract process. OSC approval is required in all instances before the Contract is official. We have to allow time for processing a competitive bid and/or exemption request (followed by creation of the contract). So, keep this in mind to ensure the contract's start date will coincide with the date when the Expert's services will be required.

4.  An exemption request is also required if we have sole/single source procurement request and estimated total cost exceeds $50,000. An Expert is considered a "Sole Source" if the Expert is the only known person/company capable of providing the required services. An Expert is considered a "Single Source" if two or more Experts can provide the required services, but the OAG selects one Expert over the other for reasons such as: unique expertise or previous experience with similar cases. In either instance, the OAG is required to demonstrate this is a Sole/Single Source request.

5.  In an "Emergency" situation, where an Expert's services are needed immediately, the Requester (AAG) must secure approval of the Bureau Chief (and/or upper management), and then contact the OAG Purchasing Team for assistance.

6.  If the total aggregated dollar amount being requested for the whole case (all Experts) exceeds $10,000, then signature approval of the 1st Deputy Attorney General is required. (Example: Expert A will cost $9,000, Expert A does not need 1st Deputy Attorney General signature approval. However, Expert B is later brought in for this same case, and will cost $2,000. The total aggregated dollar amount for the whole case is now $11,000; thus, 1st Deputy Attorney General signature approval is now needed to add second Expert to the case.)

CONTACT INFORMATION:
OAG Purchasing Team, Budget & Fiscal Management Bureau, State Capitol, Albany, NY 12224-0341; E-Mail: experts@ag.ny.gov

For assistance with the Expert Request: Sharon Weis, who can be reached by phone at 518/776-2114; by fax at 518/915-7750, or by e-mail at sharon.weis@ag.ny.gov or experts@ag.ny.gov

BFM022 – (rev. 12/14)                          Page 3 of 3

# EXHIBIT B



**McCRONE**
**ASSOCIATES. INC.**
850 Pasquinelli Drive • Westmont, Illinois 60559-5539
630-887-7100 • Fax: 630-887-7417

22 August 2017

Ms. Jennifer M. Sommers
Deputy Chief
New York State Office of the Attorney General
144 Exchange Boulevard, Suite 200
Rochester, NY  14614

**Subject:  GSR Analysis/Offense Number SIPU 17-007**
**Re:  McCrone Associates Project MA62373**

Dear Ms. Sommers :

This report summarizes the results of our analyses to determine the presence/absence of primer component gunshot residue (GSR) particles on one "hoodie" type sweatshirt/jacket and two "snips" from the driver's side vehicle airbag.  Analysis results were reported via our phone conversation on 02 August 2017.  This work was conducted under authority of your payment via check.

**SAMPLE RECEIPT**

The evidence items were received via UPS® Next Day Air on 16 June 2017, and were stored at laboratory ambient temperature in a locked cabinet until analysis.

You requested GSR analysis to be conducted on the sweatshirt/jacket (Item 5) and airbag items (Item 46B.1 and Item 29.1).  The purpose for analysis of the airbag swatches is to determine if the igniter system utilized the same type of primer cap as used for ammunition (known for at least two airbag manufacturers).  If so, then GSR-like particles would be deposited on the vehicle's interior surfaces, including the occupants.

The evidence box and contents were photographed on 28 July 2017.  Documentation photographs are presented in Appendix A.

**PREPARATION**

Standard GSR tape lift collection stubs were used to obtain samples from the sleeves and front of the sweatshirt/jacket; one GSR collection stub used for both sleeves (red boxes) and one GSR collection stub for the front (green box) as shown below:

The results and conclusions, herein, have been peer-reviewed and are considered thorough and complete by McCrone Associates, Inc. The results apply exclusively to the samples analyzed and documented in this report. No further revisions will be made unless a corrective action is deemed warranted by McCrone Associates, Inc. Dissemination, interpretation, and/or reproduction, except in whole, are not recommended as doing so may alter and/or nullify the results.

www.mccrone.com

Ms. Jennifer M. Sommers
MA62373



One standard GSR tape lift collection stub was used to obtain samples from the two airbag swatches (both sides of each) as shown (blue shaded regions):



Prior to analysis, the tape lift stubs were carbon coated to a thickness of ~5 nm (~50Å) with the Gatan Model 681 coater in order to ensure electrical conductivity in the scanning electron microscope (SEM).

## ANALYSIS

The analysis is conducted in accordance with ASTM Designation E 1588-17: "Standard Practice for Gunshot Residue Analysis by Scanning Electron Microscopy/Energy Dispersive X-Ray Spectrometry."

The results and conclusions, herein, have been peer-reviewed and are considered thorough and complete by McCrone Associates, Inc. The results apply exclusively to the samples analyzed and documented in this report. No further revisions will be made unless a corrective action is deemed warranted by McCrone Associates, Inc. Dissemination, interpretation, and/or reproduction, except in whole, are not recommended as doing so may alter and/or nullify the results.

Ms. Jennifer M. Sommers
MA62373

The analysis for this project was conducted using the JEOL 6480LV scanning electron microscope (SEM) that is equipped with an Oxford INCA® energy dispersive X-ray spectrometry (EDS) analysis system. The software program for gunshot residue analysis is used to automate the entire system and maintain control on the SEM stage movements and electron beam positioning. The pertinent SEM parameters are:

| 1 | Beam accelerating voltage | 25 kV |
|---|---|---|
| 2 | Magnification | 350 X |
| 3 | Acquisition time | 2 seconds live time (with 40 to 50% dead time) |
| 4 | Brightness and contrast threshold settings | Set to detect particles with average atomic number greater than manganese |

An internal QA/QC GSR particle reference stub (wdnGSRstd) is included with each set of sample stubs to ensure that the system is properly detecting known GSR particles before the automated analysis is allowed to continue.

After completion of the automated analysis, up to six particles classified as characteristic GSR (i.e., containing lead-barium-antimony) are relocated, a 20 second live time EDS spectrum is obtained, and the particle composition, size and shape are confirmed. Particles consistent with GSR (such as lead-antimony, barium-antimony, and lead-barium) are confirmed by inspection of the original EDS spectra and are usually not relocated unless suspected to be a characteristic particle. All spectra associated with "unclassified" particles are re-inspected to identify potential characteristic GSR and/or consistent particles.

The analysis results are:

### Items 46B.1 and 29.1 – Airbag swatches

No characteristic gunshot residue particles (i.e., containing the elements lead, barium, and antimony) were found on the stub.

### Item 5 – Sweatshirt/jacket sleeves

No characteristic gunshot residue particles (i.e., containing the elements lead, barium, and antimony) were found on the stub.

The results and conclusions, herein, have been peer-reviewed and are considered thorough and complete by McCrone Associates, Inc. The results apply exclusively to the samples analyzed and documented in this report. No further revisions will be made unless a corrective action is deemed warranted by McCrone Associates, Inc. Dissemination, interpretation, and/or reproduction, except in whole, are not recommended as doing so may alter and/or nullify the results.

Ms. Jennifer M. Sommers
MA62373

## Item 5 – Sweatshirt/jacket front

No characteristic gunshot residue particles (i.e., containing the elements lead, barium, and antimony) were found on the stub.

The SEM/EDS data summaries are presented in Appendix B.

Upon completion of the analysis, the tape lift stubs were returned to their respective plastic vials. The vials were placed into a zip-type plastic bag which was sealed with evidence tape, and placed into the original evidence shipping box, along with the other evidence items. The box was returned to your office to the attention of Mr. David Guidici.

## CONCLUSION AND DISCUSSION

No evidence of characteristic GSR particles was detected on the tape lift stub from Items 46B.1 and 29.1 airbag swatches. This indicates that the airbag igniter system did not utilize ammunition primer caps.

No evidence of characteristic GSR particles was detected on the tape lift stubs from Item 5 sweatshirt /jacket sleeves and front. The absence of GSR particles can be indicative of several scenarios:

- *The loss of GSR particles as a result of washing or physical activity.*

- *The sweatshirt /jacket was not in close proximity to the firearm when fired.*

- *The sweatshirt /jacket was physically blocked from having GSR deposited on it.*

- *The firearm having been of a type that does not eject significant amounts of gunshot residue.*

- *The firearm may have used ammunition with a primer composition that does not utilize lead, barium, antimony compounds.*

The results and conclusions, herein, have been peer-reviewed and are considered thorough and complete by McCrone Associates, Inc. The results apply exclusively to the samples analyzed and documented in this report. No further revisions will be made unless a corrective action is deemed warranted by McCrone Associates, Inc. Dissemination, interpretation, and/or reproduction, except in whole, are not recommended as doing so may alter and/or nullify the results.

Ms. Jennifer M. Sommers
MA62373

Thank you for consulting McCrone Associates.  If you have any questions about this report, please feel free to contact me by telephone or by e-mail at wniemeyer@mccrone.com.

Sincerely,

*Wayne D. Niemeyer*

Wayne D. Niemeyer
Senior Research Scientist

WDN:
Enclosure
Ref: MA62373; Check

*McCrone Associates, Inc. conducts analysis in a laboratory accredited to ISO/IEC 17025: 2005 by the American Association for Laboratory Accreditation (A2LA) and in compliance with applicable current Good Manufacturing Practices and Good Laboratory Practices per sections 58, 210, 211 and 820 of the Federal Food, Drug, and Cosmetic Act.  Please consult A2LA Certificate # 3631.01 for a list of accredited test technologies at www.a2la.org.*

The results and conclusions, herein, have been peer-reviewed and are considered thorough and complete by McCrone Associates, Inc.  The results apply exclusively to the samples analyzed and documented in this report.  No further revisions will be made unless a corrective action is deemed warranted by McCrone Associates, Inc.  Dissemination, interpretation, and/or reproduction, except in whole, are not recommended as doing so may alter and/or nullify the results.

**APPENDIX A**

Documentation Photographs - Offense Number SIPU 17-007

Ref: MA62373
      (15 pages)



## Offense Number SIPU 17-007 Documentation Photographs



**Sample Submission Form**

MA62373           **APPENDIX A**           Page 1 of 15

## Offense Number SIPU 17-007  Documentation Photographs

**NEW YORK STATE ATTORNEY GENERALS OFFICE**

**Property Release/Disposal Receipt**                Page 1 of 1

Offense Number: SIPU17-003/20    Case Agent: GIUDICI, DAVID (SPECIAL INVESTIGATIONS AND PROSECUTIONS UNIT / NEW YORK STATE ATTORNEY GENERALS OFFICE)

| Item | Quantity | Description |
|------|----------|-------------|
| 1 | 1.00 | Clothing worn by Deceased Jose hernandez-Rosay |
| 2 | 1.00 | sample of depolyed air bag |

State authority to release or manner of disposition:

OTHER LAB

I hearby certify that I have received the above listed property

Signature _____    Date Received  6/15/2017

Name  GIUDICI, DAVID (SPECIAL INVESTIGATIONS AND PROSECUTIONS UNIT / NEW YORK STATE ATTORNEY GENERALS OFFICE)    Owner/For Owner  SD7

Address _____    Released By  MIGAJ, SANDRA / NEW YOR

**Property Release form**

MA62373                APPENDIX A                Page 2 of 15



Offense Number SIPU 17-007  Documentation Photographs





Shipping box with top opened

Brown paper bag removed from shipping box with airbag swatch sample box on top

McCRONE
ASSOCIATES, INC.

## Offense Number SIPU 17-007  Documentation Photographs



Brown paper bag with clothing evidence bag that was under the airbag swatch sample box



Clothing evidence bag 1

MA62373

APPENDIX A

Page 4 of 15

**McCRONE** ASSOCIATES, INC.

Offense Number SIPU 17-007  Documentation Photographs



Clothing bag 1 label



Clothing bag 1

MA62373                    APPENDIX A                    Page 5 of 15

McCRONE
ASSOCIATES, INC.

## Offense Number SIPU 17-007  Documentation Photographs

 

Clothing bag 1

APPENDIX A



Offense Number SIPU 17-007  Documentation Photographs



Clothing bag 1 top end seals



Clothing bag 1 bottom end seals

MA62373                                         APPENDIX A                                    Page 7 of 15

**McCRONE**
ASSOCIATES, INC.

## Offense Number SIPU 17-007  Documentation Photographs



Clothing bag 2 inside clothing bag 1



Clothing bag 2



**McCRONE**
ASSOCIATES, INC.

## Offense Number SIPU 17-007  Documentation Photographs



Clothing bag 2 label



Clothing bag 2 top end seal

McCRONE
ASSOCIATES, INC.

Offense Number SIPU 17-007  Documentation Photographs



Clothing bag 2 contents upon opening



Sweatshirt/jacket removed from clothing bag 2

**McCRONE** ASSOCIATES, INC.

Offense Number SIPU 17-007  Documentation Photographs



Sweatshirt/jacket unfolded

MA62373                                    APPENDIX A                                    Page 11 of 15

McCRONE
ASSOCIATES, INC.

## Offense Number SIPU 17-007  Documentation Photographs



Airbag swatch sample box



Label on Evidence/Property sheet



Offense Number SIPU 17-007  Documentation Photographs



Airbag swatch sample box



Lab labels on airbag swatch sample box

MA62373                     APPENDIX A                     Page 13 of 15



## Offense Number SIPU 17-007  Documentation Photographs



Airbag swatch sample box top



Airbag swatch sample box opened

**McCRONE** ASSOCIATES, INC.

Offense Number SIPU 17-007  Documentation Photographs



Zip-type plastic bags with airbag swatches



Airbag swatches removed from zip-type plastic bags

**McCRONE** ASSOCIATES, INC.

**APPENDIX B**

Offense Number SIPU17-003_20 SEM_EDS Data Summaries

Ref: MA62373
    (3 pages)



Project: MA62373
Owner: Oxford

airbag swatches
Type: Default
ID:

Acquisition Date  8/1/2017 5:05:18 PM
Total number of areas    1
Total Duration    972.5 mins
Database State    Acquisition complete
Reason for stop    Normal
Recipe  WDN-GSR2
Quant setup    WDN_gsrv2
Class setup    wdnGSRv15
Quant results    Weight %
Field Area (sq. µm)    9.64E+04

Defined Classes:

| Class | Rank | Features | % total features | Feature area (sq. µm) | % total area |
|---|---|---|---|---|---|
| wdnGSR | Characteristic | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnPbBaSbSn | Characteristic | 0 | 0.0 | 0.00E+00 | 0.000 |
| PbSb | Consistent | 0 | 0.0 | 0.00E+00 | 0.000 |
| BaSb | Consistent | 0 | 0.0 | 0.00E+00 | 0.000 |
| Sr-rich | Consistent | 2 | 0.0 | 9.28E+00 | 8.88E-06 |
| wdnBaSb | Consistent | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnPbBa | Consistent | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnPbSb | Consistent | 1 | 0.0 | 2.51E+00 | 2.40E-06 |
| wdnTiZn | Consistent | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnBrass_GSR | Consistent | 0 | 0.0 | 0.00E+00 | 0.000 |
| PbCuZn | 3 | 1 | 0.0 | 4.51E+00 | 4.32E-06 |
| wdnPbCu | 3 | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnPbCuFe | 3 | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnSbMnCo | 3 | 0 | 0.0 | 0.00E+00 | 0.000 |
| PbSn | 4 | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnBRASS | 4 | 27 | 0.2 | 1.21E+02 | 1.15E-04 |
| wdnPb_rich | 4 | 4 | 0.0 | 4.41E+01 | 4.22E-05 |
| Fe_enviro | 5 | 988 | 8.1 | 1.83E+04 | 0.018 |
| Fe_Cr | 5 | 24 | 0.2 | 1.69E+02 | 1.61E-04 |
| Gold | 5 | 0 | 0.0 | 0.00E+00 | 0.000 |
| lighter flint | 5 | 3 | 0.0 | 9.33E+01 | 8.93E-05 |
| overlaps | 5 | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdn_iron2 | 5 | 724 | 6.0 | 3.21E+03 | 3.07E-03 |
| wdnAl_oxide | 5 | 21 | 0.2 | 5.96E+01 | 5.70E-05 |
| wdnBarite_mod1 | 5 | 1646 | 13.6 | 9.69E+03 | 9.27E-03 |
| wdnKCl | 5 | 422 | 3.5 | 4.46E+03 | 4.27E-03 |
| wdn_minerals | 5 | 3 | 0.0 | 6.02E+00 | 5.76E-06 |
| wdnMisch_metal | 5 | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnNaCl | 5 | 62 | 0.5 | 2.66E+02 | 2.55E-04 |
| wdnOrganic | 5 | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnSi_rich | 5 | 229 | 1.9 | 7.37E+02 | 7.06E-04 |
| wdnTi_rich | 5 | 41 | 0.3 | 1.16E+02 | 1.11E-04 |
| Zn enviro | 5 | 137 | 1.1 | 1.36E+03 | 1.31E-03 |
| Bi-rich | 5 | 0 | 0.0 | 0.00E+00 | 0.000 |
| Ca-rich | 5 | 8 | 0.1 | 2.41E+01 | 2.30E-05 |
| Ag-rich | 5 | 0 | 0.0 | 0.00E+00 | 0.000 |
| Cu-rich | 5 | 6778 | 55.9 | 7.67E+04 | 0.073 |
| Tungsten | 5 | 1 | 0.0 | 5.89E+00 | 5.64E-06 |



The Business of Science

MA62373



McCRONE
ASSOCIATES, INC.

Project  MA62373
Owner  Oxford

Type: Default
ID

Acquisition Date  8/1/2017 6:32:09 PM
Total number of areas      1
Total Duration      135.5 mins
Database State    Acquisition complete
Reason for stop    Normal
Recipe   WDN-GSR2
Quant setup        WDN_gsrv2
Class setup        wdnGSRv15
Quant results      Weight %
Field Area (sq. μm)        9.64E+04

Defined Classes:

| Class | Rank | Features | % total features | Feature area (sq. μm) | % total area |
|---|---|---|---|---|---|
| wdnGSR | Characteristic | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnPbBaSbSn | Characteristic | 0 | 0.0 | 0.00E+00 | 0.000 |
| PbSb | Consistent | 0 | 0.0 | 0.00E+00 | 0.000 |
| BaSb | Consistent | 0 | 0.0 | 0.00E+00 | 0.000 |
| Sr-rich | Consistent | 1 | 0.3 | 2.01E+00 | 1.87E-06 |
| wdnBaSb | Consistent | 1 | 0.3 | 1.25E+00 | 1.17E-06 |
| wdnPbBa | Consistent | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnPbSb | Consistent | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnTiZn | Consistent | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnBrass_GSR | Consistent | 0 | 0.0 | 0.00E+00 | 0.000 |
| PbCuZn | 3 | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnPbCu | 3 | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnPbCuFe | 3 | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnSbMnCo | 3 | 0 | 0.0 | 0.00E+00 | 0.000 |
| PbSn | 4 | 2 | 0.6 | 6.40E+00 | 5.97E-06 |
| wdnBRASS | 4 | 4 | 1.1 | 1.10E+01 | 1.03E-05 |
| wdnPb_rich | 4 | 66 | 18.6 | 6.81E+02 | 6.35E-04 |
| Fe_enviro | 5 | 114 | 32.2 | 9.99E+02 | 9.32E-04 |
| Fe_Cr | 5 | 8 | 2.3 | 6.81E+01 | 6.35E-05 |
| Gold | 5 | 0 | 0.0 | 0.00E+00 | 0.000 |
| lighter flint | 5 | 14 | 4.0 | 5.24E+01 | 4.89E-05 |
| overlaps | 5 | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdn_iron2 | 5 | 30 | 8.5 | 2.67E+02 | 2.49E-04 |
| wdnAl_oxide | 5 | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnBarite_mod1 | 5 | 18 | 5.1 | 7.57E+01 | 7.07E-05 |
| wdnKCl | 5 | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdn_minerals | 5 | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnMisch_metal | 5 | 10 | 2.8 | 1.31E+02 | 1.22E-04 |
| wdnNaCl | 5 | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnOrganic | 5 | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnSi_rich | 5 | 28 | 7.9 | 2.92E+02 | 2.72E-04 |
| wdnTi_rich | 5 | 0 | 0.0 | 0.00E+00 | 0.000 |
| Zn enviro | 5 | 10 | 2.8 | 9.93E+01 | 9.27E-05 |
| Bi-rich | 5 | 10 | 2.8 | 5.67E+01 | 5.29E-05 |
| Ca-rich | 5 | 0 | 0.0 | 0.00E+00 | 0.000 |
| Ag-rich | 5 | 0 | 0.0 | 0.00E+00 | 0.000 |
| Cu-rich | 5 | 17 | 4.8 | 8.97E+01 | 8.37E-05 |
| Tungsten | 5 | 0 | 0.0 | 0.00E+00 | 0.000 |



MA62373

McCRONE
ASSOCIATES, INC.

Project: MA62373
Owner: Oxford

Sample Item Detail
Type: Default
ID:

Acquisition Date  8/1/2017 8:47:45 PM
Total number of areas     1
Total Duration    147.4 mins
Database State    Acquisition complete
Reason for stop   Normal
Recipe   WDN-GSR2
Quant setup       WDN_gsrv2
Class setup       wdnGSRv15
Quant results     Weight %
Field Area (sq. µm)        9.64E+04

Defined Classes:

| Class | Rank | Features | % total features | Feature area (sq. µm) | % total area |
|---|---|---|---|---|---|
| wdnGSR | Characteristic | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnPbBaSbSn | Characteristic | 0 | 0.0 | 0.00E+00 | 0.000 |
| PbSb | Consistent | 0 | 0.0 | 0.00E+00 | 0.000 |
| BaSb | Consistent | 0 | 0.0 | 0.00E+00 | 0.000 |
| Sr-rich | Consistent | 1 | 0.2 | 3.14E+00 | 2.90E-06 |
| wdnBaSb | Consistent | 2 | 0.4 | 2.53E+01 | 2.34E-05 |
| wdnPbBa | Consistent | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnPbSb | Consistent | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnTiZn | Consistent | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnBrass_GSR | Consistent | 0 | 0.0 | 0.00E+00 | 0.000 |
| PbCuZn | 3 | 1 | 0.2 | 2.01E+00 | 1.86E-06 |
| wdnPbCu | 3 | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnPbCuFe | 3 | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnSbMnCo | 3 | 0 | 0.0 | 0.00E+00 | 0.000 |
| PbSn | 4 | 2 | 0.4 | 1.10E+01 | 1.02E-05 |
| wdnBRASS | 4 | 5 | 1.0 | 2.14E+01 | 1.98E-05 |
| wdnPb_rich | 4 | 65 | 13.2 | 5.56E+02 | 5.15E-04 |
| Fe_enviro | 5 | 192 | 39.1 | 1.34E+03 | 1.24E-03 |
| Fe_Cr | 5 | 5 | 1.0 | 2.85E+01 | 2.63E-05 |
| Gold | 5 | 0 | 0.0 | 0.00E+00 | 0.000 |
| lighter flint | 5 | 35 | 7.1 | 1.05E+03 | 9.71E-04 |
| overlaps | 5 | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdn_iron2 | 5 | 34 | 6.9 | 2.89E+02 | 2.68E-04 |
| wdnAl_oxide | 5 | 1 | 0.2 | 5.52E+00 | 5.11E-06 |
| wdnBarite_mod1 | 5 | 19 | 3.9 | 1.30E+02 | 1.20E-04 |
| wdnKCl | 5 | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdn_minerals | 5 | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnMisch_metal | 5 | 22 | 4.5 | 7.05E+02 | 6.52E-04 |
| wdnNaCl | 5 | 1 | 0.2 | 4.64E+00 | 4.29E-06 |
| wdnOrganic | 5 | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnSi_rich | 5 | 34 | 6.9 | 4.09E+02 | 3.78E-04 |
| wdnTi_rich | 5 | 1 | 0.2 | 1.38E+00 | 1.28E-06 |
| Zn enviro | 5 | 10 | 2.0 | 1.37E+02 | 1.27E-04 |
| Bi-rich | 5 | 15 | 3.1 | 6.09E+01 | 5.64E-05 |
| Ca-rich | 5 | 0 | 0.0 | 0.00E+00 | 0.000 |
| Ag-rich | 5 | 0 | 0.0 | 0.00E+00 | 0.000 |
| Cu-rich | 5 | 16 | 3.3 | 1.18E+02 | 1.09E-04 |
| Tungsten | 5 | 1 | 0.2 | 1.88E+00 | 1.74E-06 |



MA62373

APPENDIX B



# EXHIBIT C



**Spencer L. Durland**
Partner
561 Franklin Street
Buffalo, New York 14202
Telephone: (716) 800-2605
sdurland@hooverdurland.com

June 1, 2026

## Via email to rquinn@buffalony.gov

Robert E. Quinn, Esq.
City of Buffalo, Law Department
65 Niagara Square, Room 1100
Buffalo, New York 14202

> Re:   *Rossy v. City of Buffalo et al.*, No. 17-CV-937 (W.D.N.Y.)
>       Trial subpoenas and stipulations

Dear Mr. Quinn:

As you know, my firm and the Law Office of Nelson Torre, Esq. represent the plaintiff in this case, Margarita Rossy as Administrator of the Estate of Jose Hernandez-Rossy ("Plaintiff"). On May 11, 2026, Mr. Torre wrote you a letter identifying 30 members of the Buffalo Police Department ("BPD") who Plaintiff presently intends to call at trial, asking you to confirm that you will accept trial subpoenas compelling those witnesses' testimony, and inviting you to discuss stipulations to streamline the trial, conserve judicial and party resources, and avoid unnecessary witness testimony. During a May 22 videoconference, you requested a letter further itemizing our proposals. This letter responds to your request.

**I. Trial subpoenas for BPD witnesses.** Mr. Torre's May 11 letter identifies BPD witnesses who Plaintiff intends to call to testify at trial. These witnesses fall into three general categories: (1) witnesses who will be called primarily to give direct evidence about the events of May 7, 2017 (*e.g.*, Justin Tedesco); (2) witnesses who will be called to lay an evidentiary foundation for documentary evidence and to then discuss that documentary evidence (*e.g.*, Henry Velez); and (3) witnesses who will be called solely to lay an evidentiary foundation for documentary evidence or to establish a chain of custody. We have not made final decisions about which BPD witnesses fall into each category, and we do not believe we need to make final decisions for you to tell us whether you will accept trial subpoenas on behalf of the BPD witnesses we intend to call. If, by June 8, 2026, you have not informed us that you will accept service, we will proceed to serve BPD witnesses with trial subpoenas. For each BPD witness no longer employed by the City, please provide us with the witness's last known address and phone number.

**II. Stipulations.** In the interest of streamlining the trial, limiting the need for non-substantive witness testimony, and minimizing the evidentiary disputes submitted to the Court, we propose that the parties negotiate stipulations as described in more detail below.[1]

---

[1]     This discussion assumes the City Defendants will assert that on May 7, 2017, Hernandez-Rossy was in fact armed and did in fact shoot Acquino inside the Acura. If the City Defendants will instead argue that Acquino and Tedesco mistakenly but

Robert E. Quinn, Esq.
June 1, 2026
Page 2

**A. Crime-scene photographs and diagrams.** During discovery, the City Defendants and New York State Attorney General's Office ("OAG") produced to Plaintiff various materials documenting the scenes where the relevant events occurred, including the following:

- Various Crime-Scene Unit photographs in folders entitled "1_scene," "3_ECMC P.O. Tedesco," "4_ECMC P.O. Acquino property," "5_D-dist station P.O. Hy and Reuther," "6_Seneca St Garage_Vehicles," "7_Post," "8_Scene Additional Evid," "10_Tonawanda_Garfield_Bullet," "12_Evidence_Narcotics," "13_PO Acquino weapon," "14_PO Tedesco weapon," "18_CSU Garage_Veh Search," and "19_Scene Return Veh locations."

- Aerial photographs taken by the New York State Police on May 10, 2017, in a folder entitled "NYSP – Aerial photos."

- Photographs that the BPD extracted from the Candace Olivera cellphone video, in a folder entitled "Still Photos of Olivera video." (Some of these  photographs were filed by Plaintiff at Dkt. 106-49 through Dkt. 106-56 and Dkt. 121-1 through Dkt. 121-13.)

- Evidence-collection diagram dated May 7, 2017 (filed by Plaintiff at Dkt. 106-48), with cover sheet and attached P-1302.

- Scene diagram dated September 25, 2017 (filed by Plaintiff at Dkt. 106-43, ECF p. 1).

We propose that the parties stipulate to the source, authenticity, and business-record foundation for these materials, while reserving the right to oppose admissibility on other grounds including relevance, prejudice, and multiple hearsay. We see no good-faith basis for the City Defendants to litigate the issues on which we propose a stipulation, as these documents were created by or in conjunction with BPD employees, and the City Defendants' response to Plaintiff's fifth notice to admit concedes authenticity and foundation for most of the crime-scene photographs listed above. Our proposed stipulation would streamline pretrial and trial proceedings by obviating the need for Plaintiff to (i) prepare to call the maker of each record and (ii) move *in limine* on foundational issues not open to any reasonable dispute.

**B. Police reports and other police materials.** During discovery, the City Defendants produced to Plaintiff various police reports, P-73s, internal correspondence, manuals, and tickets, including the following:

- Report of John Paradowski dated May 7, 2017 (filed by City Defendants at Dkt. 107-18).

- Report of Daniel Redmond dated May 8, 2017 (filed by Plaintiff at Dkt. 106-82 and attached to Plaintiff's first notice to admit).

reasonably believed Hernandez-Rossy was armed and shot Acquino inside the Acura, some of the evidence discussed below (*e.g.*, the report establishing that there was no gunshot residence inside the Acura) could be replaced with a simple factual stipulation.

Robert E. Quinn, Esq.
June 1, 2026
Page 3

- Report of Michael Mordino dated May 18, 2017 (filed by Plaintiff at Dkt. 106-43, ECF pp. 2-3).

- Report of Patricia Wrest dated May 11, 2017 (filed by Plaintiff at Dkt. 106-73, ECF pp. 3-4).

- Report of Richard Wagstaff dated May 16, 2017 (filed by City Defendants at Dkt. 107-25).

- Report of Richard Hy dated May 7, 2017 (filed by City Defendants at Dkt. 107-12).

- Report of Jose Rivera dated May 8, 2017 (filed by City Defendants at Dkt. 107-15).

- Report of Antonio Borrelli dated May 7, 2017 (filed by City Defendants at Dkt. 107-24).

- MV-104A Form dated May 7, 2017 (filed by City Defendants at Dkt. 107-5).

- BPD Manual revised August 14, 2013 (filed by City Defendants at Dkt. 107-34 and filed by Plaintiff at Dkt. 106-30, 106-31, and 106-32).

- Traffic tickets issued to Jose Hernandez-Rossy on February 25, 2014 (filed by Plaintiff at Dkt. 106-58).

- Traffic tickets issued to Jose Hernandez-Rossy on June 20, 2013, and February 15, 2014 (filed by Plaintiff at Dkt. 106-71).

- IAD records of Joseph Acquino (filed by Plaintiff at Dkt. 106-76).

- IAD records of Justin Tedesco (filed by Plaintiff at Dkt. 106-77).

- BPD CSU Requests for Laboratory Examination (8 pages).

- BPD CSU Evidence Tracker Forms and Property Reports (39 pages).

- Physical evidence recovered by BPD, including shell casings, spent rounds, clothing, shoes, blood stains, and contraband.

        We propose that the parties stipulate to the origin, authenticity, and (with the exclusion of the physical evidence) the business-record foundation for these materials, while reserving the right to oppose admissibility on other grounds including relevance, prejudice, and multiple hearsay. We see no good-faith basis for the City Defendants to litigate the foundational issues on which we propose a stipulation, as all of these materials were created or collected by City employees and produced by the City Defendants; the City Defendants used many of these materials to support their motion for summary judgment; and the City Defendants' business-record attestations and responses to notices admit establish a business-record foundation for many of them.

Robert E. Quinn, Esq.
June 1, 2026
Page 4

Our proposed stipulation would streamline pretrial and trial proceedings by obviating the need for Plaintiff to (i) prepare to call the maker of every document, and (ii) move *in limine* on foundational issues not open to any reasonable dispute.

       **C. Video evidence.** In discovery, the City Defendants produced video evidence memorializing certain aspects of the relevant scenes and events, including the following:

- Cellphone video obtained from Candice Olivera on May 7, 2017 (filed by Plaintiff at Dkt. 106-57).

- Surveillance video obtained from 564 Tonawanda Street and collected by BPD on May 8, 2017 (filed by Plaintiff at Dkt. 106-75).

- Facebook video of scene on May 7, 2017, collected by crime-analysis center and served on Plaintiff by City Defendants on March 19, 2019.

- Scene video shot by BPD on May 7, 2017, and entitled "2_scene_video."

- Aerial videos taken by the New York State Police on May 10, 2017, and entitled "20170510102313" and "20170510102630."

       We propose that the parties stipulate to the origin and authenticity of these materials, while reserving the right to oppose admissibility on other grounds including relevance, prejudice, and multiple hearsay. We see no good-faith basis for the City Defendants to litigate the foundational issues on which we propose a stipulation, as all of these videos were collected by City or other official employees in the course of their official duties. Our proposed stipulation would streamline pretrial and trial proceedings by obviating the need for Plaintiff to (i) prepare to call each person who made or collected each video and still photograph, and (ii) move *in limine* on foundational issues not open to any reasonable dispute.

       **D. Scientific reports.** During discovery, the City Defendants and OAG produced to Plaintiff various reports of scientific testing and examination, including the following:

- Report of Jodi Luedemann dated June 29, 2017 (filed by Plaintiff at Dkt. 106-61).

- Report of Wayne D. Niemeyer dated August 22, 2017 (filed by City Defendants at Dkt. 107-4, ECF pp. 40-64).

- Ballistics report for bullets and shell casings recovered by BPD on May 7, 2017.

- Report of Katherine Maloney, M.D., drafted May 8, 2017, and finalized June 23, 2017 (filed by Plaintiff at Dkt. 106-72).

- Certificate of death for Jose Hernandez-Rossy dated May 7, 2017 (filed by Plaintiff at Dkt. 106-87).

Robert E. Quinn, Esq.
June 1, 2026
Page 5

We propose that the parties stipulate to the source, authenticity, and business-record foundation for these documents, while reserving the right to oppose admissibility on other grounds including relevance, prejudice, and multiple hearsay. We see no good-faith basis for the City Defendants to litigate the foundational issues on which we propose a stipulation, as these documents were created in the ordinary course of law-enforcement business by entities the BPD routinely relies upon, they are plainly business records under FRE 803(6) and/or public records under FRE 803(8)(A)(iii), and the City Defendants' response to Plaintiff's seventh notice to admit concedes that the OAG's February 1, 2018 report (including the portion reproducing the Niemeyer report) "is admissible under Federal Rule of Evidence 803(8)."[2] Our proposed stipulation would streamline pretrial and trial proceedings by obviating the need for Plaintiff to (i) elicit foundational testimony from the makers of each record, (ii) move to compel Niemeyer's remote testimony from an Illinois federal courthouse, and (iii) move *in limine* on foundational issues not open to any reasonable dispute.

**E. Police radio and 911 recordings.** During discovery, the City Defendants produced audio recordings and reports regarding 911 calls and police radio transmissions, including the following:

- Audio recordings of 911 calls and police radio transmissions (filed by Plaintiff at Dkt. 106-2 through Dkt. 106-5, and Dkt. 106-8 through Dkt. 106-9).

- BPD Complaint Summary Report dated May 7, 2017 (filed by Plaintiff at Dkt. 106-1 and Dkt. 106-2, and filed by City Defendants at Dkt. 107-30).

We propose that the parties stipulate to the source, authenticity, and (with respect to the BPD Complaint Summary Report) the business-record foundation for these materials, while reserving the right to oppose admissibility on other grounds including relevance, prejudice, and hearsay (with respect to the audio recordings) or multiple hearsay (with respect to the BPD Complaint Summary Report). We see no good-faith basis for the City Defendants to litigate the foundational issues on which we propose a stipulation, as these materials were produced by the City Defendants, and they were created either by BPD employees or by County employees on whom the BPD routinely relies. Our proposed stipulation would streamline pretrial and trial proceedings by obviating the need for Plaintiff to (i) prepare to call the maker of each record and (ii) move *in limine* on foundational issues not open to any reasonable dispute.

**F. Prior statements of witnesses.** During discovery, the City Defendants and OAG produced to Plaintiff various witness statements, including the following:

- Videorecorded interview of Joseph Acquino on May 10, 2017, and transcript of same (filed by Plaintiff at Dkt. 106-10).

---

[2] The City Defendants' response to Plaintiff's seventh notice to admit also maintains that the OAG report "must [be] admitted in its complete form pursuant to Federal Rule of Evidence 106." Plaintiff disagrees and will file a motion *in limine* on this subject. But the parties' disagreement over how much of the OAG report may be admitted at trial does not alter their agreement that the Niemeyer report comes within FRE 803(8).

Robert E. Quinn, Esq.
June 1, 2026
Page 6

- Transcript of IAD interview of Joseph Acquino on February 22, 2018 (filed by City Defendants at Dkt. 107-10).

- Videorecorded interview of Justin Tedesco on May 15, 2017, and transcript of same (filed by Plaintiff at Dkt. 106-12).

- Transcript of IAD interview of Justin Tedesco on March 20, 2018 (filed by City Defendants at 107-7).

- Written statement of Emmanuel Ortiz dated May 7, 2017 (filed by Plaintiff at Dkt. 106-15).

- Video recording of interview of Emmanuel Ortiz on May 7, 2017 (Plaintiff's deposition exhibit 46).

- Transcript of interview of Gino Fresco on May 7, 2017 (filed by Plaintiff at Dkt. 106-17).

- Video recording of interview of Gino Fresco on May 7, 2017 (Plaintiff's deposition exhibit 57).

- Written statement of Mark Van Dusen dated May 7, 2017 (filed by Plaintiff at Dkt. 106-21).

- Video recording of interview of Mark Van Dusen on May 7, 2017 (Plaintiff's deposition exhibit 60).

- Videorecorded interview of Natasha Middlebrooks on May 10, 2017.

- Written statement of Natasha Middlebrooks dated May 10, 2017.

- Written statement of Carly Collier dated May 8, 2017 (filed by Plaintiff at Dkt. 106-81).

- Transcript of BPD/OAG interview of Richard Hy on May 25, 2017.

- Transcript of BPD/OAG interview of Jonathan Bierl on May 25, 2017.

- Transcript of BPD/OAG interview of Genevieve Rak on May 25, 2017.

- Transcript of BPD/OAG interview of Jose Rivera on May 25, 2017.

We propose that the parties stipulate to the origin and authenticity of these materials, while reserving the right to oppose admissibility on other grounds including relevance, prejudice, and hearsay. We see no good-faith basis for the City Defendants to litigate the foundational issues on which we propose a stipulation, as all of these statements were taken by BPD employees and many of them are already accompanied by business-record certifications. Our proposed stipulation would streamline pretrial and trial proceedings by obviating the need for Plaintiff to (i) prepare

Robert E. Quinn, Esq.
June 1, 2026
Page 7

to call each BPD employee who witnessed one of these statements, and (ii) move *in limine* on foundational issues not open to any reasonable dispute.

        **G. Chain of custody for plastic bag of white powder.** After Tedesco fatally shot Hernandez-Rossy, Acquino pulled from beneath his vest a plastic bag containing white powder (designated as Item 9 through Item 9.8 by BPD CSU) and handed it to Jonathan Bierl, who handed it to Genevieve Rak, who handed it to Michael Quinn, who handed it to Henry Velez. (Dkt. 107-17 (Bierl P-73)); Dkt. 107-19 (Rak P-73); OAG Examination of Michael Quinn on May 25, 2017, at 3:8-4:14.) We propose that the parties stipulate to the fact that Acquino removed this item from his vest and passed it to another officer, and that the item was ultimately submitted for testing, while reserving the right to make arguments about whether the item, and testimony about the item, is admissible. We see no good-faith basis for the City Defendants to litigate the chain of custody, which consists entirely of BPD employees, and stipulating to the chain of custody obviates the need for Plaintiff to prepare to call chain-of-custody witnesses.

        Once you have reviewed this letter, please let us know when you are available for a follow-up discussion.

        Regards,

        Spencer L. Durland


cc:    Timothy W. Hoover, Esq. (via email)
       Nelson S. Torre, Esq. (via email)

# EXHIBIT D



**Spencer L. Durland**
Partner
561 Franklin Street
Buffalo, New York 14202
Telephone: (716) 800-2605
sdurland@hooverdurland.com

July 3, 2026

## Via email to rquinn@buffalony.gov

Robert E. Quinn, Esq.
City of Buffalo, Law Department
65 Niagara Square, Room 1100
Buffalo, New York 14202

Re:    *Rossy v. City of Buffalo et al.*, No. 17-CV-937 (W.D.N.Y.)
Evidentiary stipulations and Rule 26(a) disclosures.

Dear Mr. Quinn:

As you know, my firm and the Law Office of Nelson Torre, Esq. represent the plaintiff in this case, Margarita Rossy as Administrator of the Estate of Jose Hernandez-Rossy ("Plaintiff"). I am writing to follow up on our prior discussions regarding evidentiary stipulations. You had previously asked us to send you a letter memorializing and detailing the agreements we were proposing, which I did on June 1, 2026. During our follow-up discussion on June 15, you said that you planned to respond to our letter, and to identify witnesses no longer employed by the City of Buffalo, by June 18. More than two weeks have passed since June 18 and we have not received your response. Please provide your response as soon as possible.

Of particular importance to Plaintiff is Defendants' position regarding:

(i)    An agreement as to the origin and authenticity of documents authored or created by BPD employees (such as P-73s, crime-scene photos, and autopsy photos);

(ii)    An agreement as to the origin and authenticity of written and videorecorded witness statements taken by BPD employees (such as the May 10, 2017 videorecorded interview of Latasha Middlebrooks conducted by Terrence Supples); and

(iii)    An agreement as to the authenticity and business-record foundation for Wayne Niemeyer's August 22, 2017 report regarding testing for gunshot residue.

During our June 15 discussion, you indicated that Defendants would likely be amenable to items (i) and (ii). Defendants ought to be equally amenable to item (iii), since their response to Plaintiff's seventh notice to admit concedes that the entirety of the Attorney General's Report on the Investigation into the Death of Jose Hernandez-Rossy (which includes the Niemeyer report) is admissible under FRE 803(8). And we are eager to get Defendants' position on this report promptly, because if Defendants attempt to disavow their prior admission and force Plaintiff to prepare to call Mr. Niemeyer at trial, Plaintiff will need to expeditiously move the Court to enforce Defendants' admission and/or order Mr. Niemeyer to testify remotely. Accordingly, please provide a prompt response particularly as to these three categories of evidence.

Robert E. Quinn, Esq.
July 3, 2026
Page 2


    Lastly, as you know, Plaintiff made Rule 26(a) disclosures to Maeve Huggins, Esq. on February 2, 2018, April 23, 2018, and January 29, 2021, and made further Rule 26(a) disclosures to you on May 11, 2026 and June 10, 2026. For ease of reference and avoidance of doubt, Plaintiff consolidates, supplements, and particularizes her Rule 26(a) disclosures in the Appendix to this letter. Plaintiff will file her trial witness list on August 10, 2026, pursuant to the Court's final pretrial order (Dkt. 176 at 2-3).

          Regards,

          Spencer L. Durland


cc:  Timothy W. Hoover, Esq. (via email)
   Nelson S. Torre, Esq. (via email)
   Timothy Brennan, Esq. (via email)

Robert E. Quinn, Esq.
July 3, 2026
Page 3

## Appendix

Margarita Rossy
150 Germain Street
Buffalo, New York 14207
Decedent's life and history

Yaira Rossy
150 Germain Street
Buffalo, New York 14207
Decedent's life and history

Phyo Zaw
106 Gallatin Avenue
Buffalo, New York 14207
Decedent's life and history
Prior interaction with Acquino

Deynisha Santiago
785 Niagara Street
Buffalo, New York 14213
Decedent's life and history

Elizabeth Brennan
329 Austin Street
Buffalo, New York 14207
Events of May 7, 2017

Mark Van Dusen
35 Lennox Street
Buffalo, New York 14224
Events of May 7, 2017

Emmanuel Ortiz
31 Winchester Place, Apt. 10
Buffalo, New York 14217
Events of May 7, 2017

Latasha Middlebrooks
27 Hartman Place
Buffalo, New York 14207
Events of May 7, 2017

Allan Morrison
28 Hartman Place
Buffalo, New York 14207
Events of May 7, 2017

Geno Fresco
351 East Street
Buffalo, New York 14207
Events of May 7, 2017

Candice Olivera
28 Hartman Place
Buffalo, New York 14207
Events of May 7, 2017

Carly Collier
564 Tonawanda Street
Buffalo, New York 14207
Events of May 7, 2017

Jon Battison
564 Tonawanda Street
Buffalo, New York 14207
Events of May 7, 2017

Steven Rusinek
50 Peoria Street
Buffalo, New York 14207
Events of May 7, 2017

Isaiah Jones
85 Greeley Street
Buffalo, New York 14207
Events of May 7, 2017

Colleen Carroll
WGRZ TV
259 Delaware Avenue
Buffalo, New York 14202
Events of May 7, 2017

Amanda Hudson
45 Hartman Place
Buffalo, New York 14207
Events of May 7, 2017

Timothy Best
50 Wiley Place
Buffalo, New York 14207
Events of May 7, 2017

Alexander Deveraux
50 Monroe Street
Lockport, New York 14094
Events of May 7, 2017

Amanda Theobald
25 Hartman Place
Buffalo, New York 14207
Events of May 7, 2017

Robert E. Quinn, Esq.
July 3, 2026
Page 4


David Guidici
NY Attorney General's Office
350 Main Street
Buffalo, New York 14202
Post-incident investigation

Brian Ross
NY Attorney General's Office
350 Main Street
Buffalo, New York 14202
Post-incident investigation

Patti McCune
NY Attorney General's Office
350 Main Street
Buffalo, New York 14202
Post-incident investigation

Jennifer Sommers
NY Attorney General's Office
350 Main Street
Buffalo, New York 14202
Post-incident investigation

Lisa Sears
Erie County Central Police Services
41 Claremont Avenue
Buffalo, New York 14222
Events of May 7, 2017

Katherine Maloney, M.D.
Erie County Medical Examiner's Office
501 Kensington Avenue
Buffalo, New York 14214
Autopsy

Jodi Luedemann
Erie County Central Police Services
Forensic Laboratory
45 Elm Street
Buffalo, New York 14203
Post-incident investigation

Wayne Niemeyer
Senior Research Scientist (Ret.)
McCrone Associates, Inc.
850 Pasquinelli Drive
Westmont, Illinois 60559
Post-incident investigation

William Belles, M.D.
Erie County Medical Center
462 Grider Street
Buffalo, New York 14215
Acquino medical treatment

Amy Le, M.D.
Erie County Medical Center
888 Elmwood Avenue, Apt. 1
Buffalo, New York 14222
Acquino medical treatment

William Barone, D.O.
Kenmore Mercy Hospital
2950 Elmwood Avenue
Kenmore, New York 14217
Hernandez-Rossy medical treatment

Justin Tedesco
Buffalo Police Department
68 Court Street
Buffalo, New York 14202
Events of May 7, 2017
Post-incident investigation

Joseph Acquino
Buffalo Police Department
68 Court Street
Buffalo, New York 14202
Events of May 7, 2017
Post-incident investigation

Scott Malec
Buffalo Police Department
68 Court Street
Buffalo, New York 14202
Events of May 7, 2017
Post-incident investigation

Reginald Minor
Buffalo Police Department
68 Court Street
Buffalo, New York 14202
Events of May 7, 2017
Post-incident investigation

Mark White
Buffalo Police Department
68 Court Street
Buffalo, New York 14202
Events of May 7, 2017
Post-incident investigation

Robert E. Quinn, Esq.
July 3, 2026
Page 5


Terrence Supples
Buffalo Police Department
68 Court Street
Buffalo, New York 14202
Events of May 7, 2017
Post-incident investigation

Richard Hy
Buffalo Police Department
68 Court Street
Buffalo, New York 14202
Events of May 7, 2017
Post-incident investigation

Joy Jermain
Buffalo Police Department
68 Court Street
Buffalo, New York 14202
Events of May 7, 2017
Post-incident investigation

Maria Esquilin
Buffalo Police Department
68 Court Street
Buffalo, New York 14202
Events of May 7, 2017
Post-incident investigation

Sean McCabe
Buffalo Police Department
68 Court Street
Buffalo, New York 14202
Events of May 7, 2017
Post-incident investigation

Andrew Nostrant
Buffalo Police Department
68 Court Street
Buffalo, New York 14202
Events of May 7, 2017
Post-incident investigation

James Kaska
Buffalo Police Department
68 Court Street
Buffalo, New York 14202
Events of May 7, 2017
Post-incident investigation

John Paradowski
Buffalo Police Department
68 Court Street
Buffalo, New York 14202
Events of May 7, 2017
Post-incident investigation

Daniel Redmond
Buffalo Police Department
68 Court Street
Buffalo, New York 14202
Events of May 7, 2017
Post-incident investigation

Henry Paradowski
Buffalo Police Department
68 Court Street
Buffalo, New York 14202
Events of May 7, 2017
Post-incident investigation

Jose Rivera
Buffalo Police Department
68 Court Street
Buffalo, New York 14202
Events of May 7, 2017
Post-incident investigation

Brendan Kiefer
Buffalo Police Department
68 Court Street
Buffalo, New York 14202
Events of May 7, 2017
Post-incident investigation

Jay Reuther
Buffalo Police Department
68 Court Street
Buffalo, New York 14202
Events of May 7, 2017
Post-incident investigation

Patricia Wrest
Buffalo Police Department
68 Court Street
Buffalo, New York 14202
Events of May 7, 2017
Post-incident investigation

Robert E. Quinn, Esq.
July 3, 2026
Page 6

Michael Mordino
Buffalo Police Department
68 Court Street
Buffalo, New York 14202
Events of May 7, 2017
Post-incident investigation

Robert Barchorski
Buffalo Police Department
68 Court Street
Buffalo, New York 14202
Events of May 7, 2017
Post-incident investigation

Henry Velez
Buffalo Police Department
68 Court Street
Buffalo, New York 14202
Events of May 7, 2017
Post-incident investigation

Mary Evans
Buffalo Police Department
68 Court Street
Buffalo, New York 14202
Events of May 7, 2017
Post-incident investigation

Antonio Borrelli
Buffalo Police Department
68 Court Street
Buffalo, New York 14202
Events of May 7, 2017
Post-incident investigation

Jonathan Bierl
Buffalo Police Department
68 Court Street
Buffalo, New York 14202
Events of May 7, 2017
Post-incident investigation

Christopher Sterlace
Buffalo Police Department
68 Court Street
Buffalo, New York 14202
Events of May 7, 2017
Post-incident investigation

Albert Monteforte
Buffalo Police Department
68 Court Street
Buffalo, New York 14202
Events of May 7, 2017
Post-incident investigation

Louis Cardona
Buffalo Police Department
68 Court Street
Buffalo, New York 14202
Events of May 7, 2017
Post-incident investigation

Genevieve Rak
Buffalo Police Department
68 Court Street
Buffalo, New York 14202
Events of May 7, 2017
Post-incident investigation

Richard Wagstaff
Buffalo Police Department
68 Court Street
Buffalo, New York 14202
Events of May 7, 2017
Post-incident investigation

Michael Quinn
Buffalo Police Department
68 Court Street
Buffalo, New York 14202
Events of May 7, 2017
Post-incident investigation

John Garcia
Buffalo Police Department
68 Court Street
Buffalo, New York 14202
Events of May 7, 2017
Post-incident investigation

Joseph Lynch
Buffalo Police Department
68 Court Street
Buffalo, New York 14202
Events of May 7, 2017
Post-incident investigation

Robert E. Quinn, Esq.
July 3, 2026
Page 7


Timothy Salamone
Buffalo Police Department
68 Court Street
Buffalo, New York 14202
Events of May 7, 2017
Post-incident investigation

Obed Casillas
Buffalo Police Department
68 Court Street
Buffalo, New York 14202
Events of May 7, 2017
Post-incident investigation

Evan Middlebrooks
Buffalo Fire Department
870 Hertel Avenue
Buffalo, New York 14216
Events of May 7, 2017

City of Buffalo Records Custodian
65 Niagara Square
Buffalo, New York 14202
Records

Erie County Records Custodian
95 Franklin Street
Buffalo, New York 14202
Records

Anthony Liberatore
Buffalo Fire Department
860 Hertel Avenue
Buffalo, New York 14216
Events of May 7, 2017

Christopher Bosley
3363 Baker Road
Orchard Park, New York 14127
Events of May 7, 2017

James Fatta
11 Meadowlawn Road
Depew, New York 14225
Events of May 7, 2017

David Martinez
American Medical Response
481 William L Gaiter Parkway
Buffalo, New York 14215
Events of May 7, 2017

# EXHIBIT E

 Outlook

**Re: Rossy v. City of Buffalo -- FRE 902 Certifications / City records**

**From** Florina Altshiler <faltshiler@russogould.com>

**Date** Wed 7/22/2026 10:07 PM

**To** Spencer Durland <sdurland@hooverdurland.com>

**Cc** Robert E Quinn <rquinn@buffalony.gov>; Timothy Hoover <thoover@hooverdurland.com>; Nelson Torre <bflolawyer@aol.com>; David M. Lee <dlee@city-buffalo.com>

Mr. Durland

We do not agree to waive any objections to the admissibility of the McCrone report or any other documents identified in your email beyond those required by the Federal Rules of Evidence.

Your Rule 902 certifications may address authenticity, but they do not establish admissibility, nor do they eliminate other applicable evidentiary objections, including but not limited to hearsay, multiple hearsay, relevance, prejudice, expert opinion, qualifications, reliability, or any other objection available under the Federal Rules of Evidence.

Similarly, with respect to the WGRZ footage and the Buffalo Police Department records you reference, we are not willing to stipulate that the certifications satisfy all foundational or admissibility requirements or to waive any objections that may arise at trial. We will evaluate each exhibit individually if and when it is offered.

Accordingly, if Plaintiff believes testimony from any witness is necessary to satisfy its burden of establishing admissibility, Plaintiff should make whatever arrangements it deems appropriate. We do not consent to the broad waiver of objections requested in your email. Please be guided accordingly.

Regards,

Florina Altshiler
Counsel for the City Defendants


Florina Altshiler, Esq.

1

Partner
Russo & Gould LLP
33 Whitehall Street, 16th Floor
New York NY 10004

484 Delaware Ave
Cornell Mansion
Buffalo NY 14202
Tel. 716-800-6389
Fax 716-381-8155

On Jul 22, 2026, at 4:55 PM, Spencer Durland
<sdurland@hooverdurland.com> wrote:

Rob,

As you know, Plaintiff intends to introduce the McCrone GSR report as an exhibit at trial, and would like to avoid having to call the report's author, Wayne Niemeyer, to lay a foundation for the document because Mr. Niemeyer lives in Michigan. We've previously asked you to agree not to oppose admission of this report on grounds other than relevance (FRE 401) and prejudice (FRE 403), but to date we haven't received any response.

Attached is an FRE 902 certification from Mr. Niemeyer establishing the report's authenticity and its status as a business/public record. See Fed. R. Evid. 803(6), 803(8), 902(4), 902(11); see also United States v. Komasa, 767 F.3d 151, 155 (2d Cir. 2014) (FRE 803 and FRE 902 were "designed to work in tandem" to eliminate "the expense and inconvenience of producing time-consuming foundation witnesses" (cleaned up)). This email is (additional) written notice of Plaintiff's intent to offer the McCrone report as a self-authenticating record. Please let us know by 5:00 pm on Friday, July 24, whether the City Defendants agree not to oppose admission of the McCrone report on grounds other than relevance and prejudice. If the City Defendants decline to agree, or continue to provide no response, Plaintiff will have to file an

**2**

immediate motion with the Court to ensure that whatever objection to the FRE 902 certification the City Defendants wish to raise is aired with enough time for Plaintiff to secure Mr. Niemeyer's foundational testimony, should that become necessary.

Relatedly, I am also attaching to this email an FRE 902 certification for the news footage received from WGRZ, and hereby give written notice of Plaintiff's intent to rely on the certification to authenticate the footage and lay the requisite business-record foundation.

Finally, in our prior communications we have requested agreement with respect to the authenticity and business-record and/or public-record foundation for various records (e.g., CSU photos, witness interviews, videorecorded statements, police reports) created and maintained by the Buffalo Police Department. Despite several attempts to secure an agreement that the City Defendants will not contest authenticity and business-record or public-record foundation as to these documents, we have received no response. Please consider this email our final good-faith attempt to resolve this issue without judicial intervention.

Regards,

Spencer L. Durland
Partner
Hoover & Durland LLP
561 Franklin Street
Buffalo, New York 14202
Office: (716) 800-2605
Mobile: (585) 330-6405
sdurland@hooverdurland.com
www.hooverdurland.com

<Rossy v. City of Buffalo -- W. Niemeyer Declaration (Signed) (327326959.1).pdf>
<Rossy v. City of Buffalo -- WGRZ Rule 902 Certification signed.pdf>

3

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARGARITA ROSSY, *as Administrator of the
Estate of Jose Hernandez-Rossy*,

Plaintiff,

v.                                                                17-CV-937-MAV-HKS

CITY OF BUFFALO, *et al.*,

Defendants.

### DECLARATION OF WAYNE D. NIEMEYER CERTIFYING RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(4) AND 902(11)

WAYNE D. NIEMEYER, pursuant to 28 U.S.C. § 1746, hereby certifies as follows:

1. I am over 18 years of age, of sound mind, and otherwise competent to make this declaration.

2. The evidence set out in this declaration is based on my personal knowledge.

3. I am the author of the report dated August 22, 2017, and designated McCrone Associates Project MA62373 (the "Report").

4. A true and correct copy of the Report is attached to this declaration.

5. The Report was commissioned by the New York State Office of the Attorney General in connection with its official investigation into the death of Jose Hernandez-Rossy.

6. When I wrote the Report in 2017, I was a Senior Research Scientist for McCrone Associates, Inc. ("McCrone").

7. The Report—along with all of the entries, data, procedures, results, and other matters memorialized in the Report—was made at or near the time of the acts, events, conditions, and opinions set forth therein by a person with knowledge.

**4**

8. The Report was made and kept in the course of a regularly conducted activity of McCrone's business.

9. Making and keeping the Report, and records like the Report, was a regular practice of McCrone's business and of the activity referenced in paragraph 8.

10. I certify under penalty of perjury that the foregoing is true and correct.

Executed: July 17, 2026

_Wayne D. Niemeyer_
WAYNE D. NIEMEYER

- 2 -

**5**



**McCRONE**
**ASSOCIATES, INC.**
850 Pasquinelli Drive • Westmont, Illinois 60559-5539
630-887-7100 • Fax: 630-887-7417

22 August 2017

Ms. Jennifer M. Sommers
Deputy Chief
New York State Office of the Attorney General
144 Exchange Boulevard, Suite 200
Rochester, NY  14614

**Subject: GSR Analysis/Offense Number SIPU 17-007**
**Re:  McCrone Associates Project MA62373**

Dear Ms. Sommers :

This report summarizes the results of our analyses to determine the presence/absence of primer component gunshot residue (GSR) particles on one "hoodie" type sweatshirt/jacket and two "snips" from the driver's side vehicle airbag.  Analysis results were reported via our phone conversation on 02 August 2017.  This work was conducted under authority of your payment via check.

**SAMPLE RECEIPT**

The evidence items were received via UPS® Next Day Air on 16 June 2017, and were stored at laboratory ambient temperature in a locked cabinet until analysis.

You requested GSR analysis to be conducted on the sweatshirt/jacket (Item 5) and airbag items (Item 46B.1 and Item 29.1).  The purpose for analysis of the airbag swatches is to determine if the igniter system utilized the same type of primer cap as used for ammunition (known for at least two airbag manufacturers).  If so, then GSR-like particles would be deposited on the vehicle's interior surfaces, including the occupants.

The evidence box and contents were photographed on 28 July 2017.  Documentation photographs are presented in Appendix A.

**PREPARATION**

Standard GSR tape lift collection stubs were used to obtain samples from the sleeves and front of the sweatshirt/jacket; one GSR collection stub used for both sleeves (red boxes) and one GSR collection stub for the front (green box) as shown below:

---

The results and conclusions, herein, have been peer-reviewed and are considered thorough and complete by McCrone Associates, Inc.  The results apply exclusively to the samples analyzed and documented in this report.  No further revisions will be made unless a corrective action is deemed warranted by McCrone Associates, Inc.  Dissemination, interpretation, and/or reproduction, except in whole, are not recommended as doing so may alter and/or nullify the results.

**6**

www.mccrone.com

Ms. Jennifer M. Sommers
MA62373



One standard GSR tape lift collection stub was used to obtain samples from the two airbag swatches (both sides of each) as shown (blue shaded regions):



Prior to analysis, the tape lift stubs were carbon coated to a thickness of ~5 nm (~50Å) with the Gatan Model 681 coater in order to ensure electrical conductivity in the scanning electron microscope (SEM).

## ANALYSIS

The analysis is conducted in accordance with ASTM Designation E 1588-17: "Standard Practice for Gunshot Residue Analysis by Scanning Electron Microscopy/Energy Dispersive X-Ray Spectrometry."

The results and conclusions, herein, have been peer-reviewed and are considered thorough and complete by McCrone Associates, Inc. The results apply exclusively to the samples analyzed and documented in this report. No further revisions will be made unless a corrective action is deemed warranted by McCrone Associates, Inc. Dissemination, interpretation, and/or reproduction, except in whole, are not recommended as doing so may alter and/or nullify the results.

Ms. Jennifer M. Sommers
MA62373

The analysis for this project was conducted using the JEOL 6480LV scanning electron microscope (SEM) that is equipped with an Oxford INCA® energy dispersive X-ray spectrometry (EDS) analysis system. The software program for gunshot residue analysis is used to automate the entire system and maintain control on the SEM stage movements and electron beam positioning. The pertinent SEM parameters are:

| 1 | Beam accelerating voltage | 25 kV |
|---|---|---|
| 2 | Magnification | 350 X |
| 3 | Acquisition time | 2 seconds live time (with 40 to 50% dead time) |
| 4 | Brightness and contrast threshold settings | Set to detect particles with average atomic number greater than manganese |

An internal QA/QC GSR particle reference stub (wdnGSRstd) is included with each set of sample stubs to ensure that the system is properly detecting known GSR particles before the automated analysis is allowed to continue.

After completion of the automated analysis, up to six particles classified as characteristic GSR (i.e., containing lead-barium-antimony) are relocated, a 20 second live time EDS spectrum is obtained, and the particle composition, size and shape are confirmed. Particles consistent with GSR (such as lead-antimony, barium-antimony, and lead-barium) are confirmed by inspection of the original EDS spectra and are usually not relocated unless suspected to be a characteristic particle. All spectra associated with "unclassified" particles are re-inspected to identify potential characteristic GSR and/or consistent particles.

The analysis results are:

### Items 46B.1 and 29.1 – Airbag swatches

No characteristic gunshot residue particles (i.e., containing the elements lead, barium, and antimony) were found on the stub.

### Item 5 – Sweatshirt/jacket sleeves

No characteristic gunshot residue particles (i.e., containing the elements lead, barium, and antimony) were found on the stub.

The results and conclusions, herein, have been peer-reviewed and are considered thorough and complete by McCrone Associates, Inc. The results apply exclusively to the samples analyzed and documented in this report. No further revisions will be made unless a corrective action is deemed warranted by McCrone Associates, Inc. Dissemination, interpretation, and/or reproduction, except in whole, are not recommended as doing so may alter and/or nullify the results.

Ms. Jennifer M. Sommers
MA62373

## Item 5 – Sweatshirt/jacket front

No characteristic gunshot residue particles (i.e., containing the elements lead, barium, and antimony) were found on the stub.

The SEM/EDS data summaries are presented in Appendix B.

Upon completion of the analysis, the tape lift stubs were returned to their respective plastic vials. The vials were placed into a zip-type plastic bag which was sealed with evidence tape, and placed into the original evidence shipping box, along with the other evidence items. The box was returned to your office to the attention of Mr. David Guidici.

## CONCLUSION AND DISCUSSION

No evidence of characteristic GSR particles was detected on the tape lift stub from Items 46B.1 and 29.1 airbag swatches. This indicates that the airbag igniter system did not utilize ammunition primer caps.

No evidence of characteristic GSR particles was detected on the tape lift stubs from Item 5 sweatshirt /jacket sleeves and front. The absence of GSR particles can be indicative of several scenarios:

- *The loss of GSR particles as a result of washing or physical activity.*

- *The sweatshirt /jacket was not in close proximity to the firearm when fired.*

- *The sweatshirt /jacket was physically blocked from having GSR deposited on it.*

- *The firearm having been of a type that does not eject significant amounts of gunshot residue.*

- *The firearm may have used ammunition with a primer composition that does not utilize lead, barium, antimony compounds.*

The results and conclusions, herein, have been peer-reviewed and are considered thorough and complete by McCrone Associates, Inc. The results apply exclusively to the samples analyzed and documented in this report. No further revisions will be made unless a corrective action is deemed warranted by McCrone Associates, Inc. Dissemination, interpretation, and/or reproduction, except in whole, are not recommended as doing so may alter and/or nullify the results.

**9**

Ms. Jennifer M. Sommers
MA62373

Thank you for consulting McCrone Associates. If you have any questions about this report, please feel free to contact me by telephone or by e-mail at wniemeyer@mccrone.com.

Sincerely,

*Wayne D. Niemeyer*

Wayne D. Niemeyer
Senior Research Scientist

WDN:
Enclosure
Ref: MA62373; Check

*McCrone Associates, Inc. conducts analysis in a laboratory accredited to ISO/IEC 17025: 2005 by the American Association for Laboratory Accreditation (A2LA) and in compliance with applicable current Good Manufacturing Practices and Good Laboratory Practices per sections 58, 210, 211 and 820 of the Federal Food, Drug, and Cosmetic Act. Please consult A2LA Certificate # 3631.01 for a list of accredited test technologies at www.a2la.org.*

The results and conclusions, herein, have been peer-reviewed and are considered thorough and complete by McCrone Associates, Inc. The results apply exclusively to the samples analyzed and documented in this report. No further revisions will be made unless a corrective action is deemed warranted by McCrone Associates, Inc. Dissemination, interpretation, and/or reproduction, except in whole, are not recommended as doing so may alter and/or nullify the results.

**10**

**APPENDIX A**
Documentation Photographs - Offense Number SIPU 17-007

Ref: MA62373
(15 pages)


McCRONE ASSOCIATES, INC.

**11**

## Offense Number SIPU 17-007 Documentation Photographs



Sample Submission Form

MA62373                                    APPENDIX A                                    Page 1 of 15

## Offense Number SIPU 17-007  Documentation Photographs

Property Release form

MA62373                                APPENDIX A                                Page 2 of 15

McCRONE ASSOCIATES, INC.

Offense Number SIPU 17-007  Documentation Photographs



Shipping box with top opened

Brown paper bag removed from shipping box with airbag swatch sample box on top

MA62373                                    APPENDIX A                                    Page 3 of 15

**McCRONE**
ASSOCIATES, INC.

## Offense Number SIPU 17-007  Documentation Photographs



Brown paper bag with clothing evidence bag that was
under the airbag swatch sample box



Clothing evidence bag 1

MA62373

APPENDIX A

Page 4 of 15

**McCRONE** ASSOCIATES, INC.

Offense Number SIPU 17-007  Documentation Photographs





Clothing bag 1 label                                    Clothing bag 1

MA62373                              APPENDIX A                              Page 5 of 15



Offense Number SIPU 17-007  Documentation Photographs

 

Clothing bag 1

MA62373                    APPENDIX A                    Page 6 of 15



Offense Number SIPU 17-007  Documentation Photographs





Clothing bag 1 top end seals



Clothing bag 1 bottom end seals

MA62373                                        APPENDIX A                                        Page 7 of 15



## Offense Number SIPU 17-007  Documentation Photographs



Clothing bag 2 inside clothing bag 1



Clothing bag 2



## Offense Number SIPU 17-007  Documentation Photographs



Clothing bag 2 label



Clothing bag 2 top end seal

MA62373                                    APPENDIX A                                    Page 9 of 15



Offense Number SIPU 17-007  Documentation Photographs



Clothing bag 2 contents upon opening



Sweatshirt/jacket removed from clothing bag 2

McCRONE
ASSOCIATES, INC.

Offense Number SIPU 17-007  Documentation Photographs



Sweatshirt/jacket unfolded

MA62373 APPENDIX A Page 11 of 15

## Offense Number SIPU 17-007  Documentation Photographs



Airbag swatch sample box



Label on Evidence/Property sheet

MA62373                                      APPENDIX A                                      Page 12 of 15



**23**

Offense Number SIPU 17-007  Documentation Photographs



Airbag swatch sample box



Lab labels on airbag swatch sample box

McCRONE
ASSOCIATES, INC.

**24**

## Offense Number SIPU 17-007  Documentation Photographs





Airbag swatch sample box top



Airbag swatch sample box opened

MA62373

APPENDIX A

Page 14 of 15

**McCRONE** ASSOCIATES, INC.

## Offense Number SIPU 17-007  Documentation Photographs



Zip-type plastic bags with airbag swatches



Airbag swatches removed from zip-type plastic bags

MA62373                                APPENDIX A                                Page 15 of 15

McCRONE
ASSOCIATES, INC.

**APPENDIX B**

Offense Number SIPU17-003_20 SEM_EDS Data Summaries

Ref: MA62373
(3 pages)



**27**

Project: MA62373
Owner: Oxford

airbag swatches
Type: Default
ID

Acquisition Date  8/1/2017 5:05:18 PM
Total number of areas     1
Total Duration    972.5 mins
Database State    Acquisition complete
Reason for stop   Normal
Recipe   WDN-GSR2
Quant setup       WDN_gsrv2
Class setup       wdnGSRv15
Quant results     Weight %
Field Area (sq. μm)        9.64E+04

Defined Classes:

| Class | Rank | Features | % total features | Feature area (sq. μm) | % total area |
|-------|------|----------|------------------|------------------------|--------------|
| wdnGSR | Characteristic | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnPbBaSbSn | Characteristic | 0 | 0.0 | 0.00E+00 | 0.000 |
| PbSb | Consistent | 0 | 0.0 | 0.00E+00 | 0.000 |
| BaSb | Consistent | 0 | 0.0 | 0.00E+00 | 0.000 |
| Sr-rich | Consistent | 2 | 0.0 | 9.28E+00 | 8.88E-06 |
| wdnBaSb | Consistent | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnPbBa | Consistent | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnPbSb | Consistent | 1 | 0.0 | 2.51E+00 | 2.40E-06 |
| wdnTiZn | Consistent | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnBrass_GSR | Consistent | 0 | 0.0 | 0.00E+00 | 0.000 |
| PbCuZn | 3 | 1 | 0.0 | 4.51E+00 | 4.32E-06 |
| wdnPbCu | 3 | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnPbCuFe | 3 | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnSbMnCo | 3 | 0 | 0.0 | 0.00E+00 | 0.000 |
| PbSn | 4 | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnBRASS | 4 | 27 | 0.2 | 1.21E+02 | 1.15E-04 |
| wdnPb_rich | 4 | 4 | 0.0 | 4.41E+01 | 4.22E-05 |
| Fe_enviro | 5 | 988 | 8.1 | 1.83E+04 | 0.018 |
| Fe_Cr | 5 | 24 | 0.2 | 1.69E+02 | 1.61E-04 |
| Gold | 5 | 0 | 0.0 | 0.00E+00 | 0.000 |
| lighter flint | 5 | 3 | 0.0 | 9.33E+01 | 8.93E-05 |
| overlaps | 5 | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdn_iron2 | 5 | 724 | 6.0 | 3.21E+03 | 3.07E-03 |
| wdnAl_oxide | 5 | 21 | 0.2 | 5.96E+01 | 5.70E-05 |
| wdnBarite_mod1 | 5 | 1646 | 13.6 | 9.69E+03 | 9.27E-03 |
| wdnKCl | 5 | 422 | 3.5 | 4.46E+03 | 4.27E-03 |
| wdn_minerals | 5 | 3 | 0.0 | 6.02E+00 | 5.76E-06 |
| wdnMisch_metal | 5 | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnNaCl | 5 | 62 | 0.5 | 2.66E+02 | 2.55E-04 |
| wdnOrganic | 5 | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnSi_rich | 5 | 229 | 1.9 | 7.37E+02 | 7.06E-04 |
| wdnTi_rich | 5 | 41 | 0.3 | 1.16E+02 | 1.11E-04 |
| Zn enviro | 5 | 137 | 1.1 | 1.36E+03 | 1.31E-03 |
| Bi-rich | 5 | 0 | 0.0 | 0.00E+00 | 0.000 |
| Ca-rich | 5 | 8 | 0.1 | 2.41E+01 | 2.30E-05 |
| Ag-rich | 5 | 0 | 0.0 | 0.00E+00 | 0.000 |
| Cu-rich | 5 | 6778 | 55.9 | 7.67E+04 | 0.073 |
| Tungsten | 5 | 1 | 0.0 | 5.89E+00 | 5.64E-06 |



MA62373

APPENDIX B

Page 1 of 3

McCRONE
ASSOCIATES, INC.

Project  MA62373
Owner  Oxford

Sample Item 5 sleeves
Type: Default
ID

Acquisition Date  8/1/2017 6:32:09 PM
Total number of areas      1
Total Duration      135.5 mins
Database State    Acquisition complete
Reason for stop   Normal
Recipe   WDN-GSR2
Quant setup       WDN_gsrv2
Class setup       wdnGSRv15
Quant results     Weight %
Field Area (sq. μm)      9.64E+04

Defined Classes:

| Class | Rank | Features | % total features | Feature area (sq. μm) | % total area |
|---|---|---|---|---|---|
| wdnGSR | Characteristic | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnPbBaSbSn | Characteristic | 0 | 0.0 | 0.00E+00 | 0.000 |
| PbSb | Consistent | 0 | 0.0 | 0.00E+00 | 0.000 |
| BaSb | Consistent | 0 | 0.0 | 0.00E+00 | 0.000 |
| Sr-rich | Consistent | 1 | 0.3 | 2.01E+00 | 1.87E-06 |
| wdnBaSb | Consistent | 1 | 0.3 | 1.25E+00 | 1.17E-06 |
| wdnPbBa | Consistent | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnPbSb | Consistent | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnTiZn | Consistent | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnBrass_GSR | Consistent | 0 | 0.0 | 0.00E+00 | 0.000 |
| PbCuZn | 3 | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnPbCu | 3 | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnPbCuFe | 3 | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnSbMnCo | 3 | 0 | 0.0 | 0.00E+00 | 0.000 |
| PbSn | 4 | 2 | 0.6 | 6.40E+00 | 5.97E-06 |
| wdnBRASS | 4 | 4 | 1.1 | 1.10E+01 | 1.03E-05 |
| wdnPb_rich | 4 | 66 | 18.6 | 6.81E+02 | 6.35E-04 |
| Fe_enviro | 5 | 114 | 32.2 | 9.99E+02 | 9.32E-04 |
| Fe_Cr | 5 | 8 | 2.3 | 6.81E+01 | 6.35E-05 |
| Gold | 5 | 0 | 0.0 | 0.00E+00 | 0.000 |
| lighter flint | 5 | 14 | 4.0 | 5.24E+01 | 4.89E-05 |
| overlaps | 5 | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdn_iron2 | 5 | 30 | 8.5 | 2.67E+02 | 2.49E-04 |
| wdnAl_oxide | 5 | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnBarite_mod1 | 5 | 18 | 5.1 | 7.57E+01 | 7.07E-05 |
| wdnKCl | 5 | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdn_minerals | 5 | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnMisch_metal | 5 | 10 | 2.8 | 1.31E+02 | 1.22E-04 |
| wdnNaCl | 5 | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnOrganic | 5 | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnSi_rich | 5 | 28 | 7.9 | 2.92E+02 | 2.72E-04 |
| wdnTi_rich | 5 | 0 | 0.0 | 0.00E+00 | 0.000 |
| Zn enviro | 5 | 10 | 2.8 | 9.93E+01 | 9.27E-05 |
| Bi-rich | 5 | 10 | 2.8 | 5.67E+01 | 5.29E-05 |
| Ca-rich | 5 | 0 | 0.0 | 0.00E+00 | 0.000 |
| Ag-rich | 5 | 0 | 0.0 | 0.00E+00 | 0.000 |
| Cu-rich | 5 | 17 | 4.8 | 8.97E+01 | 8.37E-05 |
| Tungsten | 5 | 0 | 0.0 | 0.00E+00 | 0.000 |



The Business of Science

MA62373

APPENDIX B

Page 2 of 3

McCRONE ASSOCIATES, INC

Project MA62373
Owner Oxford

Sample Item
Type Default
ID

Acquisition Date   8/1/2017 8:47:45 PM
Total number of areas        1
Total Duration       147.4 mins
Database State    Acquisition complete
Reason for stop    Normal
Recipe   WDN-GSR2
Quant setup        WDN_gsrv2
Class setup        wdnGSRv15
Quant results      Weight %
Field Area (sq. µm)          9.64E+04

Defined Classes:

| Class | Rank | Features | % total features | Feature area (sq. µm) | % total area |
|---|---|---|---|---|---|
| wdnGSR | Characteristic | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnPbBaSbSn | Characteristic | 0 | 0.0 | 0.00E+00 | 0.000 |
| PbSb | Consistent | 0 | 0.0 | 0.00E+00 | 0.000 |
| BaSb | Consistent | 0 | 0.0 | 0.00E+00 | 0.000 |
| Sr-rich | Consistent | 1 | 0.2 | 3.14E+00 | 2.90E-06 |
| wdnBaSb | Consistent | 2 | 0.4 | 2.53E+01 | 2.34E-05 |
| wdnPbBa | Consistent | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnPbSb | Consistent | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnTiZn | Consistent | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnBrass_GSR | Consistent | 0 | 0.0 | 0.00E+00 | 0.000 |
| PbCuZn | 3 | 1 | 0.2 | 2.01E+00 | 1.86E-06 |
| wdnPbCu | 3 | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnPbCuFe | 3 | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnSbMnCo | 3 | 0 | 0.0 | 0.00E+00 | 0.000 |
| PbSn | 4 | 2 | 0.4 | 1.10E+01 | 1.02E-05 |
| wdnBRASS | 4 | 5 | 1.0 | 2.14E+01 | 1.98E-05 |
| wdnPb_rich | 4 | 65 | 13.2 | 5.56E+02 | 5.15E-04 |
| Fe_enviro | 5 | 192 | 39.1 | 1.34E+03 | 1.24E-03 |
| Fe_Cr | 5 | 5 | 1.0 | 2.85E+01 | 2.63E-05 |
| Gold | 5 | 0 | 0.0 | 0.00E+00 | 0.000 |
| lighter flint | 5 | 35 | 7.1 | 1.05E+03 | 9.71E-04 |
| overlaps | 5 | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdn_iron2 | 5 | 34 | 6.9 | 2.89E+02 | 2.68E-04 |
| wdnAl_oxide | 5 | 1 | 0.2 | 5.52E+00 | 5.11E-06 |
| wdnBarite_mod1 | 5 | 19 | 3.9 | 1.30E+02 | 1.20E-04 |
| wdnKCl | 5 | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdn_minerals | 5 | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnMisch_metal | 5 | 22 | 4.5 | 7.05E+02 | 6.52E-04 |
| wdnNaCl | 5 | 1 | 0.2 | 4.64E+00 | 4.29E-06 |
| wdnOrganic | 5 | 0 | 0.0 | 0.00E+00 | 0.000 |
| wdnSi_rich | 5 | 34 | 6.9 | 4.09E+02 | 3.78E-04 |
| wdnTi_rich | 5 | 1 | 0.2 | 1.38E+00 | 1.28E-06 |
| Zn enviro | 5 | 10 | 2.0 | 1.37E+02 | 1.27E-04 |
| Bi-rich | 5 | 15 | 3.1 | 6.09E+01 | 5.64E-05 |
| Ca-rich | 5 | 0 | 0.0 | 0.00E+00 | 0.000 |
| Ag-rich | 5 | 0 | 0.0 | 0.00E+00 | 0.000 |
| Cu-rich | 5 | 16 | 3.3 | 1.18E+02 | 1.09E-04 |
| Tungsten | 5 | 1 | 0.2 | 1.88E+00 | 1.74E-06 |


The Business of Science

MA62373

APPENDIX B

Page 3 of 3


**30**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MARGARITA ROSSY as Administrator of the
ESTATE OF JOSE HERNANDEZ-ROSSY,

                                        Plaintiff,

-against-

CITY OF BUFFALO, and its agents, servants and
employees, and BUFFALO POLICE DEPARTMENT
P.O. JUSTIN TEDESCO, BUFFALO POLICE
DEPARTMENT P.O. JOSEPH ACQUINO and
POLICE COMMISSIONER DANIEL DERENDA,
Individually and in their respective capacities, and
AMERICAN MEDICAL RESPONSE d/b/a "AMR"
and its agents, servants and employees,

                                        Defendants.
------------------------------------------------------------------X

**Case No.: 1:17-cv-00937**

**CERTIFICATE OF
AUTHENTICITY OF
DOMESTIC RECORDS
PURSUANT TO FEDERAL
RULES OF EVIDENCE
902(11), 902(13), and 902(14)**

I, Colleen Carroll, declare under penalty of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

I am employed by WGRZ Channel 2 News (hereafter, "WGRZ") and my title is Editor. I am familiar with WGRZ's practices and systems for creating, managing, storing, maintaining, and retrieving video records, including the records produced in response to the subpoena to produce documents, information, or objects or to permit inspection of premises in a civil action issued to WGRZ Channel 2 News dated October 12, 2020 (hereafter the "Subpoena").

The records covered by this certification are all video files produced by WGRZ in response to the Subpoena (hereafter the "Records"). The Records are authentic records maintained in WGRZ's custody and are true and accurate copies of the corresponding records maintained by WGRZ.

Based on my knowledge of WGRZ's recordkeeping practices and systems:

1

**31**

1. The Records produced in response to the Subpoena were made at or near the time of the events reflected therein by, or from information transmitted by, a person with knowledge of those matters;

2. The Records were kept in the course of WGRZ's regularly conducted business activity;

3. Making and maintaining such records was a regular practice of WGRZ;

4. The Records were generated by WGRZ's electronic process or system, which produces an accurate result; and

5. The Records were copied from electronic device(s), storage medium(s), or file(s) in WGRZ's custody in a manner designed to ensure that they are true and accurate duplicates of the records maintained by WGRZ.

This certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence, and, to the extent the Records constitute data copied from an electronic device, storage medium, or file by a process sufficient to establish authenticity, Rule 902(14) of the Federal Rules of Evidence.

Date: July 22, 2026

By: Colleen Carroll
Title: Editor

2

**32**